**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Litigation Support Services, LLC, | : | |
| Plaintiff | : | No. 2:19-CV-01574-ER |
| | : | |
| v. | : | |
| | : | |
| Arkadiy Lyampert, Elena Lyampert | : | |
| Anna Lyampert, EAA Investments, | : | |
| LLC, VRLA Tech, LLC, Valley | : | |
| Grantor Retained Income Trust, | : | |
| Second Valley View Grantor | : | JURY TRIAL DEMANDED |
| Retained Income Trust | : | |
| Defendants. | : | |

---

## PROPOSED ORDER

AND NOW, this _____ day of _____, 2019, upon consideration of Defendants

Motion to Dismiss or, Alternatively, to Transfer Venue, pursuant to Fed. R. Civ. P. 12(b)(2)-(3)

and 28 U.S.C. §§ 1404(a), 1406(a), and any responses thereto, it is hereby ORDERED that:

(1)      Defendants' Motion is GRANTED; and

(2)      This matter shall be TRANSFERRED and, pursuant to Local Rule 3.2, the matter is

STAYED for 21 days for Plaintiff to take all action to carry out the transfer, to the United States

District Court for the District of California; otherwise, the case will be DISMISSED without

prejudice.

BY THE COURT

_____

Hon. Eduardo C. Robreno, *J.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Litigation Support Services, LLC, | : | |
| Plaintiff | : | No. 2:19-CV-01574-ER |
| | : | |
| v. | : | |
| | : | |
| Arkadiy Lyampert, Elena Lyampert | : | |
| Anna Lyampert, EAA Investments, | : | |
| LLC, VRLA Tech, LLC, Valley | : | |
| Grantor Retained Income Trust, | : | |
| Second Valley View Grantor | : | JURY TRIAL DEMANDED |
| Retained Income Trust | : | |
| Defendants. | : | |

**DEFENDANTS' MOTION TO DISMISS OR, ALTERNATIVELY,**
**TO TRANSFER VENUE**

NOW COMES Defendants, by and through their undersigned counsel, who hereby move

for dismissal of Plaintiff's Complaint in this matter under Fed. R. Civ. P. 12(b) or, alternatively,

to transfer venue of this case under 28 U.S.C. §§ 1404(a), 1406(a) to the U.S. District Court for

the Central District of California; and in offer the following in support:

1.      On April 11, 2019, Defendants removed this action to this Court from the Court of

Common Pleas of Philadelphia.

2.      Attached as Exhibit "A" is a true and correct copy of the Engagement Letter.

3.      Attached as Exhibit "B" is a true and correct copy of the Long-Term Agreement.

4.      Attached as Exhibit "C" is an Affidavit by Defendant Arkadiy Lyampert.

5.      Attached as Exhibit "D" is an Affidavit by Defendant Elena Lyampert.

6.      Attached as Exhibit "E" is an Affidavit by Defendant Anna Lyampert.

7.      Attached as Exhibit "F" is an Affidavit by Emil Grazovski.

8.      Under the *Federal Rules of Civil Procedure*, all Defendants request dismissal under

Rule 12(b)(3) and, additionally, Defendants Elena Lyampert, Anna Lyampert, EAA Investments,

LLC, VRLA Tech, LLC, Valley View Grantor Retained Income Trust and Second Valley View Grantor Retained Income Trust request dismissal under Rule 12(b)(2); alternatively, all Defendants request transfer under 28 U.S.C. § 1406(a), as cure for defect, to the U.S. District Court for the Central District of California.

9.  Alternatively, under 28 U.S.C. § 1404(a), all Defendants request transfer of venue to the U.S. District Court for the Central District of California as a matter of forum non conveniens.

10.  The grounds for the instant Motion are set forth in the accompanying Brief in Support, which is incorporated by reference herein.

11.  The Notice of Removal is incorporated by reference herein.

**WHEREFORE**, for all these reasons and the reasons set forth in the accompanying brief, Defendants respectfully request dismissal from this suit without prejudice under Fed. R. Civ. P. 12(b) or, alternatively, for a transfer of venue under 28 U.S.C. §§ 1404(a), 1406(a) to the U.S. District Court for the Central District of California; and such other relief as the court deems necessary, just, or appropriate.

**CORNERSTONE LAW FIRM, LLC**

Dated: April 18, 2019        By:    /s/ David W. Crossett
                                    David W. Crossett, Esquire
                                    Attorney I.D. #313031
                                    Joel A. Ready, Esquire
                                    Attorney I.D. # 321966
                                    8500 Allentown Pike, Ste 3
                                    Blandon, PA 19510
                                    P (610) 926-7875
                                    F (484) 930-0054
                                    david@cornerstonelaw.us
                                    joel@cornerstonelaw.us
                                    *Counsel for Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

LITIGATION SUPPORT SERVICES, LLC :
             Plaintiff,         :
                        :
     v.                    :
                        :      Civil Action No.: 2:19-CV-01574-ER
ARKADIY LYAMPERT, ELENA     :
LYAMPTERT, ANNA LYAMPERT,     :
EAA INVESTMENTS, LLC, VRLA     :
TECH, LLC, VALLEY VIEW GRANTOR :
RETAINED INCOME TRUST, SECOND  :     JURY TRIAL DEMANDED
VALLEY VIEW GRANTOR RETAINED  :
INCOME TRUST,                :
             Defendants.    :

**DEFENDANTS' BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR,
ALTERNATIVELY, TO TRANSFER VENUE**

The alleged contractual agreement between Plaintiff and Defendants concerned subject-matter in California, was negotiated in California, executed in California, partially performed in California, allegedly breached in California, and does not have a forum-selection clause. **Six** out of **seven** Defendants do not have personal jurisdiction in this forum, and all are citizens of California. This forum is improper and inconvenient. Plaintiff nevertheless filed suit here. The Complaint should therefore be dismissed without prejudice under Fed. R. Civ. P. 12(b)(2) & (3) or, alternatively, transferred to the U.S. District Court for the Central District of California under 28 U.S.C. §§ 1404(a), 1406(a), as cure for a defect or as *forum non conveniens*.

**PROCEDURAL HISTORY**

On March 14, 2019, Plaintiff filed suit in the Court of Common Pleas of Philadelphia, requesting to compel arbitration (Count I) and damages for breach of contract (Counts II through V) and anticipatory breach of contract (Counts VI and VII). Defendants removed to this Court on grounds of diversity. Defendants have timely filed this Motion to Dismiss and Brief in Support.

1

## STATEMENT OF RELEVANT FACTS

Defendant Arkadiy Lyampert ("Mr. Lyampert") was born in the Soviet Union in 1964, and came to the United States when he was 28-years-old, where English is his second language. [Aff. Arkadiy Lyampert ¶ 6, Ex. C]. He is the husband of Defendant Elena Lyampert ("Mrs. Lyampert") and their daughter is Defendant Anna Lyampert.  [Id. ¶ 3]. The Managing Member of Plaintiff is Andrew Mogilyansky ("Mr. Mogilyansky"), a Russian American, who offered English-Russian translation and other litigation support services. [Id. ¶ 7].

## I.       Course of Dealings between Plaintiff and Defendant Arkadiy Lyampert.

In 2010, Mr. Lyampert was sued in the Superior Court of California, Los Angeles County, by a former business partner and others. Several years later, on November 13, 2015, his former business partner commenced an additional lawsuit against him in the High Court of Justice of England and Whales. [Compl. ¶¶ 20-24; Aff. Arkadiy Lyampert ¶ 9, Ex. C].  Mr. Lyampert retained counsel in California and in London for his defense. [Aff. Arkadiy Lyampert ¶¶ 10-11, Ex. C].  Mr. Lyampert can understand written English if given sufficient time, "but at times I struggle with oral conversations and my spoken English is very poor." [Id. ¶ 6]. Mr. Lyampert had known Mr. Mogilyansky since 2004 or 2005.  In roughly the fall of 2015, Mr. Lyampert received on his cell phone a call from Mr. Mogilyansky, and the latter learned of the former's legal situation and explored the possibility of serving as translator. [Id. ¶¶ 7, 15].  As Mr. Lyampert explains:

> What I needed the most was the English-Russian translation services of Mr. Mogilyansky because of the critical importance of the California and U.K. litigation, where I could not afford to have any mistakes in communication with my attorneys, CPA's, and other professionals, whether written or oral. I believed at the time that Mr. Mogilyansky was a good fit for those language needs because he is also a Russian-American who was born in Russia and has an excellent understanding of Russian culture, idioms, and figures of speech.

[Id. ¶ 13].

In the Complaint, Plaintiff alleges that Defendants breached a Long-Term Agreement ("LTA") by refusing to tender payments allegedly due and owing, for anticipatory breach, and for failing to participate in arbitration. [Compl. ¶¶ 4-5]. The third introductory paragraph of the LTA incorporates by reference an Engagement Letter dated March 25, 2016 ("Engagement Letter"). [Ex. B, intro. para. 3].  These may be considered by the Court as undisputedly authentic documents on which the Plaintiff's claims are based. Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

The Engagement Letter confirms that the obligations under the LTA emerged from what were originally a course of dealings between Plaintiff and Mr. Lyampert in his personal capacity. The Engagement Letter appears on Plaintiff's letterhead and is addressed only to "Arkadiy Lyampert" at his personal home in Calabasas (Los Angeles County), California. [Ex. A].  It reads in pertinent part, "You have requested that Litigation Support Services, LLC ('LSS') provide you with various services relating to your lawsuits in the United Kingdom and the United States ('Lawsuits'), which, without limitation, are primarily related to various disputes, including shareholder disputes, between you and Mr. Roman Frenkel." [Id. intro. para. 1].  Simultaneous proceedings existed against Mr. Lyampert as party-defendant in the Superior Court of California, Los Angeles County, and in the High Court of Justice of England and Whales. The controversies included a disputed equity interest in LA Micro Group, UK, Ltd., a successful computer equipment business in the United Kingdom, as well as claims between Mr. Lyampert and his former business partner, Roman Frenkel, in respect of a California corporation, LA Micro Group, Inc. (both, the "California and U.K. litigation"). [Aff. Arkadiy Lyampert ¶ 9, Ex. C; Compl. ¶¶ 3, 20-21].

The Engagement Letter recites that Mr. Lyampert is already represented by counsel in the California and U.K. litigation, and had already engaged professional Certified Public Accountants.

3

[Ex. A, intro. paras. 1-3].   Against that backdrop, Plaintiff was to provide "assistance" with "[i]nterpreting and/or translation of various legal documents pertaining to the Lawsuits," "drafting and composition of your letters to your various Attorneys . . . in the Lawsuits," "verbal communications with the Attorneys who represent you in the Lawsuits," "communications with third parties, as may be required," and "analyzing financial records which pertain to the Lawsuits, with the understanding that such assistance shall be furnished and performed in conjunction with your Counsel and/or Accountants," etc. [Id. ¶¶ 1-6].

Mr. Lyampert and Mr. Mogilyansky both signed the Engagement Letter on March 25, 2016, but the Complaint is silent on where the Engagement Letter was executed.  Mr. Lyampert signed the Engagement Letter in California.  [Arkadiy Lyampert Aff. ¶¶ 16-17, Ex. C]. Neither does the Engagement Letter contain a forum-selection clause.  [See Ex. A].

During Mr. Mogilyansky's performance, he submitted Plaintiff's invoices to Mr. Lyampert's British counsel for payment, and payments were made from Mr. Lyampert's client-trust account. [Aff. Arkadiy Lyampert ¶ 18, Ex. C]. As Mr. Lyampert explains:

> Throughout Mr. Mogilyansky's performance of the agreed-upon services, the center of gravity during the California and U.K. litigation was in California, not Pennsylvania.  My attorneys, Mr. Mogilyansky and I conducted videoconferencing over the Internet through Skype, and I mostly conversed with Mr. Mogilyansky through his cell phone. I understood that Plaintiff had a business office in Pennsylvania, but Mr. Mogilyansky could work from home if he wanted to and he often took phone calls from his residence. I personally did not care where he was located when it came to English-Russian translation of e-mails, or correspondence forwarded to him by e-mails, or during phone calls or videoconferences, provided that he made himself available and kept the communication private.  If in-person services were needed, then Mr. Mogilyansky came to California and on a few occasions he did.

[Id. ¶ 19].  Mr. Mogilyansky traveled to California approximately two or three times a year during his contractual performance. [Id.].  Among those contacts, he twice visited California in June and July-August of 2016, and he traveled to Los Angeles in late February of 2018. [Id. ¶¶ 20, 22].

4

Significantly, Mr. Mogilyansky, present in California, attempted to negotiate a settlement agreement with Mr. Lyampert's party-opponent. [Id. ¶ 20].

The Complaint alleges that the contractual relationship was roughly 2.5 years, and Mr. Mogilyansky provided other litigation support services. [Compl. ¶ 28].  But the Complaint is artfully silent on where some of Mr. Mogilyansky's services occurred. Plaintiff's services needed to accommodate and were specifically directed at persons outside of Pennsylvania:

> Lyampert went on many trips to Kazan, Russian, which has a 10-hour time difference with California, the location of his family and lawyers representing Defendants in US Proceedings. LSS [the Plaintiff] had regular interactions with multiple attorneys in London, England representing Lyampert in UK Proceedings. The time difference between London and California is eight hours. The headquarters of LAMUK [LA Micro Group U.K., Ltd.] are also located in England.

[Compl. ¶ 26 n.3 (alterations added)]. The Complaint alleges that Mr. Mogilyansky "assisted Lyampert in negotiating a restructuring/buyout of his share in [LA Micro Group UK, Ltd.]." [Id. ¶ 28(i) (alteration added)].  This occurred in New York City, not Pennsylvania. [Aff. Arkadiy Lyampert ¶ 21, Ex. C].  The Complaint alleges that Plaintiff "arranged and helped handle numerous board/shareholder meetings of [LA Micro Group, UK, Ltd.]."  [Compl. ¶ 28(f) (alteration added)].  Mr. Lyampert acknowledges that those did occur in Pennsylvania and involved himself in his personal capacity. [Arkadiy Lyampert Aff. ¶ 23, Ex. C].

The Complaint alleges that Plaintiff had regular communication with Mr. Lyampert's attorneys. [Compl. ¶ 28].  Mr. Lyampert explains, "As a result of engaging Mr. Mogilyansky, through the Plaintiff, he was privy to all privileged and confidential communications during the California and U.K. litigation." [Aff. Arkadiy Lyampert ¶ 14, Ex. C].

## II.    The Long-Term Agreement.

On January 11, 2017, the Superior Court of California issued a Revised Statement of Decision.  Mr. Mogilyansky, having intimate knowledge of Mr. Lyampert's legal and financial

circumstances, then re-negotiated the terms of their contractual relationship, in what became the Long-Term Agreement ("LTA"). [Aff. Arkadiy Lyampert ¶¶ 24-25, Ex. C]. Negotiations over the LTA occurred between Mr. Mogilyansky and Mr. Lyampert, by e-mail, over the phone, and while Mr. Mogilyansky visited Mr. Lyampert in California. [Id. ¶ 26]. None of the other Defendants were involved in the negotiations, and Defendant Anna Lyampert did nothing more than make changes to the draft LTA based on her father's request and to forward the draft by e-mail to Mr. Mogilyansky. [Id.; Aff. Elena Lyampert ¶ 37, Ex. C; Aff. Anna Lyampert ¶¶ 18-19, Ex. D].

The Defendants signed the LTA in California; the subject-matter of the LTA involved a fraudulent conveyance proceeding in the Superior Court of California, Los Angeles County; none of the Defendants, other than Mr. Lyampert, submitted payments to Plaintiff under the LTA; none of them believed they were creating any long-term obligations in or subjecting themselves to Pennsylvania's personal jurisdiction; and they believed the LTA was governed by California law. [Aff. Arkadiy Lyampert ¶¶ 27-42, Ex. C; Aff. Elena Lyampert ¶¶ 36-45, Ex. D; Aff. Anna Lyampert ¶¶ 17-26, Ex. E]. While negotiating with Mr. Lyampert, Plaintiff never requested or pressed for Pennsylvania as the forum for litigating disputes. [Aff. Arkadiy Lyampert ¶ 30, Ex. C].

Plaintiff alleges that Defendants have breached the LTA by actions or omissions occurring in California, namely, non-payment of monies allegedly owed and refusing to participate in arbitration. [Aff. Arkadiy Lyampert ¶ 39, Ex. C; Aff. Elena Lyampert ¶ 41, Ex. D; Aff. Anna Lyampert ¶ 22, Ex. C]. The LTA does not have a forum-selection clause. [See Ex. B]. The Mediation and Arbitration Clause in Paragraph 12 of the LTA reads:

> LSS [the Plaintiff] and Clients will strive to find amicable solutions to all situations which may arise in their relationship with each other. If LSS and Clients have a disagreement, they will first try to resolve it through good faith negotiations. If the disagreement cannot be amicably resolved through negotiations, LSS and Clients will arrange for informal mediation to be conducted by Jeff Farrow, Esq. and George Bochetto, Esq. via telephone or video conference. If this mediation proves

6

unsuccessful, LSS and Clients will submit to binding arbitration in an arbitration venue and forum chosen by Mr. Farrow and Mr. Bochetto. If Mr. Farrow and Mr. Bochetto cannot agree on the method of arbitration, each of them will suggest one, and it will be decided by coin toss to be performed by Mr. Farrow.

[Id. ¶ 12].  Attorney Jeffrey Farrow is a California attorney with offices in Los Angeles.  [Aff. Ellen Lyampert ¶ 46, Ex. D]. Mr. and Mrs. Lyampert and their daughter, Anna, never understood this clause as subjecting them or the other Defendants to the personal jurisdiction of Pennsylvania. As Anna Lyampert explains:

> When I reviewed the LTA, I did not see anything that required disputes to be brought in any court, State or federal, situated in the Commonwealth of Pennsylvania.  Paragraph 12 of the LTA, in particular, only provides that the parties will submit to binding arbitration "in an arbitration venue and forum chosen" by Mr. Jeffrey Farrow, Esquire "and" Mr. George Bochetto, Esquire — if neither of them could agree on venue and forum, then the LTA contains no deadlock provision and the question would default to California law, which provides for venue in California. The coin-toss procedure in Paragraph 12 of the LTA relates to "the method of arbitration," not the venue or forum, and is to be performed by Attorney Farrow only, not Attorney Bochetto.

[Aff. Anna Lyampert ¶ 29, Ex. E;  see also,  Aff. Arkadiy Lyampert ¶ 43, Ex. C; Aff. Elena Lyampert ¶ 47, Ex. D].

### III.    Additional Contacts and Location of Witnesses and Evidence.

The contacts between Defendants and Pennsylvania are discussed in Part I of the Argument.  The location of witnesses and evidence are discussed in Part III of the Argument.

## ARGUMENT

### I.    LACK OF PERSONAL JURISDICTION.

The following are the "Moving Defendants" under this Part I:  Defendants Elena Lyampert, Anna Lyampert, EAA Investments, LLC, VRLA Tech, LLC, Valley View Grantor Retained Income Trust, and Second Valley View Grantor Retained Income Trust request dismissal under Fed. R. Civ. P. 12(b)(2) or, alternatively, transfer to the U.S. District Court for the Central District

of California under 28 U.S.C. § 1406(a). Mr. Lyampert does not challenge personal jurisdiction.

### A.    Applicable Legal Standard.

Under Fed. R. Civ. P. 12(b)(2), Plaintiff bears the burden of establishing such jurisdiction "with reasonable particularity." Cohen, Seglias, Greenhall, Pallas, & Furman, P.C. v. Hassert Const.—PA, LLC, 2011 U.S. Dist. LEXIS 12168, at *6 (E.D. Pa. Feb. 4, 2011) (Baylson, *J.*). Without an evidentiary hearing, "a plaintiff needs to establish only a prima facie case of personal jurisdiction, and a plaintiff is entitled to have its allegations taken as true and have factual disputes resolved in its favor. Still, a plaintiff must prove personal jurisdiction by a preponderance of the evidence." Element Fin. Corp. v. ComQi, Inc., 52 F. Supp. 2d 739, 742 (E.D. Pa. 2014) (Dalzell, *J.*) (citations omitted). "After a defendant raises a jurisdictional defect, a plaintiff bears the burden of proving that jurisdiction is proper by competent evidence, actual proofs, or affidavits.  Rule 12(b)(2) motions inherently require resolution of factual issues outside the pleadings—that is, whether personal jurisdiction actually lies." Id. (citations omitted).

Pennsylvania's Long-Arm Statute authorizes the exercise of personal jurisdiction where a non-resident causes "harm" in the Commonwealth of Pennsylvania "by an act or omission outside this Commonwealth." 42 Pa.C.S. § 5322(a)(1)(4); Action Indus., Inc. v. Wiedeman, 346 A.2d 798, 801 (Pa.Super. 1975) (en banc) ("harm" includes economic harm; Rosen v. Solomon, 374 F. Supp. 915, 919 (E.D. Pa. 1974) (same).  Here, Plaintiff alleges that Defendants have caused harm within by their actions or omissions outside of this Commonwealth by not tendering payments allegedly due and by refusing to participate in arbitration.

The Plaintiff must show that exercising personal jurisdiction satisfies constitutional due process, 42 Pa.C.S. § 5322(b), i.e., the minimum contacts standard "whether the quality and nature of the defendant's activity is such that it is reasonable and fair" to conduct a defense in that State.

Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 334 (3d Cir. 2009) (citation and internal quotations deleted). That includes a "threshold matter," whether the defendant took an action "purposefully directed toward the forum State."  Id. (citation and internal quotations deleted).

###### B.       General Personal Jurisdiction.

"A court may exercise general jurisdiction over a defendant where he or she has continuous and systematic contacts with the forum, whether or not those contacts are related to the plaintiff's cause of action." Metcalfe, 566 F.3d at 334 (citation and internal quotations deleted). Under general personal jurisdiction, the level of the non-resident defendant's activity in the forum state must be "significantly more than mere minimum contacts," Henning v. Suarez Corp., 713 F. Supp. 2d 459, 465 (E.D. Pa. 2010) (quoting Provident Nat. Bank v. California Fed. Sav. & Loan Ass'n., 819 F.2d 434, 437 (3d Cir.1987)), and must be "extensive and pervasive," id. (quoting Reliance Steel Prod. Co. v. Watson, Ess, Marshall & Enggas, 675 F.2d 587, 589 (3d Cir.1982)). This standard requires the defendant's contacts with the forum to be "perpetual [and] abiding," a higher threshold which "demands contacts with the forum which approximate physical presence." Id. (citations omitted). Courts consider the following factors: (1) "whether the defendant conducts 'daily business' with Pennsylvania companies"; (2) "what percentage of defendant's total business was generated in Pennsylvania"; (3) "whether defendant maintained offices or paid taxes in Pennsylvania"; (4) "whether defendant availed itself of Pennsylvania resources in an extensive manner as a way of furthering its business"; and (5) "whether defendant made significant direct sales in Pennsylvania, solicited business regularly in Pennsylvania, and advertised in a manner specifically targeted to reach the Pennsylvania market." Henning v. Suarez Corp., 713 F. Supp. 2d 459, 465 (E.D. Pa. 2010) (quotation omitted).  "The touchstone" is "the bread and butter of the defendant's daily business." Id. (citations and internal quotations deleted).

"We recognize that in order to satisfy constitutional due process, a contract, without more, is insufficient to establish minimum contacts, as are informational communications in furtherance of a contract." Metcalfe, 566 F.3d at 333 n.7 (citation and internal quotations deleted). Wiring money into Pennsylvania under a contract also creates "no expectation of submission to the jurisdiction of Pennsylvania courts. Moreover, they do not constitute purposefully availing of the privilege of conducting activity within the forum state." Dollar Sav. Bank v. First Security Bank of Utah, N.A., 746 F.2d 208, 214 (3d Cir. 1984) (citation omitted). Non-payment of a bill, causing economic impact in Pennsylvania, "is of little weight," because "if incidental economic detriment as such furnishes a contact for jurisdictional purposes, then every monetary claim would per se furnish the predicate for personal jurisdiction over a nonresident debtor." Id. at 213.

### 1.    Application to Defendant Anna Lyampert.

General personal jurisdiction over Defendant Anna Lyampert is not met. She has never traveled to the Commonwealth of Pennsylvania in her life. In her personal capacity, she does not have any continuous and systematic contacts with this forum. [Aff. Anna Lyampert ¶¶ 6-13, Ex. E]. Her contract with Plaintiff is insufficient under Metcalfe, and her refusal to pay under that contract or to participate in arbitration are insufficient under Dollar Sav. Bank. She does not have extensive and pervasive contacts with Pennsylvania under Reliance Steel Prods.

### 2.    Application to Defendant Elena Lyampert.

General personal jurisdiction over Defendant Elena Lyampert is not met. In her personal capacity, she does not have any continuous and systematic contacts with this forum. [Aff. Elena Lyampert ¶¶ 8-15, Ex. D]. The consultation with Attorney Bochetto, in April of 2016, was an insolated event — the only time in her life she traveled to Pennsylvania. [Id. ¶¶ 8-9]. Her contract with Plaintiff is insufficient under Metcalfe, and her refusal to pay under that contract or to participate in arbitration are insufficient under Dollar Sav. Bank. She does not have extensive and

pervasive contacts with Pennsylvania under Reliance Steel Prods.

### 3. Application to Defendant EAA Investments, LLC.

General personal jurisdiction over Defendant EAA Investments, LLC is not met. EAA is only a passive investor, as limited partner in Strategic Vision, LP, a Pennsylvania limited partnership holding title to real estate in Philadelphia.  [Aff. Elena Lyampert ¶ 17, Ex. D]. EAA does not have any continuous and systematic contacts with this forum under the factors identified in Henning: EAA does not conduct daily business with Pennsylvania companies; EAA does not maintain any offices or pay taxes in Pennsylvania; EAA has not availed itself of Pennsylvania resources in any extensive matter to further its business; EAA has not made significant direct sales in Pennsylvania, has not solicited business regularly in Pennsylvania, and does not advertise in any manner specifically targeted to reach the Pennsylvania market. [Id. ¶¶ 16-21]. EAA's contract with Plaintiff is insufficient under Metcalfe, and its refusal to pay under that contract or to participate in arbitration are insufficient under Dollar Sav. Bank. EAA does not have extensive and pervasive contacts with Pennsylvania under Reliance Steel Prods.

### 4. Application to Defendant VRLA Tech, LLC.

General personal jurisdiction over Defendant VRLA Tech, LLC is not met. VRLA is headquartered in California and sells computer products and components worldwide through an interactive Web site. The products are stored in a California warehouse, the standard Terms and Conditions contain a forum-selection clause designating California, and the Web site directs customers to VRLA's business office in Canoga Park, California for contact.  [Aff. Emil Grazovski ¶¶ 2-4, Ex. F].  A Web site, allowing residents in other jurisdictions to purchase products, may establish specific jurisdiction, if the claim arose out of those transactions. Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 452 (3d Cir. 2003). But, as this Court held, "Allowing the mere presence of a website along with a toll-free number accessible from a particular state to constitute

general personal jurisdiction in that State would allow an end-run around the Constitution." Brown v. AST Sports Sci., Inc., 2002 U.S. Dist. LEXIS 12294, at *28 (E.D. Pa. June 28, 2002) (Surrick, J.).  As such, "the mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world." Toys "R" Us, 318 F.3d at 454.

VRLA does not have any continuous and systematic contacts with this forum under the factors identified in Henning: (1) VRLA does not conduct daily business with Pennsylvania companies; (2) less than 1 % of its total business was generated in Pennsylvania in FY 2018, which amounted to less than $10,000; (3) VRLA does not maintain any offices in or pay sales taxes to Pennsylvania; (4) VRLA has not availed itself of Pennsylvania resources in any extensive matter to further its business; (5) VRLA has not made significant direct sales in Pennsylvania, has not solicited business regularly in Pennsylvania, and does not advertise in any manner specifically targeted to reach the Pennsylvania market. [Aff. Emil Grazovski ¶¶ 7-15, Ex. F]. VRLA's contract with Plaintiff is insufficient under Metcalfe, and its refusal to pay under that contract or to participate in arbitration are insufficient under Dollar Sav. Bank. It does not have extensive and pervasive contacts with Pennsylvania under Reliance Steel Prods.

### 5.    Application to the Trust-Defendants.

General personal jurisdiction is not met over Defendants, Valley View Grantor Retained Income Trust and Second Valley View Grantor Retained Income Trust (both, the "Trust-Defendants"), for the same reasons why general jurisdiction is lacking over their trustee, Elena Lyampert. Elena has never traveled to Pennsylvania in her capacity as trustee of the Trust-Defendants. [Aff. Elena Lyampert ¶ 9]. There are no continuous and systematic contacts with this forum under the Henning factors: The Trust-Defendants do not conduct daily business with Pennsylvania companies; no business was generated in Pennsylvania; there are no offices or taxes paid in Pennsylvania; the Trust-Defendants never availed themselves of Pennsylvania resources in

any extensive matter to further their business, being organized under California law in respect of real estate situated in California; the Trust-Defendants have not made significant direct sales in Pennsylvania, have not solicited business regularly in Pennsylvania, and do not advertise in any manner specifically targeted to reach the Pennsylvania market. [Id. ¶¶ 22-29]. The Trust-Defendants' contract with Plaintiff is insufficient under Metcalfe, and their refusal to pay under that contract or to participate in arbitration are insufficient under Dollar Sav. Bank. Extensive and pervasive contacts with Pennsylvania under Reliance Steel Prods are lacking here.

### C.    Specific Personal Jurisdiction.

"Specific jurisdiction is present only if the plaintiff's cause of action arises out of a defendant's forum-related activities, such that the defendant should reasonably anticipate being haled into court in that forum." Cohen, Seglias, Greenhall, Pallas, & Furman, P.C. v. Hassert Const.—PA, LLC, 2011 U.S. Dist. LEXIS 12168, at *12-13 (E.D. Pa. Feb. 4, 2011) (citations and internal quotations deleted) (Baylson, J.). The inquiry involves a three-prong test, "first, the Court asks whether the defendants have purposefully directed their activities at the forum; second, the Court asks whether the claims arise out of or relate to those specific activities; finally, the Court must determine whether the assertion of jurisdiction otherwise comports with traditional notions of fair play and substantial justice." Id. at *13 (citations and internal quotations deleted).

### 1.    Purposeful Direction of Activities at the Forum.

Third Circuit jurisprudence has refined this analysis to contract disputes. Under the first-prong, "In determining jurisdiction over a breach of contract claim, we must consider the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing." Remick v. Manfredy, 238 F.3d 248, 256 (3d Cir. 2001) (citation omitted).  The gravamen is not whether a contract is styled a "Long-Term Agreement," but whether its substance created the "deliberate assumption of long-term

obligations." Element Fin. Corp. v. ComQi, Inc., 52 F. Supp. 3d 739, 746-47 (E.D. Pa. 2014) (discussing Rotondo Weinreich Enter. v. Rock City Mech., Inc., 2005 WL 119571, at *4 (E.D. Pa. Jan. 19, 2005)).  Here, there were no long-term obligations in Pennsylvania, as shown in Part II of the Statement of Facts: The subject-matter of the LTA involved a judicial proceeding in California, and there is no forum-selection clause designating Pennsylvania.  The Defendants signed the LTA in California. The LTA was not a "general retainer" for future litigation against unknown parties but a single-purpose transaction involving previously ascertained litigants outside of Pennsylvania.

Moving Defendants did not specifically direct any activities at Pennsylvania. As shown in Part II of the Statement of Relevant Facts, to any extent the LTA or the Engagement Letter involved Pennsylvania, it affected Mr. Lyampert only, in his personal capacity.

### 2. Claims Arising out of or Relating to Specific Activities Purposefully Directed at the Forum.

Under the second-prong, "In contract cases, courts should inquire whether the defendant's contacts with the forum were instrumental in either the formation of the contract or its breach." General Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2011) (citations, brackets, and internal quotations deleted). However, "Where the Court has found interstate communication to ground specific jurisdiction, it is generally in conjunction with an actual appearance by the non-resident defendant in the forum state and continuing obligations between the parties." Element Fin. Corp., 52 F. Supp. 3d at 747 (citation omitted).

Here, as shown in Part II of the Statement of Relevant Facts, the Moving Defendants allegedly breached the LTA in California. Only Defendant Elena Lyampert visited Pennsylvania during a confidential meeting with Attorney Bochetto in Philadelphia, which forms no part of Plaintiff's allegations concerning the contract formation or breach. None of the other Moving Defendants have set foot in Pennsylvania. If Plaintiff had any involvement with the Trust-

Defendants, then all services occurred in California with the assistance of a California attorney. Nothing in their formation involved contact with Pennsylvania.  The alleged breach by the Trust-Defendants of the LTA is qualitatively indistinct from the rest of the Defendants.

An agreement to arbitrate, without designating a forum, is insufficient for the same reasons why having a contract is insufficient, see, e.g., Metcalfe, 566 F.3d at 333 n.7, and has no bearing on personal jurisdiction. See, e.g., Northern Grain Marketing, LLC v. Greving, 743 F.3d 487, 490 & 494-96 (7th Cir. 2014), where the parties only agreed that "disputes would be subject to arbitration by the National Grain and Feed Association," and the court examined personal jurisdiction without regard to arbitration.  Moreover, the Mediation and Arbitration Clause in the LTA did not designate Pennsylvania and does not have a deadlock provision if Attorneys Farrow and Bochetto could not agree on venue or forum.  The coin-toss procedure under ¶ 12 of the LTA could only be performed by Mr. Farrow, a California attorney having no offices in Pennsylvania, and only relates to the "method" of arbitration. Courts generally refuse to apply local law in the method of arbitration "if arbitration is to take place in another state because of the reluctance of a court to order that an act be done in an area outside its jurisdiction." RESTATEMENT (SECOND) OF CONFLICT OF LAW § 219, cmt. a.  Because the LTA is governed by California law, for all of the reasons stated in Subpart 3(b) below, the rules of venue would default to California law, where venue is had in the California court of the county where a contract "is to be performed or was made." Cal. Civ. Proc. Code § 1292(b).  Here, the LTA was made and partially-performed in Los Angeles County.

### 3.    Traditional Notions of Fair Play and Substantial Justice.

The Court must also consider traditional notions of fair play and substantial justice, "We must evaluate fairness based on several factors, including the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and

effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." Element Fin. Corp., 52 F. Supp. 2d at 744 (citation omitted).

### (a)    Burden on the Defendants.

The burdens on the Defendants are considerable for the same reasons stated in Part III.  If Defendants are to rebut the extent of Plaintiff's alleged services, then that necessitates compulsory process of Attorney Jeffrey Farrow in California and Mr. Lyampert's British counsel, a law firm which has offices in Los Angeles, California, but not in Pennsylvania. The client files from the California and U.K. litigation are not located in Pennsylvania.

### (b)    Forum State's Interests in Adjudicating the Dispute.

Pennsylvania's interests in adjudicating the dispute are minimal or non-existent. First, Pennsylvania does not have an interest where the attorney-client confidentiality and privileges owed by Defendants in respect of Plaintiff's services are governed by California law. Second, the LTA is governed by California law, and Pennsylvania does not have an interest in adjudicating California law. A U.S. district court, sitting in diversity, applies the choice-of-law rules of the forum State. Klaxon Co. v. Stentor Elec. Mfg., 313 U.S. 487, 496 (1941). In the absence of statute, Pennsylvania common law applies the *Restatement (Second) of Conflict of Law*. Knauer v. Knauer, 470 A.2d 553, 557 (Pa.Super. 1983); Ario v. Underwriting Members of Lloyd's, 996 A.2d 588, 595 (Pa. Commw. Ct. 2010) ("[O]ur Supreme Court adopted the approach of the Restatement of Conflict of Laws, Second to resolving choice of law questions." (citations omitted)).  Here, because the LTA does not have a choice-of-law clause, Section 188 is applicable. Courts must consider the most significant relationship test under Section 6 and the following:

[1] the place of contracting,
[2] the place of negotiation of the contract,

[3] the place of performance,
[4] the location of the subject matter of the contract, and
[5] the domicil, residence, nationality, place of incorporation and place of business
of the parties.

RESTATEMENT (SECOND) OF CONFLICT OF LAW § 188(2) (alterations added).  Under the most

significant relationship test, the court must consider:

[6] the needs of the interstate and international systems,
[7] the relevant policies of the forum,
[8] the relevant policies of other interested states and the relative interests of those
states in the determination of the particular issue,
[9] the protection of justified expectations,
[10] the basic policies underlying the particular field of law,
[11] certainty, predictability and uniformity of result, and
[12] ease in the determination and application of the law to be applied.

Id. § 6 (alterations added).

Here, the LTA was executed by the Defendants in California, substantially negotiated in

California, and its subject-matter involved judicial proceedings in the Superior Court of California,

Los Angeles County and in the United Kingdom.  The place of performance was California to the

extent of in-person meetings with Plaintiff, whereas Plaintiff could work from Pennsylvania in

respect of translating or reviewing documents.  All of the parties, except Plaintiff, are citizens and

residents of California.   Factors 1 through 5 predominate in favor of California and not

Pennsylvania.  "[T]he place of performance can bear little weight in the choice of the applicable

law when . . . performance by a party is to be divided more or less equally among two or more

states with different local law rules on the particular issue." RESTATEMENT (SECOND) OF CONFLICT

OF LAW § 188 cmt. (e), para. 6.

The balance of the Restatement factors does not indicate that Pennsylvania has a more

significant interest in the enforcement of the LTA than California.  Under Factors 7-8, both forums

have a four-year statute of limitations for contract actions.  Cal. Civ. Proc. Code § 337(a); 42

Pa.C.S. § 5525(a)(1).  Both forums generally recognize the validity of arbitration agreements. Cal. Civ. Proc. Code § 1281; 42 Pa.C.S. § 7303.  Neither does Pennsylvania have an interest in the regulation of confidential and privileged communications between Plaintiff and Defendants' California attorneys or CPA's. Similarly, justified expectations (factor 9) favors California because Plaintiff's performance involved privileged and confidential communications, governed by the attorney-client privilege under California law, and where Plaintiff had to maintain availability to Defendants and their counsel with considerations of their time-zones in California and the United Kingdom.  Plaintiff was there to serve the Defendants, not the other way around. Finally, this Court increases simplicity in conflicts-of-law analysis as well as certainty, predictability, and uniformity of results (factors 11-12) by holding that persons assisting with attorney-client relationships, such as paralegals, interpreters, and other paraprofessionals, should have their contractual relationships governed by the same law unless otherwise specified in writing. See, e.g., Reliance Steel Prods., 675 F.2d at 589, where the Third Circuit gave weight to the fact that the "res of the action was located in Kansas," among other things.

> **(c)      Plaintiff's Interest in Obtaining Convenient and Effective Relief.**

This factor would ordinarily favor Pennsylvania, except for the fact that Plaintiff retained counsel here having a conflict-of-interest, where Attorney Bochetto was retained by Defendant Arkadiy Lyampert in the same or substantially-related matter, to further Mr. Lyampert's interest by assisting Plaintiff under the LTA. This matter is more fully briefed in connection with a Motion to Disqualify which is filed contemporaneously with this Motion. If this Court disqualifies opposing counsel, then Plaintiff would have to go through the process of finding replacement counsel. That might as well be had in California. Plaintiff has traveled to California, and Plaintiff's evidence — consisting of electronic data, is portable and easily taken to California.

**(d)** **Interstate Justice System's Interest in Efficient Resolution of Controversies.**

The efficiency factor favors the other forum where most of the witnesses are located there, "the evidence is there, and it is not clear that Pennsylvania law will apply to the merits." O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 325 (3d Cir. 2007) (citation omitted). Here, the LTA is governed by California law, the Defendants have privileges of confidentiality governed by California law, and the witnesses are in California and in the United Kingdom, but California has compulsory process where British counsel have offices in Los Angeles. [Aff. Anna Lyampert ¶¶ 3-36, Ex. E; Aff. Elena Lyampert ¶¶ 48-45, Ex. D; Aff. Arkadiy Lyampert ¶¶ 44-51, Ex. C].

**(e)** **Fundamental Social Policies.**

Pennsylvania social policies are not furthered here, because the LTA does not designate Pennsylvania for arbitration, unlike other agreements federal courts have passed upon for purposes of personal jurisdiction. See, e.g., Greenfield Advisors, LLC v. Salas, 733 Fed. App'x 364, 366 (9th Cir. 2018) ("This service relationship was governed by Washington law with any disputes to be arbitrated in Washington."); Moncrief Oil Inter. v. OAO Gazprom, 481 F.3d 309, 313 (5th Cir. 2007) ("Perhaps most significantly, the Cooperation Agreement . . . included clauses calling for mandatory arbitration in Russia, under Russian law."). Second, the attorney-client confidentiality and privilege at stake here are governed by California law, not Pennsylvania's.

## II.     IMPROPER VENUE.

All Defendants request to dismiss under Fed. R. Civ. P. 12(b)(3) or, alternatively, for transfer to the U.S. District Court for the Central District of California under 28 U.S.C. § 1406(a).

### A.     Applicable Legal Standard.

"Generally, when deciding a Rule 12(b)(3) motion to dismiss for improper venue, a court must accept as true the allegations in the complaint, although the parties may submit affidavits to

support their positions. In a motion to dismiss for improper venue, the defendant bears the burden

of showing that venue is improper." Leone v. Cataldo, 574 F. Supp. 2d 471, 483 (E.D. Pa. 2008)

(citations omitted). In diversity cases, a venue is proper if brought in any of the following:

> (1) a judicial district in which any defendant resides, if all defendants are residents
> of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving
> rise to the claim occurred, or a substantial part of property that is the subject of the
> action is situated; or
> (3) if there is no district in which an action may otherwise be brought as provided
> in this section, any judicial district in which any defendant is subject to the court's
> personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). However, "venue must be proper for each claim in a case with multiple

claims." Lomanno v. Black, 285 F. Supp. 2d 637, 641 (E.D. Pa. 2003) (quotation omitted).

Subsection (1) is not available to Plaintiff, since all Defendants reside in the State of

California. Subsection (3) is not available because Plaintiff could have brought the suit in the U.S.

District Court for the District of California under Subsection (1). That only leaves Subsection (2).

Under Subsection (2), the court "will conduct a claim specific inquiry." Lomanno, 285 F.

Supp. 2d at 642.

> Furthermore, even if some events that gave rise to a claim occurred in a district,
> events or omissions that might only have some tangential connection with the
> dispute in litigation are not enough. Specifically, the events must qualify as
> substantial under Section 1391(a)(2) for venue to be proper. To determination
> whether an act or omission giving rise to the claims is substantial, the court must
> look at the nature of the dispute.

Id. (quotations and internal citations deleted). In respect of torts or contract breaches, venue is

improper "if injury is the only event occurring in that district." Id. (citation omitted). "It is

appropriate when determining venue for a court to ascertain which of the defendant's acts or

omissions gave rise to the claim, and of those acts or omissions, which of them took place in the

Eastern District of Pennsylvania." Leone v. Cataldo, 574 F. Supp. 2d 471, 484 (E.D. Pa. 2008)

(citing <u>Daniel v. Am. Bd. of Emergency Med.</u>, 428 F.3d 408, 432 (2d Cir. 2005)). In essence, "a court should consider where the contract was negotiated, executed, and performed and where the breach occurred." <u>Id.</u> (citations omitted).

**B.    Application to the Instant Case.**

The Complaint does not identify any acts or omissions by the Defendants which occurred in the Eastern District of Pennsylvania. Generally, the Complaint alleges that the Defendants refused to tender payments and bonuses and have refused to participate in arbitration, thereby breaching a Long-Term Agreement ("LTA"). [Compl. ¶ 5]. As shown in Statement II of the Statement of Relevant Facts, none of those alleged breaches occurred in the Eastern District of Pennsylvania, as the Defendants reside in California, and the LTA does not contain any forum-selection clause. In fact, the Complaint quotes the arbitration provision of the LTA, which required Mr. Jeffrey Farrow, Esquire, a California attorney residing in California, to conduct a coin-toss on the method of arbitration. [Compl. ¶ 60; <u>see also</u>, <u>id.</u> ¶ 63 ("Due to the failure and refusal by Defendants ***and their California counsel*** to cooperate . . ." (emphasis added)].   That coin-toss would have occurred in California, if Mr. Farrow had performed it.  Thus, the omission of a coin-toss, likewise, occurred in California.

Accepting Plaintiff's allegations as true for the sake of argument, it provided litigation support services during simultaneous judicial proceedings, which included confidential, out-of-court communications between Defendants and their legal counsel and other professionals in California and in the United Kingdom. California, Mr. Lyampert's home State, "was the location of his family and lawyers representing Defendant in US Proceedings. LSS had regular interactions with multiple attorneys in London, England representing Lyampert in UK Proceedings. The time difference between London and California is eight hours. The headquarters of LAMUK are also

located in England." [Compl. ¶ 26 n.3].  Thus, the subject-matter of the LTA involved lawsuits in jurisdictions outside of the Commonwealth of Pennsylvania, involving parties, lawyers and other professionals also located outside of the Commonwealth of Pennsylvania.

Through artful pleading, Plaintiff generally alleges that "the majority" of its work under the LTA was performed in Philadelphia and in Southampton, within the Eastern District of Pennsylvania. [Compl. ¶¶ 65-66]. In understanding that allegation, the court must construe Plaintiff's Complaint as a whole. As already shown, Plaintiff admits that Defendants and their legal teams were located in California or the United Kingdom, "with the work load often coming in spurts *and relevant parties located in multiple time zones that were up to 8-10 hours apart*." [Compl. ¶ 26 (emphasis added)]. However, Plaintiff performed English-Russian translation services and "exchanged over 6,500 e-mails with the Lyampert Group and their US/UK lawyers," reviewed documents, "participated in thousands of phone calls and videoconferences," and "attended dozens of in-person meetings" (without specifying where, exactly) "with Lyampert Group members, their attorneys, partners, employees, accountants, investigators and other associates," among other things. [See Compl. ¶ 28]. As shown in Mr. Lyampert's Affidavit, a majority of Plaintiff's work in the Eastern District of Pennsylvania involved e-mails and phone calls. [Aff. Arkadiy Lyampert ¶ 19, Ex. C].  Plaintiff performed in California and in New York, besides Pennsylvania. [Id. ¶¶ 20-23].

As shown in Part II of the Statement of Relevant Facts, Mr. Lyampert negotiated the LTA while Mr. Mogilyansky was in California, and by phone and e-mail, and that the Defendants signed the LTA in California. Plaintiff's alleged legal injury is the only substantial event occurring in the Eastern District of Pennsylvania. All other substantial events—the actions and omissions by Defendants—occurred outside the Eastern District of Pennsylvania. That does not meet the

threshold required under 28 <u>U.S.C.</u> § 1391(b)(2), as recognized in <u>Lomanno</u>. Relief is due.

## III.   *FORUM NON CONVENIENS*.

All Defendants request to transfer to the U.S. District Court for the Central District of California, as an alternative to dismissal under Fed. R. Civ. P. 12(b)(3).

### A.   **Applicable Legal Standard.**

Under 28 <u>U.S.C.</u> § 1404(a), a defendant seeking relief "on *forum non conveniens* grounds must show that the balance of the public and private factors tip decidedly in favor of trial in the foreign forum." <u>Windt v. Qwest Communications Int'l, Inc.</u>, 529 F.3d 183, 192 (3d Cir. 2008) (citation and internal quotations deleted). "[T]here is no definitive formula or list of the factors to consider," but the court may consider the following:

> [P]laintiff's forum preference as manifested in the original choice; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records.

<u>Jumara v. State Farm Ins.</u>, 55 F.3d 873, 879 (3d Cir. 1995) (internal citations deleted). Public interests include (1) "the enforceability of the judgment," (2) "practical considerations that could make the trial easy, expeditious, or inexpensive," (3) "the relative administrative difficulty in the two for a resulting from court congestion," (4) the local interest in deciding local controversies at home," (5) "the public policies of the fora," and (6) "the familiarity of the trial judge with the applicable state law in diversity cases." <u>Id.</u> at 879-80.

### B.   **Application to the Instant Case.**

Here, the alleged breach of the LTA occurred in California, the client files from the underlying litigation are not located in Pennsylvania, and witnesses include Mr. Lyampert's counsel from the California and U.K. litigation who are very likely unavailable in the Eastern

District of Pennsylvania. The British firm of O'Melveny & Myers, LLP has offices in London and in Los Angeles, but not in Pennsylvania. [Aff. Anna Lyampert ¶ 33, Ex. E].  Attorney Jeffrey Foster is a California attorney with offices in California, not Pennsylvania.  [Id. ¶ 34].  Attorney Steven Gleitman, who was responsible for the formation of the Trust-Defendants, is a California attorney in Los Angeles, without offices in Pennsylvania.  [Aff. Elena Lyampert ¶¶ 49-50]. Plaintiff's evidence involves electronic data, which Plaintiff is portable and already compiled by Plaintiff. [Aff. Arkadiy Lyampert ¶ 49, Ex. C].  Plaintiff's Managing Member, Mr. Mogilyansky, has traveled to California, including during settlement negotiations with the party-opponent from the California litigation. [Id. ¶¶ 20-22].  If the Court agrees with Part I, then personal jurisdiction is lacking for six out of seven Defendants, but all are citizens of California.  All of the aforementioned witnesses and the Defendants can prepare for their own defense with counsel of their own choice in the same time-zone. [Id. ¶ 51; Aff. Elena Lyampert ¶ 54, Ex. D; Aff. Anna Lyampert ¶ 36].  Only Plaintiff and Attorney Bochetto are in Pennsylvania. These factors predominate in favor of California as the convenient forum of the parties and witnesses.

Public interests do not alter the result. Because a coin-toss on the method of arbitration under the LTA can only be accomplished by Attorney Farrow in California, courts decline to apply local law "if arbitration is to take place in another state because of the reluctance of a court to order that an act be done in an area outside its jurisdiction." RESTATEMENT (SECOND) OF CONFLICT OF LAW § 219, cmt. a.  California law applies to the LTA for the same reasons stated in Part I.C.3, and this Court has less familiarity with substantive California law than the U.S. District Court for the Central District of California. Because California lays claim to the negotiation, execution, part-performance, and alleged breach of the LTA, it is too difficult to say that there are local interests involved. For the same reasons stated in Part 1.C.3, public policy of the fora favors California,

since California attorney-client confidentiality and privilege are involved.

## **<u>CONCLUSION</u>**

The Complaint should be dismissed under Fed. R. Civ. P. 12(b)(2)-(3) or transferred to the

U.S. District Court for the Central District of California under 28 <u>U.S.C.</u> §§ 1404(a), 1406(a).

CORNERSTONE LAW FIRM, LLC

By: /s/ David W. Crossett
David W. Crossett, Esquire
I.D. # 313031
8500 Allentown Pike,
Suite 3
Blandon, PA 19510
(610) 926-7875
*Counsel for Defendants*

Date: April 18, 2019

25

Exhibit "A"

Litigation Support Services, LLC v. Arkadiy Lyampert, et. al.
Civil Action No.: 2:19-CV-01574-ER

# Litigation Support Services, LLC

March 25, 2016

Mr. Arkady Lyampert
25531 Prado de Azur
Calabasas, CA 91302

## Engagement Letter

Dear Mr. Lyampert:

You have requested that Litigation Support Services, LLC ("LSS") provide you with various services relating to your lawsuits in the United Kingdom and the United States ("Lawsuits"), which, without limitation, are primarily related to various disputes, including shareholder disputes, between you and Mr. Roman Frenkel.

You are represented by professional counsel ("Attorneys") in these Lawsuits, and shall continue to retain said Attorneys for the purpose of legal advice and representation concerning the Lawsuits and other related matters.

You have professional Certified Public Accountant(s) ("Accountants") who have provided you with, and continue to provide you with, advice and/or representation relating to various tax matters, including but not limited to financial reporting, preparation and filing of tax returns, etc.

This Engagement Letter shall outline the terms on which Litigation Support Services, LLC ("LSS") shall provide you with its services. By signing below, you agree to accept these terms, acknowledge the limitations stated below, and promise to abide by your obligations stated herein.

The following are the types of services with which LSS shall provide you:

1. Interpreting and/or translation of various legal documents pertaining to the Lawsuits.
2. Assistance in the drafting and composition of your letters to various Attorneys who represent you and/or your companies (such as LA Micro Group (UK) Ltd) in the Lawsuits.
3. Assistance in verbal communications with the Attorneys who represent you in the Lawsuits and other attorneys and legal representatives with whom you may need help communicating.
4. Assistance in communications with third parties, as may be required, with the understanding that you have sought advice of your Attorneys regarding the nature and content of such communications, that they are sanctioned by, based on and take into consideration the legal advice and strategy you have received from and/or coordinated with your Attorneys or Accountants. You would be using LSS to facilitate the implementation of such advice. LSS shall not issue any legal advice, legal opinion, shall not create or develop legal strategy without coordination with your Counsel/Accountants/Experts and other professionals hired for that purpose, and you will take their and only their final opinions as guidance in your decisions, including decisions pertaining to the Lawsuits and related matters.
5. Assistance in arranging, conducting and documenting your meetings with your partners in various entities, including but not limited to facilitating board meetings of LA Micro Group (UK) Ltd on the premises of LSS and at other locations.
6. Assistance in analyzing financial records which pertain to the Lawsuits, with the understanding that such assistance shall be furnished and performed in conjunction with your Counsel and/or Accountants, and

always subject to your final review of all such analyses with your Attorneys and Accountants, whose opinions and advice you shall seek and obtain before utilizing any preliminary analysis reached by LSS and/or by you as a result of work with LSS.

In exchange for LSS and its staff providing you with the above referenced services, you agree to pay LSS $7,500 per month, starting with the month of December 2015 (when member(s) of LSS staff first began to render these services to you, notwithstanding the fact that LSS was not formed until later), plus an additional $500 per month starting in April 2016. Such payments shall be due until and unless you notify LSS, in writing, that you no longer require its services, in which case you shall pay the above amount(s) for all months up to and including the month in which you provide LSS with such notification. For expediency, you hereby authorize LSS to issue invoices for its services to you to your Attorneys in the UK, specifically to David Foster at O'Melveny and Meyers, LLP, who shall be authorized to make prompt payment of such invoices from your client account held with them.

Notwithstanding the above services being provided by LSS, it is important that you recognize that LSS is not a law firm, and is neither licensed nor able to provide you with legal advice and/or representation, nor with any other services for which an attorney is normally required. You have sought advice of professional attorneys, both in the UK and the USA, and agree that the services LSS has provided you with, and shall provide you with, never did amount, and never shall amount to the following, and agree to seek advice of professional attorneys in the event you desire to obtain any of the following services:

1. **Legal advice**, representation and analysis (these services can only be provided by your Attorneys);
2. **Tax advice**, preparation and representation (these services can only be provided by your Accountants);
3. **Any and all** other services which can only be provided by licensed professionals.

Please note that legal advice, legal representation and legal analysis can only be provided by your Counsel.

Please note that tax advice, preparation and representation services can only be provided by your Accountants.

Please note that any other expert and/or professional services can only be provided by licensed professionals.

While one of the Members of LSS is Irina Z. Vilk, Esq. is an attorney, you acknowledge that neither she nor LSS are providing you with any of the above services, and you will not consider her role in LSS to indicate otherwise.

You hereby agree to indemnify and hold harmless LSS and its staff from any lawsuits and claims which can be filed against you, or against LSS as a result of the assistance it provides to you.

By signing below, you certify that you have understood all the terms specified above, have sought professional legal counsel on engaging LSS to assist you, acknowledge all limitations set forth in this latter, and fully agree and accept all of the terms stated above.

Litigation Support Services, LLC:

Andrew Mogilyansky, Managing Member

Date: 03/25/16

Accepted and agreed:

Arkady Lyampert

Date: 03.25.16

Exhibit "B"

Litigation Support Services, LLC v. Arkadiy Lyampert, et. al.
Civil Action No.: 2:19-CV-01574-ER

<u>Long-Term Engagement Agreement</u>

March 14, 2017

Calabasas, CA / Southampton, PA

This is an agreement to extend the relationship between Litigation Support Services, LLC ("**LSS**") on one side, and Mr. Arkadiy Lyampert, Mrs. Elena Lyampert, Ms. Anna Lyampert, Esq., VRLA Tech LLC, EAA Investments LLC, LAMUK Settlement Holdings LLC, Valley View Grantor Retained Income Trust and Second Valley View Grantor Retained Income Trust (all together, "**Clients**").

LSS has been providing Clients and their attorneys in the USA and in the United Kingdom with various services under the terms of the Engagement Letter dated March 25, 2016 ("Engagement Letter"), as extended by e-mail agreement on August 22-23, 2016 ("Extension Agreement"). The preceding documents presently apply to all Clients, all of whom/which have used the services of LSS under the terms of the Engagement Letter and the Extension Agreement.

This Long-Term Engagement Agreement incorporates the Engagement Letter and the Extension Agreement and modifies them on terms and conditions more fully described below.

LSS and Clients hereby agree to extend their relationship on the following terms and conditions:

1. Terms used in this agreement are as defined and used in the Engagement Letter and the Extension Agreement, as well as in various pleadings in the US Litigation and UK Litigation involving the Clients.

2. The term "support services" describes the general type of assistance LSS and its staff has been providing to Clients since early 2016.

3. Clients and LSS agree not to renegotiate the below-agreed services and compensation prior to the conclusion of the Term agreed below, except under the provisions of Paragraph 11 below allowing for periodic adjustments of Fee under certain conditions.

Long-Term Engagement Agreement

March 14, 2017

Calabasas, CA / Southampton, PA

This is an agreement to extend the relationship between Litigation Support Services, LLC ("**LSS**") on one side, and Mr. Arkadiy Lyampert, Mrs. Elena Lyampert, Ms. Anna Lyampert, Esq., VRLA Tech LLC, EAA Investments LLC, LAMUK Settlement Holdings LLC, Valley View Grantor Retained Income Trust and Second Valley View Grantor Retained Income Trust (all together, "**Clients**").

LSS has been providing Clients and their attorneys in the USA and in the United Kingdom with various services under the terms of the Engagement Letter dated March 25, 2016 ("Engagement Letter"), as extended by e-mail agreement on August 22-23, 2016 ("Extension Agreement"). The preceding documents presently apply to all Clients, all of whom/which have used the services of LSS under the terms of the Engagement Letter and the Extension Agreement.

This Long-Term Engagement Agreement incorporates the Engagement Letter and the Extension Agreement and modifies them on terms and conditions more fully described below.

LSS and Clients hereby agree to extend their relationship on the following terms and conditions:

1. Terms used in this agreement are as defined and used in the Engagement Letter and the Extension Agreement, as well as in various pleadings in the US Litigation and UK Litigation involving the Clients.

2. The term "support services" describes the general type of assistance LSS and its staff has been providing to Clients since early 2016.

3. Clients and LSS agree not to renegotiate the below-agreed services and compensation prior to the conclusion of the Term agreed below, except under the provisions of Paragraph 11 below allowing for periodic adjustments of Fee under certain conditions.

4. LSS hereby agrees to provide and will continue to provide the following services to Clients and their attorneys until the end of the appeal process in the US Litigation ("Term"):

   a. Support services in the UK Litigation, including preparation for trial, possible appeal, etc.;

   b. Support services in the US Litigation, including stay of execution, appeal, collection, etc.;

   c. Support services in the fraudulent transfer litigation against Clients ("FT Litigation");

   d. Support services in Clients' malpractice litigation against Mr. Jamgotchian ("JJJ Litigation");

   e. Support services in the relationship with David Bell and LA Micro Group (UK) Ltd ("LAMUK");

   f. Other similar support services and consulting as may be necessary from time to time;

   g. Maintain privilege and confidentiality of communications with all Clients where applicable;

5. Clients agree to continue to retain LSS throughout the Term, and:

   a. To continue to pay LSS $11,500 per month ("Fee") throughout the Term, subject to provisions of Paragraph 11 below allowing for possible renegotiation of the Fee on an annual basis;

   b. In the event of Success in UK, to promptly effect or arrange a Transfer of UK Shares to LSS representing 4% of the total shares of LAMUK; however both Clients and LLS agree that if the court holds that Frenkel is not entitled to any shares of LAMUK but Clients must still pay Frenkel a share of any "profit" received to date, then LSS will contribute 4% of that amount.;

   c. In the event of Success in US:

      • If the net amount of the resulting judgment after the appeal is $1,000,000 or more in favor of Clients (i.e. the appeal results in a judgment in favor of Clients which exceeds the then-outstanding judgment against Clients by $1,000,000 or more), then Clients will promptly effect or arrange a Transfer of UK Shares to LSS representing an additional 4% of the total shares of LAMUK;

      • If the net amount of the resulting judgment after the appeal is between $0 and $1,000,000 in favor of Clients, then Clients will promptly effect or arrange a Transfer of UK Shares to LSS equal to the same proportion of 4% as the net amount of the judgment in favor of Clients is a proportion of $1,000,000. For example, a $500,000 net judgment for Clients will trigger a 2% Transfer of UK Shares to LSS;

4. LSS hereby agrees to provide and will continue to provide the following services to Clients and their attorneys until the end of the appeal process in the US Litigation ("Term"):

   a. Support services in the UK Litigation, including preparation for trial, possible appeal, etc.;

   b. Support services in the US Litigation, including stay of execution, appeal, collection, etc.;

   c. Support services in the fraudulent transfer litigation against Clients ("FT Litigation");

   d. Support services in Clients' malpractice litigation against Mr. Jamgotchian ("JJJ Litigation");

   e. Support services in the relationship with David Bell and LA Micro Group (UK) Ltd ("LAMUK");

   f. Other similar support services and consulting as may be necessary from time to time;

   g. Maintain privilege and confidentiality of communications with all Clients where applicable;

5. Clients agree to continue to retain LSS throughout the Term, and:

   a. To continue to pay LSS $11,500 per month ("Fee") throughout the Term, subject to provisions of Paragraph 11 below allowing for possible renegotiation of the Fee on an annual basis;

   b. In the event of Success in UK, to promptly effect or arrange a Transfer of UK Shares to LSS representing 4% of the total shares of LAMUK; however both Clients and LLS agree that if the court holds that Frenkel is not entitled to any shares of LAMUK but Clients must still pay Frenkel a share of any "profit" received to date, then LSS will contribute 4% of that amount.;

   c. In the event of Success in US:

      • If the net amount of the resulting judgment after the appeal is $1,000,000 or more in favor of Clients (i.e. the appeal results in a judgment in favor of Clients which exceeds the then-outstanding judgment against Clients by $1,000,000 or more), then Clients will promptly effect or arrange a Transfer of UK Shares to LSS representing an additional 4% of the total shares of LAMUK;

      • If the net amount of the resulting judgment after the appeal is between $0 and $1,000,000 in favor of Clients, then Clients will promptly effect or arrange a Transfer of UK Shares to LSS equal to the same proportion of 4% as the net amount of the judgment in favor of Clients is a proportion of $1,000,000. For example, a $500,000 net judgment for Clients will trigger a 2% Transfer of UK Shares to LSS;

d. If Clients receive money, assets, or anything else of value from any party following Success in UK or in US, these proceeds with be shared with LSS as follows:

- From any money or assets <u>actually received</u> by Clients or their attorneys as a result of Success in UK, Clients will pay LSS a 20% share of that money or those assets, net of any amounts spent by Clients on collection after obtaining a final judgment;

- From any money or assets <u>actually received</u> by Clients or their attorneys as a result of Success in US, Clients will pay LSS a 25% share of that money or those assets;

e. If Clients or their counsel receive a JJJ recovery which exceeds JJJ Threshold (the amount of which is not agreed, and remains to be determined later by LSS and Clients), they will pay LSS 25% of such excess over JJJ Threshold;

6. The terms used above are defined as follows:

a. "Success in UK" means a court ruling or other resolution of the UK Litigation in which Clients retain their present 50%-51% share in LAMUK;

b. "Success in US" means a ruling on the appeal in the US Litigation which replaces Clients' liability to Frenkel with Frenkel's liability to Clients;

c. "Transfer of UK Shares" means a transfer of shares in LA Micro Group (UK) Ltd to LSS, with Clients retaining all voting rights of these shares, and LSS not obtaining any special rights to force a buy-out of its shares by majority shareholders of LAMUK;

d. "Options" means a future option granted to LSS to a purchase shares of LAMUK from Clients at a pre-agreed price or valuation;

e. "JJJ Threshold" means a sum to be determined by Clients and LSS in good faith in the next 60 days, plus costs of JJJ Litigation.

7. If a Transfer of Shares is made, Clients will protect LSS from dilution of its stake in LAMUK by not allowing (or compensating LSS for) any action resulting in the reduction of the total percentage of LAMUK's stock owned by LSS below the percentage issued to LSS (e.g. below 4% in case of Success in UK or 8% in case of Success in US);

8. If LSS gains influence over decisions of LAMUK as a result of the Transfers of Shares, it will never act or vote against the interest of Client.

9. Clients and LSS agree to discuss, in good faith, a "bonus compensation" package for LSS for work done to date, based on the following premises:

   a. There is currently no agreement on such package, and any package agreed must be reasonable and satisfactory to both sides;

   b. The parties have discussed that such package may involve a Transfer of Shares and/or Options, but nothing has been agreed yet;

   c. The parties have estimated the value of a 50% share in LAMUK at $3,000,000 for purpose of Options, but nothing has been agreed yet;

   d. The parties have discussed that LSS believes it is entitled to such a package, and agreed to have a further discussion on this subject;

   e. The purpose of this Section 9 is only to reflect the status of negotiations on this subject, and to agree to continue them in good faith (i.e. nothing in this Section 9 is to be understood as an obligation on Clients to do anything unless they first voluntarily agree to it).

10. It is further explicitly agreed that additional discussions will be held between LSS and Clients concerning the value of JJJ Threshold, including:

    a. The exact amount of JJJ Threshold which will fairly reflect a reasonable estimate of JJJ Litigation recovery without LSS involvement, to be decided after consultation with Jeff Farrow, Esq.;

    b. Increasing the share of the percentage from 25% to 50% and directing it to Litigation Support Services CA, LLC, owned 50/50 by LSS and Anna Lyampert, Esq.;

    c. The final agreement to be reached on JJJ Threshold, percentage and recipient will supersede the initial terms herein relating to JJJ.

11. If as of March 1, 2018, the average amount of work performed by LSS during the prior 6 months is significantly different from the average amount of work performed by LSS in the 6 months preceding the date of this agreement, the parties will engage in good-faith negotiations on adjusting the Fee

accordingly for the next 12 months. A similar procedure will take place every year prior to March 1. Notwithstanding the foregoing, the parties agree that the terms of this paragraph may be revised after Clients know the full terms of retainer of the appellate attorney(s) retained for the appeal work in the US Litigation.

12. LSS and Clients will strive to find amicable solutions to all situations which may arise in their relationship with each other. If LSS and Clients have a disagreement, they will first try to resolve it through good faith negotiations. If the disagreement cannot be amicably resolved through negotiations, LSS and Clients will arrange for informal mediation to be conducted by Jeff Farrow, Esq. and George Bochetto, Esq. via telephone or video conference. If this mediation proves unsuccessful, LSS and Clients will submit to binding arbitration in an arbitration venue and forum chosen by Mr. Farrow and Mr. Bochetto. If Mr. Farrow and Mr. Bochetto cannot agree on the method of arbitration, each of them will suggest one, and it will be decided by coin toss to be performed by Mr. Farrow.

Parties hereby agree to abide by the above terms and fulfill their obligations undertaken above.

(SIGNATURE PAGE FOLLOWS)

LSS:

Litigation Support Services, LLC:

By: _____
Andrew Mogilyansky, Managing Member

Digitally signed by Andrew Mogilyansky
DN: cn=Andrew Mogilyansky, o=LSS, ou,
email=andrew@litigationaid.com, c=US
Date: 2017.03.15 18:08:11 -04'00'

CLIENTS:

Arkadiy Lyampert:

_____
Arkadiy Lyampert

Elena Lyampert:

_____
Elena Lyampert

Anna Lyampert, Esq.:

_____
Anna Lyampert, Esq.

EAA Investments, LLC:

By: _____
Elena Lyampert, Managing Member

VRLA Tech, LLC:

By: _____
Anna Lyampert, Member

LAMUK Settlement Holdings, LLC:

By: _____
Arkadiy Lyampert, Managing Member

VRLA Tech, LLC:

By: _____
Arkadiy Lyampert, Member

Valley View Retained Income Trust:

By: _____
Elena Lyampert, Trustee

Second Valley View Retained Income Trust:

By: _____
Elena Lyampert, Trustee

Exhibit "C"

Litigation Support Services, LLC v. Arkadiy Lyampert, et. al.
Civil Action No.: 2:19-CV-01574-ER

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LITIGATION SUPPORT SERVICES, LLC : | | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | Civil Action No. 2:19-CV-01574-ER |
| ARKADIY LYAMPERT; | : | |
| and | : | |
| ELENA LYAMPERT; | : | |
| and | : | |
| ANNA LYAMPERT; | : | |
| and | : | |
| EAA INVESTMENTS, LLC; | : | |
| and | : | |
| VRLA TECH, LLC; | : | |
| and | : | |
| VALLEY VIEW GRANTOR RETAINED | : | JURY TRIAL DEMANDED |
| INCOME TRUST; | : | |
| and | : | |
| SECOND VALLEY VIEW GRANTOR | : | |
| RETAINED INCOME TRUST, | : | |
| Defendants. | : | |

## AFFIDAVIT OF ARKADIY LYAMPERT

      Arkadiy Lyampert, being duly sworn according to law, deposes and says the following:

1.    I am an adult individual and a Defendant in the above-captioned case.

2.    I am a citizen of the State of California, residing in Calabasas (Los Angeles County).

3.    Defendant Elena Lyampert is my wife, and Defendant Anna Lyampert is my daughter.

4.    I am submitting this Affidavit for the limited purpose of addressing the issue of contacts with the Commonwealth of Pennsylvania, whether venue in the Eastern District of Pennsylvania is improper, and the availability of witnesses and evidence, in support of my counsel's Motion to Dismiss or, Alternatively, to Transfer Venue ("the Motion").

5.    I expect that I may recall additional information as this litigation progresses.

1

## I.       COURSE OF DEALINGS WITH THE PLAINTIFF.

6.      English is my second language. I was born in the Soviet Union on November 28, 1964, and I came to the United States when I was 28 years of age. I am capable, given sufficient time, of understanding written English and of expressing myself in writing, but at times I struggle with oral conversations and my spoken English is very poor. In an abundance of caution, I obtained an English-Russian translation regarding the substance of this Affidavit and I believe that it is accurate.

7.      The Managing Member of Plaintiff is Andrew Mogilyansky. I have personally known Mr. Mogilyansky since 2004 or 2005. He is a Russian-American who is fluent in English and Russian.

8.      The Civil Complaint references, but does not incorporate by reference, a Statement of Claim prepared for arbitration. This Statement of Claim contains privileged and confidential information, and on those grounds I object to its consideration by the court to the fullest extent permitted by law on behalf of myself and Defendant VRLA Tech, LLC.

### A.      The Underlying Litigation in California and in the United Kingdom.

9.      On or about February 8, 2010, a former business partner of mine, Mr. Roman Frenkel, requested to dissolve a California computer equipment business that we both owned, LA Micro Group, Inc. On or about March 18, 2010, Mr. Frenkel and other persons filed suit against me in the Superior Court of California, Los Angeles County (the "First Lawsuit" or "California litigation").  In the First Lawsuit, Mr. Frenkel alleged that I breached my fiduciary duties, among other things. On or about November 13, 2015, Mr. Frenkel also filed suit against me in the High Court of Justice of England and Whales, concerning the

ownership of an equity interest in LA Micro Group UK, Ltd., a company organized under the laws of the United Kingdom (the "Second Lawsuit" or "U.K. litigation").

10.     In the California litigation, I engaged Mr. Jeffrey Farrow, Esquire ("California counsel"), a licensed California attorney who is employed by Michelman & Robinson, LLP. His office is 17901 Von Karman Avenue, 10th Floor, Irvine, CA 92614.

11.     In the U.K. litigation, I engaged the law firm of O'Melveny & Myers, LLP ("British counsel"), among other things, because they had offices in Los Angeles, California, as well as London. In the London office of that firm, David Foster, Margarita Nikki Michael, and Matthew Thorne were among the attorneys involved with my case.

12.     In the California litigation, on or about April 19, 2016, the Superior Court of California issued a "Tentative Statement of Decision," intending to award a civil judgment against me in the amount of $4,700,000 plus costs. On or about May 18, 2016, Mr. Frenkel filed another civil complaint in the Superior Court of California, Los Angeles County, initially against me and Twin City Computer Group, LLC, alleging fraudulent conveyances in avoidance of an impending civil judgment (the "Third Lawsuit"). This also affected EAA Investments, LLC, because of its association with Twin City Computer Group, LLC.

**B.     Negotiating and Engaging Andrew Mogilyansky's Services.**

13.     What I needed the most was the English-Russian translation services of Mr. Mogilyansky because of the critical importance of the California and U.K. litigation, where I could not afford to have any mistakes in communication with my attorneys, CPA's, and other professionals, whether written or oral. I believed at that time that Mr. Mogilyansky was a good fit for those language needs because he is also a Russian-American who was born in

3

Russia and has an excellent understanding of Russian culture, idioms, and figures of speech.

14.     As a result of engaging Mr. Mogilyansky, through the Plaintiff, he was privy to privileged and confidential communications during the California and U.K. litigation.

15.     In roughly the fall of 2015, Mr. Mogilyansky contacted me through my cell phone, while I was in California. During that conversation, he learned of my circumstances from the California and U.K. litigation, and he explored the possibility of working as my translator.

16.     On March 25, 2016, Mr. Mogilyansky submitted to me an Engagement Letter, addressed to me at my personal residence in California, a true and correct copy is attached to the Motion as Exhibit "A" (the "Engagement Letter").

17.     I signed the Engagement Letter in California.

18.     Throughout Mr. Mogilyansky's performance of the agreed-upon services, he regularly submitted Plaintiff's invoices to my British counsel, who paid those invoices against my client trust account.

19.     Throughout Mr. Mogilyansky's performance of the agreed-upon services, the center of gravity during the California and U.K. litigation was in California, not Pennsylvania. In that litigation, my attorneys, Mr. Mogilyansky and I conducted videoconferencing over the Internet through Skype, and I mostly conversed with Mr. Mogilyansky through his cell phone. I understood that Plaintiff had a business office in Pennsylvania, but Mr. Mogilyansky could work from home if he wanted to and he often took phone calls from his residence or from his car. I personally did not care where he was located when it came to English-Russian translation of e-mails, or correspondence forwarded to him by e-

mails, or during phone calls or videoconferences, provided that he made himself available and kept the communication private.  If in-person services were needed, then Mr. Mogilyansky came to California and on a few occasions he did. I can reasonably approximate that Mr. Mogilyansky traveled to California at least two or three times a year, for a couple of weeks at a time, during the years of his performance under our contractual relationship.

20.    Mr. Mogilyansky had two trips to California in June and July-August of 2016, to provide litigation support services in my conversations with Certified Public Accountants and with attorneys. In one of these visits Mr. Mogilyansky also held a meeting with Roman Frenkel in attempt to negotiate a settlement agreement on my behalf.

21.    In February 4-6, 2018, Mr. Mogilyansky came with me to New York City, to serve as my representative during a board meeting of LA Micro Group UK, Ltd.

22.    In February of 2018, Mr. Mogilyansky also came to Los Angeles for two weeks, for the purpose of assisting my counsel and I for the preparation of an appellate brief in the California litigation.

23.    Where I did travel to Pennsylvania, I did so in my personal capacity and at my choosing, not because of any obligations in my contractual relationship with Plaintiff. On April 9-10, 2016, I used Plaintiff's offices in Southampton, Pennsylvania, for a business meeting with a director from LA Micro Group UK, Ltd., and Mr. Mogilyansky was present for his services. In July of 2016, I again held a board meeting with LA Micro Group UK, Ltd. at Plaintiff's offices in Southampton. In February 4-5, 2017 and in November 2017, I also held meetings with LA Micro Group UK, Ltd. in Philadelphia, Pennsylvania.

**C.    The Long-Term Agreement.**

5

24. On or about October 12, 2016, Mr. Frankel amended his civil complaint in the Third Lawsuit, adding my wife and daughter as defendants in their personal capacity, along with VRLA Tech, LLC. My wife was also added in her capacity as trustee for Valley View Grantor Retained Income Trust and Second Valley View Grantor Retained Income Trust.

25. On January 11, 2017, the Superior Court of California, Los Angeles County, issued a Revised Statement of Decision in the First Lawsuit, as a civil judgment (the "California Judgment").

26. During February and early March of 2017, Mr. Mogilyansky traveled here, to Los Angeles County, California, and negotiated with me the terms of what would become the Long-Term Agreement for services regarding the California Judgment. We also negotiated over the phone and by e-mail, exchanging a draft document that would reflect our intent. During that time, I would ask for my daughter, Anna, to make alterations to the draft based on the terms I had wanted, and she would then e-mail that to Mr. Mogilyansky. Only I negotiated with him, not my wife and daughter. The final draft became ready on March 14, 2017.

27. On March 15, 2017, I signed the Long-Term Agreement, as did my wife and daughter, in California. At my request, my daughter e-mailed the final version to Mr. Mogilyansky.

28. A true and correct copy of the Long-Term Agreement is attached to the Motion as Exhibit "B."

29. At no point during my negotiations with Mr. Mogilyansky over the Long-Term Agreement did we address the idea of forum-selection, and he never requested or pressed for a requirement for disputes to be filed with any courts situated in Pennsylvania.

30.     During my negotiations with Mr. Mogilyansky before signing the Long-Term Agreement, he was well-aware of my financial and legal situation and that I was about to face an execution process and that I faced fraudulent conveyance allegations in the Third Lawsuit. For purposes of guarding our attorney-client confidentiality and privilege, if a joint-defense was necessary, where my wife and daughter, the Trust-Defendants, VRLA Tech, LLC, and EAA Investments, LLC had liability exposure, we added them as parties to the Long-Term Agreement.

31.     On March 16, 2017, through my California counsel I obtained a temporary stay of the execution of the California judgment, but subject to an asset-freezing order, enjoining myself and anyone acting on my behalf from selling, assigning, transferring, encumbering, or disposing of any of my property.

32.     On May 25, 2017, the Superior Court of California, Los Angeles County, assessed costs against me at $184,300.

33.     On July 17, 2017, in the United Kingdom, Mr. Frenkel submitted an *ex parte* application for an asset-freezing injunction against me with the High Court of Justice of England and Wales, to enforce the California judgment against any dividends from my equitable interest in LA Micro Group UK, Ltd. The High Court of Justice granted the application and did not dissolve it until on or about December 6, 2017.

34.     By signing the Long-Term Agreement, I did not believe I was creating any long-term obligations in Pennsylvania, because the subject-matter involved litigation in California and in the United Kingdom.

## II.     THE CONTROVERSY WITH LITIGATION SUPPORT SERVICES, LLC.

7

35.     The Civil Complaint references, but does not incorporate by reference, a Statement of Claim prepared for arbitration. This Statement of Claim contains privileged and confidential information, and on those grounds I object to its consideration by the court to the fullest extent permitted by law on behalf of myself and Defendant VRLA Tech, LLC.

36.     If Plaintiff had any involvement with Defendant VRLA Tech, LLC, then it occurred in the State of California, before the execution of the LTA, and having no part of our contractual relationship under the Engagement Letter.

37.     When I signed the LTA, in my personal capacity and as member of Defendant VRLA Tech, LLC, I understood the subject-matter of the LTA as relating to lawsuits in the State of California and in the United Kingdom, not in the Commonwealth of Pennsylvania.

38.     During Plaintiff's performance under the LTA, no payments were directly transmitted to Plaintiff by Defendant VRLA Tech, LLC.

39.     Whether in my personal capacity or as member of Defendant VRLA Tech, LLC, if Plaintiff claims that we breached the LTA by non-payment of whatever Plaintiff alleges to be due and owing, then that allegedly occurred in California and not in Pennsylvania.

40.     At and before the time of signing the LTA, I relied on the course of dealings between myself and Mr. Mogilyansky as described in Part I, above: If English-Russian translation of e-mails, documents, phone calls or videoconferences were needed, then Mr. Mogilyansky was free to perform that wherever he wanted; but if Mr. Mogilyansky's services were needed in-person, then he was to come here to Los Angeles County, California.

41.   By signing the LTA, I never contemplated that I was subjecting myself, in my personal capacity, to the personal jurisdiction of any courts, State or federal, situated in the Commonwealth of Pennsylvania.

42.   By signing the LTA in my capacity as member of Defendant VRLA Tech, LLC, I never contemplated that I was subjecting VRLA Tech, LLC to the personal jurisdiction of any courts, State or federal, situated in the Commonwealth of Pennsylvania.

43.   I do not regard Paragraph 12 of the LTA as subjecting me, in my personal capacity, or subjecting Defendant VRLA Tech, LLC, to the personal jurisdiction of any courts situated in the Commonwealth of Pennsylvania.  When I reviewed the LTA, I did not see anything that required disputes to be brought in any court, State or federal, situated in the Commonwealth of Pennsylvania.  Paragraph 12 of the LTA, in particular, only provides that the parties will submit to binding arbitration "in an arbitration venue and forum chosen" by Mr. Jeffrey Farrow, Esquire "and" Mr. George Bochetto, Esquire — if neither of them could agree on venue and forum, then the LTA contains no deadlock provision and the question would default to California law, which provides for venue in California.  The coin-toss procedure in Paragraph 12 of the LTA relates to "the method of arbitration," not the venue or forum, and is to be performed by Attorney Farrow only, not Attorney Bochetto.

## III.   CONVENIENCE OF PARTIES AND WITNESSES.

44.   I am deeply concerned whether the U.S. District Court for the Eastern District of Pennsylvania may not appreciate a serious danger underlying the Plaintiff's allegations from the Civil Complaint which may substantially prejudice the ability of myself, my family, and the other Defendants in preparing and presenting any defenses:   Where

9

performing Plaintiff's services, Mr. Andrew Mogilyansky was privy to attorney-client and other confidential communications which puts him in a position where he could use that information to attempt to take credit for all sorts of developments in the California and United Kingdom litigation. As a result, an effective rebuttal of Plaintiff's allegations would involve having to depose or subpoena the attorneys involved in those lawsuits, among other persons.

45.   In the Statement of Claim, for instance, Plaintiff quotes statements and includes e-mails to and from the attorneys in the California and U.K. litigation: (a) Mr. Jeffrey Farrow, Esquire and Eric Rans, Esquire, California attorneys in the law firm of Michelman & Robinson, LLP, with offices in Irvine, California; and (b) counsel from O'Melveny & Myers, LLP, including Margarita Michael, Matthew Thorne, and David Foster, with offices in London, of the United Kingdom.

46.   What deeply concerns me about litigating in Pennsylvania is the availability of witnesses, including the ability of obtain process to compel their attendance, if necessary, and the effective mitigation of costs.

47.   The British firm of O'Melveny & Myers, LLP is subject to process and personal jurisdiction in California, having offices in Los Angeles. This firm does not have offices in the Commonwealth of Pennsylvania. Their other American offices are located in San Francisco, New York City, and Washington, D.C.

48.   Mr. Farrow's law firm, Michelman & Robinson, LLP has several offices in California, and offices in New York City and Chicago. This firm does not have offices in the Commonwealth of Pennsylvania.

49.     During July and August of 2018, I requested Mr. Mogilyansky to report about the work he has performed on Plaintiff's behalf for all Clients under LTA. He gathered all email communications with me, my family and my attorneys, and the California and U.K. litigation. Because that information was already in the nature of electronic data, it is easily portable and does not require any physical presence in the Commonwealth of Pennsylvania.

50.     Other than Mr. Mogilyansky, Attorney George Bochetto, and possibly Irina Vilk (the other member of Plaintiff), I cannot now recollect any witnesses in the Eastern District of Pennsylvania; all other witnesses are in California or the United Kingdom.

51.     If the instant case was transferred to the Central District of California, then I can retain California counsel for the defense of myself, who can interview witnesses in the same time zone.

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached and not the truthfulness accuracy, or validity of that document.

_____
Arkadiy Lyampert

Sworn to and subscribed before me this
18 day of April 2019

_____
Notary Public

CYNTHIA VICTORIA DUREN
Notary Public - California
Los Angeles County
Commission # 2239999
My Comm. Expires Apr 27, 2022

11

Exhibit "D"

Litigation Support Services, LLC v. Arkadiy Lyampert, et. al.
Civil Action No.: 2:19-CV-01574-ER

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LITIGATION SUPPORT SERVICES, LLC :
                     Plaintiff,     :
                                   :
           v.                   :
                                   :     Civil Action No. 2:19-CV-01574-ER
ARKADIY LYAMPERT;         :
and                            :
ELENA LYAMPERT;           :
and                            :
ANNA LYAMPERT;            :
and                            :
EAA INVESTMENTS, LLC;     :
and                            :
VRLA TECH, LLC;            :
and                            :
VALLEY VIEW GRANTOR RETAINED  :     JURY TRIAL DEMANDED
INCOME TRUST;            :
and                            :
SECOND VALLEY VIEW GRANTOR  :
RETAINED INCOME TRUST,     :
                   Defendants.  :

## AFFIDAVIT OF ELENA LYAMPERT

Elena Lyampert, being duly sworn according to law, deposes and says the following:

1.    I am an adult individual and a Defendant in the above-captioned case.

2.    I am a citizen of the State of California, residing in Calabasas (Los Angeles County).

3.    Defendant Arkadiy Lyampert is my husband, and Defendant Anna Lyampert is my daughter.

4.    I am the Managing Member of Defendant EAA Investments, LLC, a California limited liability company registered in California and in Delaware, and having a principal place of business in Calabasas, California.

1

5.   I am the Trustee for both the Defendants, Valley View Grantor Retained Income Trust and Second Valley View Grantor Retained Income Trust (the "Trust-Defendants").

6.   I am submitting this Affidavit for the limited purpose of addressing the lack of contacts with the Commonwealth of Pennsylvania, whether venue in the Eastern District of Pennsylvania is improper, and the availability of witnesses and evidence, in support of my counsel's Motion to Dismiss or, Alternatively, to Transfer Venue (the "Motion").

7.   I expect that I may recall additional information as this litigation progresses.

## I.   CONTACTS BETWEEN DEFENDANT ELENA LYAMPERT AND THE COMMONWEALTH OF PENNSYLVANIA.

8.   In my life, I have traveled one time to the Commonwealth of Pennsylvania.

9.   My visit to Pennsylvania that I can recall occurred in April of 2016, where my husband and I had a confidential conversation with Attorney George Bochetto at his offices in Philadelphia, which I understand that my husband will describe in more detail in a separate affidavit; however, during this visit, I acted in my personal capacity only.

10.  In my personal capacity, I do not own, possess, or have any interest in any real estate in the Commonwealth of Pennsylvania.

11.  In my personal capacity, I do not transact any business in the Commonwealth of Pennsylvania.

12.  In my personal capacity, I have never contracted to supply services or things in the Commonwealth of Pennsylvania.

13.  In my personal capacity, I have never accepted election or appointment, executed a bond, or exercised powers under the authority of the Commonwealth of Pennsylvania as a personal representative, guardian of a minor or incapacitated person, trustee or other fiduciary, or director or officer of a corporation.

14.     In my personal capacity, I have never made application to any government unit in the Commonwealth of Pennsylvania for any certificate, license, permit, registration or similar instrument or authorization or exercised any such instrument or authorization.

15.     In my personal capacity, I do own equity in business entities organized under the laws of California, such as Defendant EAA Investments, LLC, which may invest in other businesses (1) having ownership, possession, or any interest in real estate in the Commonwealth of Pennsylvania or (2) transacting business in the Commonwealth of Pennsylvania.

## II.    CONTACTS BETWEEN DEFENDANT EAA INVESTMENTS, LLC AND THE COMMONWEALTH OF PENNSYLVANIA.

16.     As Managing Member, I am personally familiar with the day-to-day activities of Defendant EAA Investments, LLC.

17.     EAA Investments, LLC is a passive investor in other businesses which may conduct business in Pennsylvania, such as owning shares as limited partner in Strategic Vision, LP, a Pennsylvania limited partnership which owns real estate in the Commonwealth of Pennsylvania.

18.     Other than as passive investor, EAA Investments, LLC otherwise does not transact any business in the Commonwealth of Pennsylvania, and does not have any offices or business accounts situated in the Commonwealth of Pennsylvania.

19.     EAA Investments, LLC otherwise has not contracted to supply services or things in the Commonwealth of Pennsylvania.

20.     EAA Investments, LLC has never accepted election or appointment, executed a bond, or exercised powers under the authority of the Commonwealth of Pennsylvania as a

3

personal representative, guardian of a minor or incapacitated person, trustee or other fiduciary, or director or officer of a corporation.

21.    EAA Investments, LLC has never made application to any government unit in the Commonwealth of Pennsylvania for any certificate, license, permit, registration or similar instrument or authorization or exercised any such instrument or authorization.

## III.   CONTACTS BETWEEN THE TRUST-DEFENDANTS AND THE COMMONWEALTH OF PENNSYLVANIA.

22.    As Trustee, I am personally familiar with the day-to-day activities of the Trust-Defendants.

23.    The Trust-Defendants are organized under the laws of California, and their legal formation was carried out in California by Attorney Steven Gleitman, having offices in Los Angeles.

24.    The Trust-Defendants were formed in California in 2004. I know of nothing in the formation of the Trust-Defendants which involved the Commonwealth of Pennsylvania.

25.    The Trust-Defendants both hold title to real estate situated in California.

26.    The Trust-Defendants do not transact any business in the Commonwealth of Pennsylvania.

27.    The Trust-Defendants have not contracted to supply services or things in the Commonwealth of Pennsylvania.

28.    The Trust-Defendants have never accepted election or appointment, executed a bond, or exercised powers under the authority of the Commonwealth of Pennsylvania as a personal representative, guardian of a minor or incapacitated person, trustee or other fiduciary, or director or officer of a corporation.

29.     The Trust-Defendants have never made application to any government unit in the Commonwealth of Pennsylvania for any certificate, license, permit, registration or similar instrument or authorization or exercised any such instrument or authorization.

**IV.    CONTACTS WITH THE COMMONWEALTH OF PENNSYLVANIA ARISING FROM THE CONTROVERSY WITH LITIGATION SUPPORT SERVICES, LLC.**

30.     The Civil Complaint references, but does not incorporate by reference, a Statement of Claim prepared for arbitration. This Statement of Claim contains privileged and confidential information, and on those grounds I object to its consideration by the court to the fullest extent permitted by law on behalf of myself, Defendant EAA Investments, LLC, and the Trust-Defendants.

31.     The Managing Partner of Plaintiff is Andrew Mogilyansky, who is fluent in English and Russian.

32.     The Civil Complaint by Plaintiff references a Long-Term Agreement ("LTA").  The services provided by Mr. Mogilyansky, on behalf of the Plaintiff, involved English-Russian translation during confidential, out-of-court communications between my husband and his attorneys and other professionals, relating to simultaneous proceedings in the Superior Court of California, Los Angeles County, and in the High Court of Justice in the United Kingdom. My husband was born and raised in the Soviet Union before he became a citizen of the United States, and English is his second language. Whether Plaintiff provided services other than English-Russian translation goes to the merits of the Civil Complaint, of which I am not now prepared to answer.

33.     In my personal capacity, I am a party to the Long-Term Agreement with Plaintiff, but I did not require any English-Russian translation services by Plaintiff.

5

34.    Defendant EAA Investments, LLC is a party to the Long-Term Agreement with Plaintiff, but did not require any English-Russian translation services by Plaintiff

35.    The Trust-Defendants are parties to the Long-Term Agreement with Plaintiff, but they did not require any English-Russian translation services Plaintiff.

36.    I signed the LTA, in my personal capacity, as Managing Member of Defendant EAA Investments, LLC, and as Trustee of the Trust-Defendants, while physically present in the State of California.

37.    Whether in my personal capacity, as Managing Member of Defendant EAA Investments, LLC, or as trustee of the Trust-Defendants, I did not negotiate the LTA with Plaintiff.

38.    When I signed the LTA, I was aware that my husband negotiated the LTA while Mr. Mogilyansky visited in California.

39.    When I signed the LTA, in my personal capacity, as Managing Member of Defendant EAA Investments, LLC, and as Trustee of the Trust-Defendants, I understood the subject-matter of the LTA as relating to a fraudulent conveyance lawsuit in the Superior Court of California, Los Angeles County, and I did not foresee any contacts with the Commonwealth of Pennsylvania as to myself, EAA Investments, LLC, or the Trust-Defendants. I did not see my husband's contacts with Mr. Mogilyansky, such as conducting business meetings in Pennsylvania with LA Micro Group UK, Ltd., as applicable to myself, EAA Investments, LLC, or the Trust-Defendants.

40.    During Plaintiff's performance under the LTA, no payments were directly transmitted to Plaintiff by myself, Defendant EAA Investments, LLC, or the Trust-Defendants.

41.    Whether in my personal capacity, as Managing Member of Defendant EAA Investments, LLC, or as trustee of the Trust-Defendants, if Plaintiff claims that we breached the LTA

6

by non-payment of whatever Plaintiff alleges to be due and owing, then that allegedly occurred in California and not in Pennsylvania.

42.   At and before the time of signing the LTA, I relied on the course of dealings between my husband and Mr. Mogilyansky:  In respect of litigation support services such as phone calls or document reviews, then Mr. Mogilyansky was free to perform that wherever he wanted; but if Mr. Mogilyansky's services were needed in-person, then he was to come here to Los Angeles County, California.

43.   When I signed the LTA, in my personal capacity, as Managing Member of Defendant EAA Investments, LLC, and as Trustee of the Trust-Defendants, I then believed that the LTA was governed by California law, because I signed it in California, I knew that my husband negotiated it while Mr. Mogilyansky visited in California, and the subject-matter included a lawsuit in California; for these reasons, I do not agree that it was foreseeable to anticipate being sued by a court situated in the Commonwealth of Pennsylvania.

44.   By signing the LTA, I never contemplated that I was subjecting myself, in my personal capacity, to the personal jurisdiction of any courts, State or federal, situated in the Commonwealth of Pennsylvania.

45.   By signing the LTA in my capacity as Managing Member of EAA Investments, LLC or as Trustee of the Trust-Defendants, I never contemplated that I was subjecting EAA Investments, LLC, or the Trust Defendants, to the personal jurisdiction of any courts, State or federal, situated in the Commonwealth of Pennsylvania.

46.   I am aware of the Mediation and Arbitration Clause in Paragraph 12 of the LTA, which is accurately quoted in Paragraph 60 of the Civil Complaint.  Paragraph 12 of the LTA references Attorney Jeffrey Farrow. I am personally familiar with and have interacted

with Mr. Farrow, who is a licensed California attorney, employed by Michelman & Robinson, LLP, and his office is 17901 Von Karman Avenue, 10th Floor, Irvine, CA 92614.

47.     I do not regard Paragraph 12 of the LTA as subjecting me, in my personal capacity, or subjecting Defendant EAA Investments, LLC or the Trust-Defendants, to the personal jurisdiction of any courts situated in the Commonwealth of Pennsylvania.   When I reviewed the LTA, I did not see anything that required disputes to be brought in any court, State or federal, situated in the Commonwealth of Pennsylvania.  Paragraph 12 of the LTA, in particular, only provides that the parties will submit to binding arbitration "in an arbitration venue and forum chosen" by Mr. Jeffrey Farrow, Esquire "and" Mr. George Bochetto, Esquire — if neither of them could agree on venue and forum, then the LTA contains no deadlock provision and the question would default to California law, which provides for venue in California. Where Mr. Farrow is a California attorney, I never anticipated that he would agree to venue or forum in Pennsylvania.  The coin-toss procedure in Paragraph 12 of the LTA relates to "the method of arbitration," not the venue or forum, and is to be performed by Attorney Farrow only, not Attorney Bochetto.

## V.     CONVENIENCE OF PARTIES AND WITNESSES.

48.     I agree with Part III in the Affidavit by my daughter, Anna Lyampert, concerning the availability of witnesses and evidence, and I agree that it would be materially prejudicial to my defense and to the defenses of Defendant EAA Investments, LLC and the Trust-Defendants, if personal jurisdiction and compulsory process cannot be obtained over the attorneys from the underlying California and U.K. litigation.

49.     I am aware that Plaintiff is alleging that Mr. Mogilyansky worked with Attorney Steven Gleitman in legal work involving the Trust-Defendants.  At this time, I believe these

allegations are materially inaccurate, and that increases the danger of whether Attorney Gleitman is a witness in rebutting Plaintiff's allegations.

50.   I am familiar with Attorney Gleitman, and his office is located at 1925 Century Park E #2000, Los Angeles, CA 90067-2721.  He does not have offices in the Commonwealth of Pennsylvania.

51.   I seriously doubt whether personal jurisdiction in the Eastern District of Pennsylvania exists as to Attorney Gleitman.

52.   I am aware that Mr. George Bochetto is a Pennsylvania attorney with offices in Philadelphia.  However, if Mr. Bochetto was a material witness, then it would only involve the extent of Plaintiff's allegations relating to the Mediation and Arbitration Clause of the LTA and not the balance of allegations under the Civil Complaint, especially as to the California and U.K. proceedings.

53.   Otherwise, I cannot now recollect any witnesses in the Eastern District of Pennsylvania other than Mr. Mogilyansky and possibly Irina Vilk Esq. (the other member of Plaintiff); all other witnesses are in California or the United Kingdom.

54.   If the instant case was transferred to the Central District of California, then I can retain California counsel for the defense of myself, of Defendant EAA Investments, LLC, and of the Trust-Defendants, who can interview witnesses in the same time zone.

Elena Lyampert

Sworn to and subscribed before me this
18 day of April _____ 2019

Notary Public

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness accuracy, or validity of that document.

CYNTHIA VICTORIA DUREN
Notary Public - California
Los Angeles County
Commission # 2239999
My Comm. Expires Apr 27, 2022

9

Exhibit "E"

Litigation Support Services, LLC v. Arkadiy Lyampert, et. al.
Civil Action No.: 2:19-CV-01574-ER

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LITIGATION SUPPORT SERVICES, LLC : | |
| Plaintiff, : | |
| : | |
| v. : | |
| : | Civil Action No. 2:19-CV-01574-ER |
| ARKADIY LYAMPERT; : | |
| and : | |
| ELENA LYAMPERT; : | |
| and : | |
| ANNA LYAMPERT; : | |
| and : | |
| EAA INVESTMENTS, LLC; : | |
| and : | |
| VRLA TECH, LLC; : | |
| and : | |
| VALLEY VIEW GRANTOR RETAINED : | JURY TRIAL DEMANDED |
| INCOME TRUST; : | |
| and : | |
| SECOND VALLEY VIEW GRANTOR : | |
| RETAINED INCOME TRUST, : | |
| Defendants. : | |

## AFFIDAVIT OF ANNA LYAMPERT

Anna Lyampert, being duly sworn according to law, deposes and says the following:

1.   I am an adult individual and a Defendant in the above-captioned case.

2.   I am a citizen of the State of California, residing in Woodland Hills (Los Angeles County).  I became admitted to the Bar of California in 2016.

3.   Defendants Arkadiy Lyampert and Elena Lyampert are my parents.

4.   I am submitting this Affidavit for the limited purpose of addressing the lack of contacts with the Commonwealth of Pennsylvania, whether venue in the Eastern District of Pennsylvania is improper, and the availability of witnesses and evidence, in support of my counsel's Motion to Dismiss or, Alternatively, to Transfer Venue ("the Motion").

1

5.      I expect that I may recall additional information as this litigation progresses.

I.      **CONTACTS BETWEEN DEFENDANT ANNA LYAMPERT AND THE COMMONWEALTH OF PENNSYLVANIA.**

6.      Never in my life have I traveled to the Commonwealth of Pennsylvania.

7.      In my personal capacity, I do not own, possess, or have any interest in any real estate in the Commonwealth of Pennsylvania.

8.      In my personal capacity, I do not transact any business in the Commonwealth of Pennsylvania.

9.      In my personal capacity, I have never contracted to supply services or things in the Commonwealth of Pennsylvania.

10.     In my personal capacity, I have never accepted election or appointment, executed a bond, or exercised powers under the authority of the Commonwealth of Pennsylvania as a personal representative, guardian of a minor or incapacitated person, trustee or other fiduciary, or director or officer of a corporation.

11.     In my personal capacity, I have never made application to any government unit in the Commonwealth of Pennsylvania for any certificate, license, permit, registration or similar instrument or authorization or exercised any such instrument or authorization.

12.     In my personal capacity, I do own equity in business entities organized under the laws of California which may invest in other businesses (1) having ownership, possession, or any interest in real estate in the Commonwealth of Pennsylvania or (2) transacting business in the Commonwealth of Pennsylvania; but in such circumstances, I am a passive investor only and indirectly through California business entities.

13.     For instance, I am a member, but not the managing member, of Defendant EAA Investments, LLC and of Defendant VRLA Tech, LLC.

## II.   CONTACTS WITH THE COMMONWEALTH OF PENNSYLVANIA ARISING FROM THE CONTROVERSY WITH LITIGATION SUPPORT SERVICES, LLC.

14.   The Civil Complaint references, but does not incorporate by reference, a Statement of Claim prepared for arbitration. This Statement of Claim contains privileged and confidential information, and on those grounds I object to its consideration by the court to the fullest extent permitted by law on behalf of myself and Defendant VRLA Tech, LLC.

15.   The Managing Partner of Plaintiff is Andrew Mogilyansky, who is fluent in English and Russian.

16.   The Civil Complaint by Plaintiff references a Long-Term Agreement ("LTA"). I then understand that the services provided by Mr. Mogilyansky, on behalf of the Plaintiff, involved litigation support services and English-Russian translation during confidential, out-of-court communications between my father and his counsel and other professionals, relating to simultaneous proceedings in the Superior Court of California, Los Angeles County, and in the High Court of Justice in the United Kingdom. My father was born and raised in the Soviet Union before he became a citizen of the United States, and English is his second language. Whether Plaintiff provided services other than English-Russian translation goes to the merits of the Civil Complaint, of which I am not now prepared to answer.

17.   I signed the LTA, in my personal capacity and as member of Defendant VRLA Tech, LLC, while physically present in the State of California. At that time, I was not acting in my capacity as an attorney and it bears mention that I had only been admitted to the practice of law for less than a year.

18.   When I signed the LTA, I was aware that my father negotiated the LTA while Mr. Mogilyansky visited in California. During those negotiations, my father asked that I relay

3

his requests to Mr. Mogilyansky for changes to the language of a prior draft of the LTA. I did this as a matter of respect and courtesy for my father, and not as a practicing attorney under an agreement of representation.

19.    After my parents and I signed the LTA, I transmitted the executed copy to Mr. Mogilyansky through e-mail.

20.    When I signed the LTA, in my personal capacity and as member of Defendant VRLA Tech, LLC, I understood the subject-matter of the LTA as relating to a fraudulent conveyance lawsuit in the Superior Court of California, Los Angeles County, and I did not foresee any contacts with the Commonwealth of Pennsylvania by myself or VRLA Tech, LLC. I did not see my father's contacts with Mr. Mogilyansky, such as conducting business meetings in Pennsylvania with LA Micro Group UK, Ltd., as applicable to myself or VRLA Tech, LLC.

21.    During Plaintiff's performance under the LTA, no payments were directly transmitted to Plaintiff by myself or Defendant VRLA Tech, LLC.

22.    Whether in my personal capacity or as member of Defendant VRLA, LLC, if Plaintiff claims that we breached the LTA by non-payment of whatever Plaintiff alleges to be due and owing, then that allegedly occurred in California and not in Pennsylvania.

23.    At and before the time of signing the LTA, I relied on the course of dealings between my father and Mr. Mogilyansky, acting on behalf of Plaintiff: In respect of litigation support services such as phone calls or document reviews, Mr. Mogilyansky was free to perform that wherever he wanted; but if Mr. Mogilyansky's services were needed in-person, then he was to come here to Los Angeles County, California.

24.    When I signed the LTA, in my personal capacity and as member of Defendant VRLA Tech, LLC, I then believed that the LTA was governed by California law, because I signed it in California, I knew that my father negotiated it while Mr. Mogilyansky visited in California, and the subject-matter included a lawsuit in California; for these reasons, I do not agree that it was foreseeable to anticipate being sued by a court situated in the Commonwealth of Pennsylvania.

25.    By signing the LTA, I never contemplated that I was subjecting myself, in my personal capacity, to the personal jurisdiction of any courts, State or federal, situated in the Commonwealth of Pennsylvania.

26.    By signing the LTA in my capacity as member of Defendant VRLA Tech, LLC, I never contemplated that I was subjecting VRLA Tech, LLC to the personal jurisdiction of any courts, State or federal, situated in the Commonwealth of Pennsylvania.

27.    In my personal capacity and as member of Defendant VRLA Tech, LLC, I am appalled at the proposition that personal jurisdiction by any courts situated in the Commonwealth of Pennsylvania could possibly be established merely because I exchanged e-mails with Mr. Mogilyansky or spoke with him on his cell phone, because that deeply upsets my ability to plan for business risks.  From my experience as an investor in today's "digital age," business persons and investors exchange numerous e-mails and call each other's cell phones every day, without any care or reference to where the recipient is located, and I believe and aver that these forms of communication are materially different than more traditional letter-writing mailed to a business address in another jurisdiction.

28.    I am aware of the Mediation and Arbitration Clause in Paragraph 12 of the LTA, which is accurately quoted in Paragraph 60 of the Civil Complaint.  Paragraph 12 of the LTA

references Attorney Jeffrey Farrow. I am personally familiar with and have interacted with Mr. Farrow, who is a licensed California attorney, employed by Michelman & Robinson, LLP, and his office is 17901 Von Karman Avenue, 10th Floor, Irvine, CA 92614.

29.     I do not regard Paragraph 12 of the LTA as subjecting me, in my personal capacity, or subjecting Defendant VRLA Tech, LLC, to the personal jurisdiction of any courts situated in the Commonwealth of Pennsylvania. When I reviewed the LTA, I did not see anything that required disputes to be brought in any court, State or federal, situated in the Commonwealth of Pennsylvania. Paragraph 12 of the LTA, in particular, only provides that the parties will submit to binding arbitration "in an arbitration venue and forum chosen" by Mr. Jeffrey Farrow, Esquire "and" Mr. George Bochetto, Esquire — if neither of them could agree on venue and forum, then the LTA contains no deadlock provision and the question would default to California law, which provides for venue in California. The coin-toss procedure in Paragraph 12 of the LTA relates to "the method of arbitration," not the venue or forum, and is to be performed by Attorney Farrow only, not Attorney Bochetto.

### III.     CONVENIENCE OF PARTIES AND WITNESSES.

30.     I am deeply concerned whether the U.S. District Court for the Eastern District of Pennsylvania may not appreciate a serious danger underlying the Plaintiff's allegations from the Civil Complaint which may substantially prejudice the ability of myself, my parents, and the other Defendants in preparing and presenting any defenses: By acting as an English-Russian translator, Mr. Andrew Mogilyansky was privy to attorney-client communications and that puts him in a position where he could use that information to attempt to take credit for all sorts of developments in the California and United Kingdom

litigation or whether his actions differed from what was agreed-upon in the LTA. As a result, an effective rebuttal of Plaintiff's allegations would involve having to depose or subpoena the attorneys involved in those lawsuits, among other persons.

31. In the Statement of Claim, for instance, Plaintiff quotes statements and includes e-mails to and from the attorneys in the California and U.K. litigation: (a) Mr. Jeffrey Farrow, Esquire, as previously mentioned, a practicing California attorney with offices in Irvine, California; and (b) counsel from O'Melveny & Myers, LLP, including Margarita Michael, Matthew Thorne, and David Foster, with offices in London, of the United Kingdom.

32. What deeply concerns me about litigating in Pennsylvania is the availability of witnesses, including the ability of obtain process to compel their attendance, if necessary, and the effective mitigation of costs.

33. The British firm of O'Melveny & Myers, LLP is subject to process and personal jurisdiction in California, having offices in Los Angeles. This firm does not have offices in the Commonwealth of Pennsylvania. Their other American offices are located in San Francisco, New York City, and Washington, D.C.

34. Mr. Farrow's law firm, Michelman & Robinson, LLP has several offices in California, and offices in New York City and Chicago. This firm does not have offices in the Commonwealth of Pennsylvania.

35. During July and August of 2018, my father requested Mr. Mogilyansky to report what kind of work he has performed for all Defendants under the LTA. In response, Mr. Mogilyansky gathered and preserved all incoming and outgoing e-mail communications.

Because that information was already in the nature of electronic data, it is easily portable and does not require any physical presence in the Commonwealth of Pennsylvania.

36. If the instant case was transferred to the Central District of California, then I can retain California counsel for the defense of myself, of Defendant VRLA Tech, LLC, and of the Trust-Defendants, who can interview witnesses in the same time zone.

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness accuracy, or validity of that document.

_____
Anna Lyampert

Sworn to and subscribed before me this

18 day of April 2019

_____
Notary Public

CYNTHIA VICTORIA DUREN
Notary Public - California
Los Angeles County
Commission # 2239999
My Comm. Expires Apr 27, 2022

8

Exhibit "F"

Litigation Support Services, LLC v. Arkadiy Lyampert, et. al.
Civil Action No.: 2:19-CV-01574-ER

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LITIGATION SUPPORT SERVICES, LLC :<br>Plaintiff,                    : <br>                                        : <br>        v.                              : <br>                                        : <br>ARKADIY LYAMPERT;          : <br>and                                     : <br>ELENA LYAMPERT;            : <br>and                                     : <br>ANNA LYAMPERT;             : <br>and                                     : <br>EAA INVESTMENTS, LLC;      : <br>and                                     : <br>VRLA TECH, LLC;            : <br>and                                     : <br>VALLEY VIEW GRANTOR RETAINED   : <br>INCOME TRUST;              : <br>and                                     : <br>SECOND VALLEY VIEW GRANTOR   : <br>RETAINED INCOME TRUST,     : <br>        Defendants.            : | Civil Action No.: 2:19-CV-01574-ER<br><br><br><br><br>JURY TRIAL DEMANDED |

## AFFIDAVIT OF EMIL GRAZOVSKI

Emil Grazovski, being duly sworn according to law, deposes and says the following:

1.  I am an adult individual and a citizen of the State of California.

2.  I am the Managing Member of Defendant VRLA Tech, LLC ("VLRA Tech"), a California limited liability company having a principal place of business in California, with our office address of 6731 Variel Ave., Canoga Park, CA 91303.

3.  As Managing Member, I am responsible for the day-to-day management of the business and affairs of VRLA Tech. In the ordinary course of business, VLRA Tech sells computer hardware and components, including build-your-own servers, through an interactive Web site, www.vrlatech.com (the "Web site") and through eBay, Amazon,

1

and Newegg.  For the benefit of our customers, the Web site discloses our office address, our business phone number (213-810-3013), and a business e-mail address (sales@vrlatech.com) where customers may contact us.  Our products are stored at a warehouse in Canoga Park, California, and local customers in the Greater Los Angeles Area are welcomed to pick-up their orders free of charge. Otherwise, when a product is ordered through the Web site, shipping within the United States is handled through FedEx or UPS.

4.    Through the business model of VRLA Tech, conducting business through the Web site, we are able to serve orders for approximately 234 countries.  To plan and manage our business risks, all orders over the Web site come with standard "Terms and Conditions," a true and correct copy is attached as Exhibit "A." Under the Terms and Conditions, "These Terms and Conditions and any agreement into which they are incorporated shall be governed by, construed and enforced exclusively under and in accordance with the laws of the State of California, excluding its conflict of law rules. The parties agree to and submit to personal jurisdiction and venue in the State and Federal courts of Los Angeles, California."

5.    I am submitting this Affidavit for the limited purpose of addressing the lack of contacts with the Commonwealth of Pennsylvania, whether venue in the Eastern District of Pennsylvania, and the availability of witnesses and evidence.

6.    I expect that I may recall additional information as this litigation progresses.

**I.    CONTACTS BETWEEN DEFENDANT VRLA TECH, LLC AND THE COMMONWEALTH OF PENNSYLVANIA.**

7.    VRLA Tech does not undertake any advertising specifically directed at Pennsylvania markets.

8.    VRLA Tech does not have any offices or agents in the Commonwealth of Pennsylvania.

9.    VRLA Tech does not own, possess, or have any interest in any real estate in the Commonwealth of Pennsylvania.

10.   VRLA Tech has never made application to any government unit in the Commonwealth of Pennsylvania for any certificate, license, permit, registration or similar instrument or authorization or exercised any such instrument or authorization.

11.   VRLA Tech has never accepted election or appointment, executed a bond, or exercised powers under the authority of the Commonwealth of Pennsylvania as a personal representative, guardian of a minor or incapacitated person, trustee or other fiduciary, or director or officer of a corporation.

12.   VRLA Tech does not contract to supply services in the Commonwealth of Pennsylvania. If any of VRLA Tech's contracts were a mixture of goods and services, then services would only be performed in the State of California.

13.   Through the Web site, VRLA Tech does supply things to customers who may choose to purchase while situated in the Commonwealth in Pennsylvania, in FY 2018 specifically, that was less than one percent of VRLA Tech's business which amounted to less than $10,000. Otherwise, VRLA Tech does not transact business in the Commonwealth of Pennsylvania. VRLA Tech does not pay sales taxes to the Commonwealth of Pennsylvania.

14.   Sales over the Web site from customers in Pennsylvania are sporadic and, as a result, it is not accurate to say that VRLA Tech has "daily business" with Pennsylvania companies.

15.   Where VRLA Tech sells products over the Internet to roughly 234 countries, I am deeply concerned why any court would regard that as sufficient to exercise personal jurisdiction

over VRLA Tech, as that would deeply upset the ability of VRLA Tech to plan for and manage business risks.

## II.    CONVENIENCE OF PARTIES AND WITNESSES.

16.    In terms of the defense of VRLA Tech in the instant case, I agree with the affidavits of Arkadiy Lyampert, Elena Lyampert, and Anna Lyampert concerning the availability of witnesses and evidence. I further agree that it would be materially prejudicial to the defense of VRLA Tech, if personal jurisdiction and compulsory process cannot be obtained over the attorneys from the underlying California and U.K. litigation.

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached. and not the truthfulness accuracy, or validity of that document.

Emil Grazovski

Sworn to and subscribed before me this

18 day of April _____ 2019

Notary Public

CYNTHIA VICTORIA DUREN
Notary Public - California
Los Angeles County
Commission # 2239999
My Comm. Expires Apr 27, 2022

4

**We Ship International!**          213-810-3013
                                  **(tel:2138103013)**

 (https://www.vrlatech.com/)     My Account (https://www.vrlatech.com/signup/) My Cart (https://www.vrlatech.com/cart-page/)

(tel:2138103013)(https://www.vrlatech.com/cart-page/)

HOME > TERMS AND CONDITIONS

## TERMS AND CONDITIONS

UNLESS OTHERWISE AGREED IN WRITING, THE FOLLOWING TERMS AND CONDITIONS OF PRODUCT SALES ARE LIMITED TO THOSE CONTAINED HEREIN.

These Terms and Conditions constitute a binding contract between Buyer and VRLA Tech, LLC ("VRLA") and are referred to herein as "Terms and Conditions". Buyer accepts these Terms and Conditions by making a purchase from or placing an order with VRLA or shopping on any VRLA affiliated website. These Terms and Conditions are subject to change without prior notice.

Buyer consents to receiving electronic records; individual consumers may withdraw consent to receiving electronic records or have the record provided in non-electronic form by contacting VRLA.

**Governing Law**. These Terms and Conditions and any agreement into which they are incorporated shall be governed by, construed and enforced exclusively under and in accordance with the laws of the State of California, excluding its conflicts of law rules. The parties agree to and submit to personal jurisdiction and venue in the State and Federal courts of Los Angeles, California.

**Limited Warranty**. All equipment sold by VRLA is sold as refurbished and comes with VRLA limited standard warranty unless stated otherwise. Subject to the conditions, exclusions and limitations that follow, VRLA warrants that its products are free from defects in materials and workmanship. VRLA provides a **five (5) year warranty** from the date of delivery for **Servers and Workstations** and a **thirty (30) day warranty** from the date of delivery for **Components**. To the extent permitted by local law, VRLA guarantees that at its discretion, it will repair, replace, or refund any product that manifests a defect in materials or workmanship during the limited warranty period. The limited hardware warranty covers any defects in materials and workmanship of the hardware. The limited hardware warranty does NOT cover
- Software installed by VRLA, including but not limited to the operating system.
- Problems resulting directly or indirectly from:

  - Buyers' failure to follow product instructions.
  - Buyers' failure to perform preventive maintenance.
  - Using accessories, parts or components that are not supported by the system.
  - Accidents, abuse, liquid spills, misuse or problems with electrical power.
  - Acts of God, including but not limited to natural disasters, fires, earthquakes, and storms.
  - Normal wear and tear.
- Products with missing or altered service tags or serial numbers.
- Products for which VRLA has not received payment.

Except for the express warranties contained in these Terms and Conditions and to the extent not prohibited by law, VRLA DISCLAIMS ALL OTHER WARRANTIES AND CONDITIONS, EXPRESS OR IMPLIED, STATUTORY OR OTHERWISE, INCLUDING BUT NOT LIMITED TO (1) WARRANTIES OF MERCHANTABILITY, (2) WARRANTIES OF FITNESS FOR A PARTICULAR PURPOSE AND (3) WARRANTIES AGAINST HIDDEN OR LATENT DEFECTS. VRLA IS NOT LIABLE BEYOND ANY REMEDIES PROVIDED IN THESE TERMS AND CONDITIONS AND DOES NOT ACCEPT LIABILITY FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES, FOR THIRD-PARTY CLAIMS AGAINST THE BUYER FOR DAMAGES, OR FOR LOST OR DAMAGED DATA OR SOFTWARE. **No warranties or conditions, whether express or implied, will apply after the warranty period has expired. Some states, provinces, jurisdictions or countries do not allow limitations on how long an implied warranty or condition lasts, so this limitation may not apply to you.**

**Pricing**. VRLA reserves the right to make adjustments to pricing, products and services offered. Quoted prices are subject to change without notice and unless specifically included in a quote or invoice, do not include any taxes, handling, shipping, transportation, duties or other charges or fees. Buyer is responsible for all applicable fees and all federal, state, municipal, and other government taxes on the sale and delivery of products. In order to be honored, a valid exemption certificate must be provided to VRLA prior to shipment.

**Payment Methods**. VRLA accepts all major credit cards. Billing and shipping addresses must match. Additional documentation may be required. VRLA accepts PayPal, COD, wire transfer, certified check, cashier's check, personal check and company check. VRLA reserves the right not to release any products or services until all such payments are cleared and credited to VRLA's bank account. Buyer has the right to apply for net terms only if Buyer has previously purchased from VRLA. VRLA may, at its discretion, offer credit terms to Buyer subject to the status of Buyer and completion of a credit application form supplied and approved by VRLA. If approved VRLA offers net 1, net 7, net 15, and net 30 terms on a case-by-case basis. Where credit terms are granted, no amendments will be effective unless made in writing by VRLA. 8.75% sales tax will be added to purchases made within California. A valid resale certificate is required to be exempt from sales tax.

**Shipment**. Changes cannot be made to orders that have been shipped. Unless otherwise stated, VRLA ships via FedEx, UPS, or USPS Priority Mail. Ground shipping is delivered within 3-10 days, depending on the shipping destination. VRLA does not ship to P.O. boxes or APO/AFO shipping addresses. Buyer is responsible for insurance costs. Buyer is responsible for any customs, duties and taxes for international shipments. If a product is rejected by customs or undeliverable, Buyer is responsible for all fees.

**Delivery, Title, and Risk of Loss**. Title to products and risk of loss or damage during shipment pass from VRLA to Buyer upon delivery of products to the carrier (F.O.B. Origin, freight collect).

**Returns**. Once a product is delivered, it is Buyers responsibility to inspect the product and inform VRLA of any damage within five (5) days of receipt. All requests made after 5 days will be handled on a case-to-case basis. All products may be returned or exchanged within thirty (30) days after receipt. To initiate the return process, Buyer is required to fill out the Return Merchandise Authorization (RMA) form. An RMA reference number will be issued upon completion. Unless a product is defective or the return is a result of VRLA error, VRLA will charge a restocking fee of 20% of the purchase price paid, plus any applicable sales tax. Before returning a product, Buyer must first contact VRLA and obtain an RMA reference number before the end of the applicable return period. VRLA will not accept returns without an RMA reference number. Once VRLA receives the product, a refund will be initiated. Refunds will only be issued back to the original form of payment. Original shipping and handling charges may not be refunded.

**All Products Must Have a Shipping Label Addressed to:**

Terms and Conditions | VRLA Tech

VRLA Tech, LLC.
Returns Department
RMA Reference #
6731 Variel Ave.
Canoga Park, CA 91303**Limitation of Liability**. VRLA will have no liability for failure to allocate or reserve any product for Buyer or for failure to deliver products within a specified time period. BUYER AGREES THAT VRLA'S LIABILITY FOR DAMAGES ARISING UNDER THESE TERMS AND CONDITIONS, WHETHER IN CONTRACT, TORT, OR OTHERWISE, WILL BE LIMITED TO ACTUAL, PROVEN, DIRECT DAMAGES AND WILL NOT EXCEED THE NET AMOUNT PAID TO VRLA BY BUYER FOR THAT PRODUCT OR SERVICE WHICH IS THE SUBJECT OF THE CLAIM. EXCEPT FOR INDEMNITY OBLIGATIONS AND BREACHES OF CONFIDENTIALITY, IN NO EVENT WILL VRLA BE LIABLE FOR INDIRECT, SPECIAL, PUNITIVE, CONSEQUENTIAL OR INCIDENTAL DAMAGES, INCLUDING, BUT NOT LIMITED TO LOSS OF GOOD WILL, LOSS OF ANTICIPATED PROFITS, LOSS OF DATA OR SECURITY BREACH OR OTHER ECONOMIC LOSS ARISING OUT OF OR IN CONNECTION WITH BREACH OF, OR FAILURE TO PERFORM IN ACCORDANCE WITH THE TERMS AND CONDITIONS, OR ANY PRODUCTS OR INFORMATION, EVEN IF NOTIFICATION HAS BEEN GIVEN AS TO THE POSSIBILITY OF THOSE DAMAGES. THE PARTIES EXPRESSLY WAIVE ALL CLAIMS FOR THOSE DAMAGES.

**Force Majeure**. VRLA shall not be liable or be deemed to be in breach of these Terms and Conditions by reason of any delay in performing, or any failure to perform, any of its obligations in relation to the products, if the delay or failure is beyond VRLA's reasonable control. The following shall be regarded as causes beyond either party's reasonable control, including but not limited to:

- Acts of god, explosion, flood, tempest, adverse weather conditions, fire or accident fire,
- War, riots, civil insurrection, terrorism, sabotage,
- Import or export embargoes,
- Governmental priority, acts, restrictions, regulations,
- Shortage or failure of supply of materials, labor, or strikes.

**Relationship**. The relationship between VRLA and Buyer is that of independent contractors and not that of employer/employee, partnership or joint venture. Neither party will make any warranty, guarantee or representation, whether written or oral, on the other party's behalf.

**Assignment**. VRLA may assign or subcontract all or any portion of its rights or obligations with respect to the sale of products or the performance of services or assign the right to receive payments, without Buyers consent. Buyer may not assign its rights or obligations under these Terms and Conditions without the prior written consent of VRLA. Any attempted assignment without VRLA's consent will be null and void without any force or effect.

**Arbitration**. Any claim, dispute, or controversy (whether in contract, tort or otherwise, whether preexisting, present or future, and including, but not limited to, statutory, common law, intentional tort and equitable claims) arising from or relating to the products, services, interpretation or application of these Terms and Conditions, or VRLA's advertising or marketing WILL BE RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION. If arbitration is chosen, it will be conducted pursuant to the Rules of the American Arbitration Association. If arbitration is chosen by any party with respect to a Claim, neither VRLA or Buyer will have the right to litigate that Claim in court or to have a jury trial on that Claim or to engage in pre-arbitration discovery, except as provided for in the applicable arbitration rules or by agreement of the parties involved. Further, Buyer will not have the right to participate as a representative or member of any class of claimants pertaining to any Claim. Notwithstanding any choice of law provision included in these Terms and Conditions, this arbitration agreement is subject to the Federal Arbitration Act (9 U.S.C. §§ 1-16). The arbitration will take place exclusively in Los Angeles, California and Buyer submits to the jurisdiction thereof and waives the right to change venue. Any court having jurisdiction may enter judgment on the award rendered by the arbitrator(s). Each party involved will bear its own cost of any legal representation, discovery or research required to complete arbitration. The existence or results of any arbitration will be treated as confidential. Notwithstanding anything to the contrary contained herein, all matters pertaining to the collection of amounts due to VRLA arising out of the products or services may be litigated in court rather than through arbitration.

**Entire Agreement**. These Terms and Conditions are intended to be the sole and complete statement of the obligations and rights of the parties as to all matters covered hereunder, and supersede all previous understanding, agreements, negotiations and proposals relating thereto. No provision of these Terms and Conditions will be deemed waived, amended or modified by either party unless such waiver, amendment or modification is in writing and signed by both parties.

× Get Notifications

6731 Variel Ave.
Canoga Park, CA 91303

213-810-3013
(tel:2138103013)

sales@vrlatech.com
(mailto:sales@vrlatech.com)

**Build Your Own Workstation**

HP Workstations
(https://www.vrlatech.com/hp-workstations/)
Dell Workstations
(https://www.vrlatech.com/dell-workstations/)

Sign up for news and offers

**Build Your Own Server**

HP Rack Servers
(https://www.vrlatech.com/hp-servers/)
HP Tower Servers
(https://www.vrlatech.com/hp-servers/)
Dell Rack Servers
(https://www.vrlatech.com/dell-servers/)
Dell Tower Servers
(https://www.vrlatech.com/dell-poweredge-tower-servers/)

**Customer Support**

Contact Us
(https://www.vrlatech.com/contact-us)
Privacy Policy
(https://www.vrlatech.com/privacy-policy-page/ )
Return Policy
(https://www.vrlatech.com/return-policy-page/)
Terms and Conditions
(https://www.vrlatech.com/terms-and-conditions/)
Warranty Information
(https://www.vrlatech.com/warranty/)
Shipping
(https://www.vrlatech.com/shipping/)

**Services**

Recycle
(https://www.vrlatech.com/recycle/)
Repair
(https://www.vrlatech.com/repair-2-page/)
Sell to Us
(https://www.vrlatech.com/sell-to-us-page/)
Trade-in Program
(https://www.vrlatech.com/sitemap/trade-in)

**About Us**
**(https://www.vrlatech.com/about-us)**

Raid Calculator
**(https://www.vrlatech.com/raid-calculator)**

Based in Canoga Park California, VRLA Tech offers custom servers, storage, and workstations for local businesses in Los Angeles, Hollywood, Burbank, Beverly Hills, Chatsworth, Thousand Oaks, Ventura, Orange County, Santa Barbara, Oxnard, Irvine, Anaheim, and San Diego. VRLA Tech also offers such products to clients throughout the United States, Canada, Mexico and Worldwide.

(https://www.youtube.com/channel/UCoiMyOAGTXgN2VKUdD7T6kw)
(https://www.instagram.com/vrlatech)

Terms and Conditions | VRLA Tech

(https://twitter.com/vrlatech)

(https://plus.google.com/u/0/104877783073351391710)
(https://www.linkedin.com/company/vrla-tech-
llc.)
(https://www.facebook.com/vrlatech)

VRLA Tech, LLC. Copyright © 2019

×Get Notifications

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LITIGATION SUPPORT SERVICES, LLC :
                Plaintiff,      :
                                 :
         v.                  :
                                 :   Civil Action No.: 2:19-CV-01574-ER
ARKADIY LYAMPERT;         :
and                          :
ELENA LYAMPERT;           :
and                          :
ANNA LYAMPERT;            :
and                          :
EAA INVESTMENTS, LLC;      :
and                          :
VRLA TECH, LLC;            :
and                          :
VALLEY VIEW GRANTOR RETAINED :   JURY TRIAL DEMANDED
INCOME TRUST;             :
and                          :
SECOND VALLEY VIEW GRANTOR   :
RETAINED INCOME TRUST,      :
               Defendants.    :

## CERTIFICATE OF SERVICE

I, David W. Crossett, Esq., hereby certify that on April 18, 2019, a copy of Defendants' Motion to Dismiss or, Alternatively, to Transfer Venue, with the Brief in Support, have been electrically filed, which provided electronic notice to the following:

George A. Bochetto, Esq.
Bochetto & Lentz, P.C.
1524 Locust St.
Philadelphia, PA 19102
gbochetto@bochettoandlentz.com

                         By:    /s/David W. Crossett_____
                                 David W. Crossett, Esquire