## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Litigation Support Services, LLC, | : | |
| Plaintiff | : | No. 2:19-CV-01574-ER |
| | : | |
| v. | : | |
| | : | |
| Arkadiy Lyampert, Elena Lyampert | : | |
| Anna Lyampert, EAA Investments, | : | |
| LLC, VRLA Tech, LLC, Valley | : | |
| Grantor Retained Income Trust, | : | |
| Second Valley View Grantor | : | JURY TRIAL DEMANDED |
| Retained Income Trust | : | |
| Defendants. | : | |

## PROPOSED ORDER

AND NOW, this _____ day of _____, 2019, upon consideration of Defendants

Motion to Disqualify Plaintiff's Counsel and any responses thereto, it is hereby ORDERED that:

(1)     Defendants' Motion is GRANTED; and

(2)     Mr. George A. Bochetto, Esquire and the law firm of Bochetto & Lentz, P.C. are

DISQUALIFIED.

(3)     Mr. George A. Bochetto, Esquire shall promptly enter a notice of withdrawal of

appearance for himself and for the law firm of Bochetto & Lentz, P.C., and neither shall furnish

any additional assistance to Plaintiff in the instant case.

BY THE COURT

_____
Hon. Eduardo C. Robreno, *J.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Litigation Support Services, LLC, | : | |
| Plaintiff | : | No. 2:19-CV-01574-ER |
| | : | |
| v. | : | |
| | : | |
| Arkadiy Lyampert, Elena Lyampert | : | |
| Anna Lyampert, EAA Investments, | : | |
| LLC, VRLA Tech, LLC, Valley | : | |
| Grantor Retained Income Trust, | : | |
| Second Valley View Grantor | : | JURY TRIAL DEMANDED |
| Retained Income Trust | : | |
| Defendants. | : | |

## DEFENDANTS' MOTION AND MEMORANDUM OF LAW TO DISQUALIFY
## PLAINTIFF'S COUNSEL

NOW COMES Defendants, by and through their undersigned counsel, who hereby move

under Local Rule 83.6 (Rule IV(B)) to disqualify Plaintiff's counsel, Mr. George A. Bochetto,

Esquire and the law firm of Bochetto & Lentz, P.C.; and offer the following in support:

### GROUNDS FOR RELIEF:
### CONFLICT OF INTEREST TO FORMER CLIENT

1.     The instant case was removed to this Court from the Court of Common Pleas of

Philadelphia on grounds of diversity.

2.     Attached as Exhibit "A" is a true and correct copy of the Long-Term Agreement.

3.     Attached as Exhibit "B" is a true and correct copy of the Engagement Letter.

4.     Attached as Exhibit "C" is a true and correct copy of Plaintiff's Invoice dated May

2, 2016.

5.     Attached as Exhibit "D" is a true and correct copy of E-mail Communication

between Plaintiff and British Counsel dated May 2, 2016.

6.     Attached as Exhibit "E" is a true and correct copy of an Affidavit by Defendant Arkadiy Lyampert.

7.     Plaintiff's counsel, Mr. George A. Bochetto, Esquire and the law firm of Bochetto & Lentz, P.C., are disqualified under Rules 1.9(a) and 1.10(a) of the *Pennsylvania Rules of Professional Conduct* from representing Plaintiff in the instant case.

8.     Defendant Arkadiy Lyampert ("Mr. Lyampert") is a former client of Attorney Bochetto. As set forth in Mr. Lyampert's Affidavit, the instant lawsuit involves disputes under a contractual relationship between Mr. Lyampert and Plaintiff, where Plaintiff provided litigation support services during simultaneous judicial proceedings against Mr. Lyampert. During April of 2016, or shortly afterwards, and acting on the recommendation of Plaintiff, Mr. Lyampert hired Attorney Bochetto to advance Mr. Lyampert's interests. Specifically, as Mr. Lyampert provides in his affidavit, "I agreed to this arrangement with an understanding that Attorney Bochetto was my lawyer, who was retained for his knowledge and skill in the law, and who was to work directly with my agent, the Plaintiff." [Aff. Arkadiy Lyampert ¶ 10, Ex. E].

9.     In April of 2016, Mr. Lyampert and Plaintiff's Managing Member met with Attorney Bochetto at the Philadelphia office of Bochetto & Lentz, P.C. Shortly afterwards, Plaintiff requested, and Mr. Lyampert agreed, to retain Attorney Bochetto as stated above.

10.     That Mr. Lyampert paid for Attorney Bochetto is indisputable. Attached as Exhibit "C" is Plaintiff's Invoice, dated May 2, 2016, containing an itemization of $5,000, "Advance for third-party legal services on client's behalf (e.g., George Bochetto)." Mr. Lyampert was the "client." Attached as Exhibit "D" is an e-mail from Plaintiff's Managing Member, Mr. Andrew Mogilyansky, to Mr. Lyampert's British counsel, with an invoice and explanation, "$13,000 – May 2016 (includes $5,000 advance for possible future third-party costs expected to be paid by LSS *on*

***Arie's behalf***, such as George Bochetto, Esq.)" (emphasis added). "Arie" is Mr. Lyampert's nickname, and he authorized the payment by his British counsel, credited against Mr. Lyampert's client-trust account.

11.     During the retention by Mr. Lyampert, Attorney Bochetto was a partner of Bochetto & Lentz, P.C.

12.     Plaintiff assured Mr. Lyampert that Attorney Bochetto gave helpful and professional legal advice while Plaintiff performed under their contractual relationship.

13.     The instant case is the same or a substantially related matter and the interests of Mr. Lyampert and Plaintiff are materially adverse, because this case arises out of and relates to the same contractual relationship between Mr. Lyampert and Plaintiff, on which Attorney Bochetto was retained. Furthermore, that contractual relationship was incorporated by reference under a Long-Term Agreement ("LTA"), on which the remaining Defendants are parties, and there is a risk whether or not Attorney Bochetto had continued involvement after the execution of the LTA on March 14, 2017 (see Exhibit "A"). However, discovery is not necessary for the resolution of this Motion due to the clear conflict of interest as to Mr. Lyampert.

14.     Neither Mr. Lyampert nor the other Defendants have provided informed consent to Plaintiff's representation by Attorney Bochetto or his law firm in the instant case.

15.     On March 7, 2019, after being served with a Writ of Summons in the Court of Common Pleas of Philadelphia, Mr. Lyampert promptly gave Plaintiff and Attorney Bochetto notice of this conflict. However, Attorney Bochetto has declined to withdraw the appearance of himself and his law firm or to cease involvement with the instant case, and instead proceeded to file a Civil Complaint on March 14, 2019.

16.     The continued involvement of Attorney Bochetto and his law firm, contrary to Rules 1.9 and 1.10, constitutes immediate and irrevocable harm.

**LEGAL STANDARD**

17.     Under Local Rule 83.6 (Rule IV(B)), this Court has adopted the *Pennsylvania Rules of Professional Conduct*. Under Pa. R.P.C. 1.9(a), "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent." Under Pa. R.P.C. 1.10(a), a conflict under 1.9(a) is imputed to an entire law firm, subject to exceptions not applicable here, if the representation occurred while an attorney was associated with that firm.

18.     "Counsel may be disqualified if the Court determines, on the facts of the particular case, that disqualification is an appropriate means of enforcing the applicable disciplinary rule, given the ends that the disciplinary rule is designed to serve." Jordan v. Philadelphia Housing Auth., 337 F. Supp. 2d 666, 672 (E.D. Pa. 2004) (citation omitted).

> In determining whether disqualification is appropriate, the Court must also consider countervailing policies, such as permitting a litigant to retain his chosen counsel and enabling attorneys to practice without excessive restrictions. The party seeking disqualification bears the burden of showing that the representation is impermissible. Any doubts regarding the existence of a violation of an ethical rule should be construed in favor of disqualification.

Id. (citations omitted). Disqualification is not automatic, and if the Rules of Professional Conduct have been violated, then "the court's final step must be to address whether disqualification of counsel furthers the purposes of the Rules." Id. (citation omitted).

19.     Under Rule 1.9(a), "The scope of a 'matter' for purposes of this Rule depends on the facts of a particular situation or transaction. * * * When a lawyer has been directly involved in a specific transaction, subsequent representation of other clients with materially adverse interests

4

in that transaction clearly is prohibited." Pa. R.P.C. 1.9(a), cmt. 2. A matter is substantially related under Pa. R.P.C. 1.9(a) "if, after looking at the nature of the two representations, in the course of the prior representation, the client might have disclosed to its attorney confidences which could be relevant or possibly detrimental to the former client in the present action." <u>Jordan</u>, 337 F. Supp. 2d at 673 (citations and internal quotations deleted).

20.    Pa. R.P.C. 1.9 "is a prophylactic rule to prevent even the potential that a former client's confidences and secrets may be used against him. Without such a rule, clients may be reluctant to confide completely in their attorneys. Second, the rule is important for the maintenance of public confidence in the integrity of the bar . . . Finally, and importantly, a client has a right to expect the loyalty of his attorney in the matter for which he is retained." <u>*In re* Corn Derivatives Antitrust Litig.</u>, 748 F.2d 157, 162 (3d Cir. 1984).

## **APPLICATION**

21.    Mr. Lyampert is a former client of Attorney Bochetto. An attorney-client relationship was created between Mr. Lyampert and Attorney Bochetto, where the latter was retained for his legal knowledge and skill to further Mr. Lyampert's interests by assisting Plaintiff, as Mr. Lyampert's agent, in the performance of litigation support services during simultaneous judicial proceedings against Mr. Lyampert. Attorney Bochetto's services were paid for by Mr. Lyampert, where the latter's British counsel transferred payments from Mr. Lyampert's client-trust account to Plaintiff.

22.    The instant case involves disputes over the same matter — Plaintiff's performance of litigation support services under a contractual agreement — as the specific transaction for which Attorney Bochetto was retained. Alternatively, the Court should find little difficulty in holding that the instant case is a "substantially related" matter, where Mr. Lyampert "might have" disclosed

confidences "which could be relevant or possibly detrimental to the former client in the present action." Jordan, 337 F. Supp. 2d at 673 (citations and internal quotations deleted). By assisting Plaintiff, Attorney Bochetto was privy to the same confidential and privileged information concerning the simultaneous judicial proceedings against Mr. Lyampert. [Aff. Arkadiy Lyampert ¶ 11, Ex. A]. It is no defense that Attorney Bochetto has no intentions of using Mr. Lyampert's confidences against him, because Rule 1.9 is prophylactic and intended to prevent "the potential" that a former client's confidences and secrets may be used against him. In re Corn Derivatives Antitrust Litig., 748 F.2d at 162. The instant case is indistinct from the illustration in Comment 1 of Pa. R.P.C. 1.9, "Under this Rule, for example, a lawyer could not properly seek to rescind on behalf of a new client a contract drafted on behalf of the former client."

23.     Mr. Lyampert and Plaintiff's interests are materially adverse, as this Court recognizes, "There is no situation more 'materially adverse' than when a lawyer's former client is in a suit against that lawyer's current client . . ." Jordan, 337 F. Supp. 2d at 673 (citations omitted).

24.     Mr. Lyampert has not given informed consent to Plaintiff's representation by Attorney Bochetto.

25.     The law firm of Bochetto & Lentz, P.C. is disqualified under Pa. R.P.C. 1.10(a) for the same reasons as Attorney Bochetto under 1.9(a), where Attorney Bochetto was a partner in the firm while retained by Mr. Lyampert. The conflict is not waivable under Rule 1.10(a), because it is not "based on a personal interest of the prohibited lawyer," among other things, but from a duty of loyalty to a former client.

26.     Here, disqualification furthers the purposes of Rules 1.9 and 1.10, because the facts are the very reasons why these rules exist; "importantly, a client has a right to expect the loyalty

of his attorney in the matter for which he is retained." *In re* Corn Derivatives Antitrust Litig., 748 F.2d at 162.

27.     There are no countervailing policies which may aid the Plaintiff in excusing the strictures of Rules 1.9 and 1.10:  First, Plaintiff has unclean hands in the choice of retaining Attorney Bochetto for the instant case. It was the Plaintiff who recommended and requested Attorney Bochetto's legal services to Mr. Lyampert, to further the latter's interests during simultaneous judicial proceedings for which Plaintiff provided litigation support services, and used Mr. Lyampert's money transferred from his client-trust account to pay for those legal services. Mr. Lyampert trusted and relied on Plaintiff's assurances that Attorney Bochetto gave helpful and professional legal advice in advancing Mr. Lyampert's interests.  Second, Mr. Lyampert promptly notified Attorney Bochetto of the conflict of interest on March 7, 2019, after being served with a Writ of Summons by the Court of Common Pleas of Philadelphia. This afforded Plaintiff with ample opportunity, at a critical, pre-complaint stage, to obtain replacement counsel, and the issuance of the Writ tolled any applicable statute of limitations.  In other words, time was on Plaintiff's side, but Plaintiff opted instead to proceed with Attorney Bochetto and to file a Civil Complaint on March 14, 2019, which was subsequently removed by Defendants into this Court. Third, Defendants have timely brought this matter to the Court's attention, unlike other cases where parties substantially delayed in bringing a motion to disqualify as a tactic.  E.g., INA Underwriters Ins. v. Nalibotsky, 594 F. Supp. 1199, 1203 (E.D. Pa. 1984).

## CONCLUSION

**WHEREFORE**, for all the forgoing reasons, Defendants respectfully request that the Court grant the proposed order, disqualifying Attorney Bochetto and the law firm of Bochetto &

Lentz, P.C. from any further representation of Plaintiff in the instant case, and such other relief as

the Court deems necessary, just, or appropriate.

**CORNERSTONE LAW FIRM, LLC**

Dated: April 18, 2019          By:     /s/ David W. Crossett
David W. Crossett, Esquire
Attorney I.D. #313031
Joel A. Ready, Esquire
Attorney I.D. # 321966
8500 Allentown Pike, Ste 3
Blandon, PA 19510
P (610) 926-7875
F (484) 930-0054
david@cornerstonelaw.us
joel@cornerstonelaw.us
*Counsel for Defendants*

Exhibit "A"

Litigation Support Services, LLC v. Arkadiy Lyampert, et. al.
Civil Action No.: 2:19-CV-01574-ER

<u>Long-Term Engagement Agreement</u>

March 14, 2017

Calabasas, CA / Southampton, PA

This is an agreement to extend the relationship between Litigation Support Services, LLC ("**LSS**") on one side, and Mr. Arkadiy Lyampert, Mrs. Elena Lyampert, Ms. Anna Lyampert, Esq., VRLA Tech LLC, EAA Investments LLC, LAMUK Settlement Holdings LLC, Valley View Grantor Retained Income Trust and Second Valley View Grantor Retained Income Trust (all together, "**Clients**").

LSS has been providing Clients and their attorneys in the USA and in the United Kingdom with various services under the terms of the Engagement Letter dated March 25, 2016 ("Engagement Letter"), as extended by e-mail agreement on August 22-23, 2016 ("Extension Agreement"). The preceding documents presently apply to all Clients, all of whom/which have used the services of LSS under the terms of the Engagement Letter and the Extension Agreement.

This Long-Term Engagement Agreement incorporates the Engagement Letter and the Extension Agreement and modifies them on terms and conditions more fully described below.

LSS and Clients hereby agree to extend their relationship on the following terms and conditions:

1. Terms used in this agreement are as defined and used in the Engagement Letter and the Extension Agreement, as well as in various pleadings in the US Litigation and UK Litigation involving the Clients.

2. The term "support services" describes the general type of assistance LSS and its staff has been providing to Clients since early 2016.

3. Clients and LSS agree not to renegotiate the below-agreed services and compensation prior to the conclusion of the Term agreed below, except under the provisions of Paragraph 11 below allowing for periodic adjustments of Fee under certain conditions.

4. LSS hereby agrees to provide and will continue to provide the following services to Clients and their attorneys until the end of the appeal process in the US Litigation ("Term"):

   a. Support services in the UK Litigation, including preparation for trial, possible appeal, etc.;

   b. Support services in the US Litigation, including stay of execution, appeal, collection, etc.;

   c. Support services in the fraudulent transfer litigation against Clients ("FT Litigation");

   d. Support services in Clients' malpractice litigation against Mr. Jamgotchian ("JJJ Litigation");

   e. Support services in the relationship with David Bell and LA Micro Group (UK) Ltd ("LAMUK");

   f. Other similar support services and consulting as may be necessary from time to time;

   g. Maintain privilege and confidentiality of communications with all Clients where applicable;

5. Clients agree to continue to retain LSS throughout the Term, and:

   a. To continue to pay LSS $11,500 per month ("Fee") throughout the Term, subject to provisions of Paragraph 11 below allowing for possible renegotiation of the Fee on an annual basis;

   b. In the event of Success in UK, to promptly effect or arrange a Transfer of UK Shares to LSS representing 4% of the total shares of LAMUK; however both Clients and LLS agree that if the court holds that Frenkel is not entitled to any shares of LAMUK but Clients must still pay Frenkel a share of any "profit" received to date, then LSS will contribute 4% of that amount.;

   c. In the event of Success in US:

      - If the net amount of the resulting judgment after the appeal is $1,000,000 or more in favor of Clients (i.e. the appeal results in a judgment in favor of Clients which exceeds the then-outstanding judgment against Clients by $1,000,000 or more), then Clients will promptly effect or arrange a Transfer of UK Shares to LSS representing an additional 4% of the total shares of LAMUK;

      - If the net amount of the resulting judgment after the appeal is between $0 and $1,000,000 in favor of Clients, then Clients will promptly effect or arrange a Transfer of UK Shares to LSS equal to the same proportion of 4% as the net amount of the judgment in favor of Clients is a proportion of $1,000,000. For example, a $500,000 net judgment for Clients will trigger a 2% Transfer of UK Shares to LSS;

d. If Clients receive money, assets, or anything else of value from any party following Success in UK or in US, these proceeds with be shared with LSS as follows:

- From any money or assets <u>actually received</u> by Clients or their attorneys as a result of Success in UK, Clients will pay LSS a 20% share of that money or those assets, net of any amounts spent by Clients on collection after obtaining a final judgment;

- From any money or assets <u>actually received</u> by Clients or their attorneys as a result of Success in US, Clients will pay LSS a 25% share of that money or those assets;

e. If Clients or their counsel receive a JJJ recovery which exceeds JJJ Threshold (the amount of which is not agreed, and remains to be determined later by LSS and Clients), they will pay LSS 25% of such excess over JJJ Threshold;

6. The terms used above are defined as follows:

a. "Success in UK" means a court ruling or other resolution of the UK Litigation in which Clients retain their present 50%-51% share in LAMUK;

b. "Success in US" means a ruling on the appeal in the US Litigation which replaces Clients' liability to Frenkel with Frenkel's liability to Clients;

c. "Transfer of UK Shares" means a transfer of shares in LA Micro Group (UK) Ltd to LSS, with Clients retaining all voting rights of these shares, and LSS not obtaining any special rights to force a buy-out of its shares by majority shareholders of LAMUK;

d. "Options" means a future option granted to LSS to a purchase shares of LAMUK from Clients at a pre-agreed price or valuation;

e. "JJJ Threshold" means a sum to be determined by Clients and LSS in good faith in the next 60 days, plus costs of JJJ Litigation.

7. If a Transfer of Shares is made, Clients will protect LSS from dilution of its stake in LAMUK by not allowing (or compensating LSS for) any action resulting in the reduction of the total percentage of LAMUK's stock owned by LSS below the percentage issued to LSS (e.g. below 4% in case of Success in UK or 8% in case of Success in US);

8. If LSS gains influence over decisions of LAMUK as a result of the Transfers of Shares, it will never act or vote against the interest of Client.

9. Clients and LSS agree to discuss, in good faith, a "bonus compensation" package for LSS for work done to date, based on the following premises:
   a. There is currently no agreement on such package, and any package agreed must be reasonable and satisfactory to both sides;
   b. The parties have discussed that such package may involve a Transfer of Shares and/or Options, but nothing has been agreed yet;
   c. The parties have estimated the value of a 50% share in LAMUK at $3,000,000 for purpose of Options, but nothing has been agreed yet;
   d. The parties have discussed that LSS believes it is entitled to such a package, and agreed to have a further discussion on this subject;
   e. The purpose of this Section 9 is only to reflect the status of negotiations on this subject, and to agree to continue them in good faith (i.e. nothing in this Section 9 is to be understood as an obligation on Clients to do anything unless they first voluntarily agree to it).

10. It is further explicitly agreed that additional discussions will be held between LSS and Clients concerning the value of JJJ Threshold, including:
    a. The exact amount of JJJ Threshold which will fairly reflect a reasonable estimate of JJJ Litigation recovery without LSS involvement, to be decided after consultation with Jeff Farrow, Esq.;
    b. Increasing the share of the percentage from 25% to 50% and directing it to Litigation Support Services CA, LLC, owned 50/50 by LSS and Anna Lyampert, Esq.;
    c. The final agreement to be reached on JJJ Threshold, percentage and recipient will supersede the initial terms herein relating to JJJ.

11. If as of March 1, 2018, the average amount of work performed by LSS during the prior 6 months is significantly different from the average amount of work performed by LSS in the 6 months preceding the date of this agreement, the parties will engage in good-faith negotiations on adjusting the Fee

accordingly for the next 12 months. A similar procedure will take place every year prior to March 1. Notwithstanding the foregoing, the parties agree that the terms of this paragraph may be revised after Clients know the full terms of retainer of the appellate attorney(s) retained for the appeal work in the US Litigation.

12. LSS and Clients will strive to find amicable solutions to all situations which may arise in their relationship with each other. If LSS and Clients have a disagreement, they will first try to resolve it through good faith negotiations. If the disagreement cannot be amicably resolved through negotiations, LSS and Clients will arrange for informal mediation to be conducted by Jeff Farrow, Esq. and George Bochetto, Esq. via telephone or video conference. If this mediation proves unsuccessful, LSS and Clients will submit to binding arbitration in an arbitration venue and forum chosen by Mr. Farrow and Mr. Bochetto. If Mr. Farrow and Mr. Bochetto cannot agree on the method of arbitration, each of them will suggest one, and it will be decided by coin toss to be performed by Mr. Farrow.

Parties hereby agree to abide by the above terms and fulfill their obligations undertaken above.

(SIGNATURE PAGE FOLLOWS)

**LSS:**

Litigation Support Services, LLC:

By: _Andrew Mogilyansky_

Digitally signed by Andrew Mogilyansky
DN: cn=Andrew Mogilyansky, o=LSS, ou,
email=andrew@litigationaid.com, c=US
Date: 2017.03.15 18:08:11 -04'00'

Andrew Mogilyansky, Managing Member


**CLIENTS:**

Arkadiy Lyampert:

_____
Arkadiy Lyampert

Elena Lyampert:

_____
Elena Lyampert

Anna Lyampert, Esq.:

_____
Anna Lyampert, Esq.


EAA Investments, LLC:

By: _____
Elena Lyampert, Managing Member

VRLA Tech, LLC:

By: _____
Anna Lyampert, Member


LAMUK Settlement Holdings, LLC:

By: _____
Arkadiy Lyampert, Managing Member

VRLA Tech, LLC:

By: _____
Arkadiy Lyampert, Member


Valley View Retained Income Trust:

By: _____
Elena Lyampert, Trustee

Second Valley View Retained Income Trust:

By: _____
Elena Lyampert, Trustee

Exhibit "B"

Litigation Support Services, LLC v. Arkadiy Lyampert, et. al.
Civil Action No.: 2:19-CV-01574-ER

# Litigation Support Services, LLC

Mr. Arkady Lyampert
25531 Prado de Azur
Calabasas, CA 91302

## **Engagement Letter**

Dear Mr. Lyampert:

You have requested that Litigation Support Services, LLC ("LSS") provide you with various services relating to your lawsuits in the United Kingdom and the United States ("Lawsuits"), which, without limitation, are primarily related to various disputes, including shareholder disputes, between you and Mr. Roman Frenkel.

You are represented by professional counsel ("Attorneys") in these Lawsuits, and shall continue to retain said Attorneys for the purpose of legal advice and representation concerning the Lawsuits and other related matters.

You have professional Certified Public Accountant(s) ("Accountants") who have provided you with, and continue to provide you with, advice and/or representation relating to various tax matters, including but not limited to financial reporting, preparation and filing of tax returns, etc.

This Engagement Letter shall outline the terms on which Litigation Support Services, LLC ("LSS") shall provide you with its services. By signing below, you agree to accept these terms, acknowledge the limitations stated below, and promise to abide by your obligations stated herein.

The following are the types of services with which LSS shall provide you:

1. Interpreting and/or translation of various legal documents pertaining to the Lawsuits.
2. Assistance in the drafting and composition of your letters to various Attorneys who represent you and/or your companies (such as LA Micro Group (UK) Ltd) in the Lawsuits.
3. Assistance in verbal communications with the Attorneys who represent you in the Lawsuits and other attorneys and legal representatives with whom you may need help communicating.
4. Assistance in communications with third parties, as may be required, with the understanding that you have sought advice of your Attorneys regarding the nature and content of such communications, that they are sanctioned by, based on and take into consideration the legal advice and strategy you have received from and/or coordinated with your Attorneys or Accountants. You would be using LSS to facilitate the implementation of such advice. LSS shall not issue any legal advice, legal opinion, shall not create or develop legal strategy without coordination with your Counsel/Accountants/Experts and other professionals hired for that purpose, and you will take their and only their final opinions as guidance in your decisions, including decisions pertaining to the Lawsuits and related matters.
5. Assistance in arranging, conducting and documenting your meetings with your partners in various entities, including but not limited to facilitating board meetings of LA Micro Group (UK) Ltd on the premises of LSS and at other locations.
6. Assistance in analyzing financial records which pertain to the Lawsuits, with the understanding that such assistance shall be furnished and performed in conjunction with your Counsel and/or Accountants, and

always subject to your final review of all such analyses with your Attorneys and Accountants, whose opinions and advice you shall seek and obtain before utilizing any preliminary analysis reached by LSS and/or by you as a result of work with LSS.

In exchange for LSS and its staff providing you with the above referenced services, you agree to pay LSS $7,500 per month, starting with the month of December 2015 (when member(s) of LSS staff first began to render these services to you, notwithstanding the fact that LSS was not formed until later), plus an additional $500 per month starting in April 2016. Such payments shall be due until and unless you notify LSS, in writing, that you no longer require its services, in which case you shall pay the above amount(s) for all months up to and including the month in which you provide LSS with such notification. For expediency, you hereby authorize LSS to issue invoices for its services to you to your Attorneys in the UK, specifically to David Foster at O'Melveny and Meyers, LLP, who shall be authorized to make prompt payment of such invoices from your client account held with them.

Notwithstanding the above services being provided by LSS, it is important that you recognize that LSS is not a law firm, and is neither licensed nor able to provide you with legal advice and/or representation, nor with any other services for which an attorney is normally required. You have sought advice of professional attorneys, both in the UK and the USA, and agree that the services LSS has provided you with, and shall provide you with, never did amount, and never shall amount to the following, and agree to seek advice of professional attorneys in the event you desire to obtain any of the following services:

1. Legal advice, representation and analysis (these services can only be provided by your Attorneys);
2. Tax advice, preparation and representation (these services can only be provided by your Accountants);
3. Any and all other services which can only be provided by licensed professionals.

Please note that legal advice, legal representation and legal analysis can only be provided by your Counsel.

Please note that tax advice, preparation and representation services can only be provided by your Accountants.

Please note that any other expert and/or professional services can only be provided by licensed professionals.

While one of the Members of LSS is Irina Z. Vilk, Esq. is an attorney, you acknowledge that neither she nor LSS are providing you with any of the above services, and you will not consider her role in LSS to indicate otherwise.

You hereby agree to indemnify and hold harmless LSS and its staff from any lawsuits and claims which can be filed against you, or against LSS as a result of the assistance it provides to you.

By signing below, you certify that you have understood all the terms specified above, have sought professional legal counsel on engaging LSS to assist you, acknowledge all limitations set forth in this latter, and fully agree and accept all of the terms stated above.

Litigation Support Services, LLC:

Andrew Mogilyansky, Managing Member

Date: 03/25/16

Accepted and agreed:

Arkady Lyampert

Date: 03.25.16

Exhibit "C"

Litigation Support Services, LLC v. Arkadiy Lyampert, et. al.
Civil Action No.: 2:19-CV-01574-ER

# Litigation Support Services, LLC

*Full-service international litigation assistance*

# INVOICE

1300 Industrial Blvd, Suite 203
Southampton, PA 18966
Phone +1 (215) 297-4070
billing@litigationaid.com | www.litigationaid.com

**INVOICE #** FVAL-2016-05
**DATE** May 2, 2016

**TO**
O'Melveny & Meyers, LLP
Warwick Court
5 Paternoster Square
London EC4M 7DX
United Kingdom
Phone +44 (0) 20 7088 0000

**FOR** Frenkel v. Lyampert et al
**P.O. #** N/A

| Description | Amount |
|---|---|
| Support Services // Frenkel v. Lyampert et al // May 2016 | $7,500.00 |
| Additional charge for financial review by Irina Vilk, Esq. per agreement | $500.00 |
| Advance for third-party legal services on client's behalf (e.g. George Bachello) | $5,000.00 |
| Note: this invoice is billed in advance for client's convenience | |

*[stamp:]*
VOUCHER 3222 7371
BATCH
VENDOR 184103
CODE 00 06 00 00
DESCRIPTION
MATTER No OS25692 –1
AUTH att.

| Total | $13,000.00 |
|---|---|

Make all checks payable to Litigation Support Services, LLC
Payment is due within 30 days.
If you have any questions concerning this invoice, please contact our billing dept. at +1-215-297-4070

Irina Vilk, Esq., Attorney-at-Law

THANK YOU FOR YOUR BUSINESS!

Exhibit "D"

Litigation Support Services, LLC v. Arkadiy Lyampert, et. al.
Civil Action No.: 2:19-CV-01574-ER

| | |
|---|---|
| **From:** | Foster, David |
| **Sent:** | 04 May 2016 10:10 |
| **To:** | Patel, Pinakeen |
| **Cc:** | Knight, Karen |
| **Subject:** | FW: LSS - Invoices / Payment |

Please can we arrange for settlement of the attached invoices totalling US$51,000 on the Arie Lyampert file (0525692-00001) using funds we are holding on client account? I have written authority from the client which : shall forward separately. Bank a/c details are all in the email below.

David

-----Original Message-----
From: Andrew Mogilyansky [mailto:andrew@litigationaid.com]
Sent: 02 May 2016 14:18
To: Foster, David
Subject: LSS - Invoices / Payment

Dear David,

Attached please find LSS Invoices for April and May 2016, as well copies of prior ones for your convenience. Per agreement with Arie, I am sending the May invoice in the beginning rather than at the end of the month, so it can get paid now.

The total charges are:

$7,500 - December 2015
$7,500 - January 2016
$7,500 - February 2016
$7,500 - March 2016
$8,000 - April 2016 (includes $500 for Irina Vilk, Esq.)
$13,000 - May 2016 (includes $5,000 advance for possible future third-party costs expected to be paid by LSS on Arie's behalf, such as George Bochetto, Esq.)
=================================================
$51,000 - TOTAL

I have discussed this with Arie and he has authorized me to send an instruction to you to pay the above to LSS's US account.

Could you please send a wire for this amount at your earliest convenience to the following bank coordinates:

| | |
|---|---|
| Bank: | TD Bank, N.A.<br>110 Street Rd, Southampton, PA 18966, USA |
| Beneficiary: | Litigation Support Services, LLC<br>1300 Industrial Blvd, Suite 203, Southampton, PA |

18966
Account No:
ABA Routing No: 
Swift Code:

1

Exhibit "E"

Litigation Support Services, LLC v. Arkadiy Lyampert, et. al.
Civil Action No.: 2:19-CV-01574-ER

LITIGATION SUPPORT SERVICES, LLC :
                Plaintiff,      :
                                :

        v.                      :
                                :      Civil Action No. 2:19-CV-01574-ER
ARKADIY LYAMPERT;       :
and
ELENA LYAMPERT;        :
and
ANNA LYAMPERT;         :
and
EAA INVESTMENTS, LLC;   :
and
VRLA TECH, LLC;        :
and
VALLEY VIEW GRANTOR RETAINED  :     JURY TRIAL DEMANDED
INCOME TRUST;         :
and
SECOND VALLEY VIEW GRANTOR  :
RETAINED INCOME TRUST,    :
             Defendants.    :

## <u>AFFIDAVIT OF ARKADIY LYAMPERT</u>

Arkadiy Lyampert, being duly sworn according to law, deposes and says the following:

1. I am an adult individual and a Defendant in the above-captioned case.

2. I am submitting this affidavit in support of my counsel's Emergency Motion to Disqualify Plaintiff's Counsel ("the Motion").

3. English is my second language. I was born in Soviet Union on November 28, 1964, and I came to the United States when I was 28 years of age. I am capable, given sufficient time, of understanding written English and of expressing myself in writing, but at times I struggle with oral conversations and my spoken English is very poor. In an abundance of

1

...filhdavit and I believe that it is accurate.

4.  In the instant case, counsel representing Plaintiff is George A. Bochetto, Pennsylvania Attorney ID 27783, of the firm Bochetto & Lentz, P.C.

5.  I strongly believe that Attorney Bochetto and his law firm should be disqualified from representing the Plaintiff in this matter, because I am a former client of Attorney Bochetto while he was a partner of Bochetto & Lentz, P.C.; Attorney Bochetto is now representing my adversary, the Plaintiff, in the same or substantially related matter; and Plaintiff's interests are materially adverse to mine and to the other Defendants.

6.  I never gave informed consent to Attorney Bochetto's representation of Plaintiff in the instant case.

7.  Plaintiff alleges that the Defendants and I have breached a Long-Term Agreement ("LTA"), a true and correct copy of that LTA is attached to the Motion as Exhibit "A."

8.  The LTA incorporates by reference an Engagement Letter between Plaintiff and myself, dated March 25, 2016. A true and correct copy of that Engagement Letter is attached to the Motion as Exhibit "B." Plaintiff's Managing Member is Andrew Mogilyansky, who is fluent in Russian and English. Under the Engagement Letter, Plaintiff was hired for litigation support services during simultaneous judicial proceedings that were pending against me.

9.  At some point after April 19, 2016, Mr. Mogilyansky recommended that I meet with Attorney Bochetto. That same month, Mr. Mogilyansky, my wife, and I met with Attorney Bochetto at the office of Bochetto & Lentz, P.C., in Philadelphia, Pennsylvania,

10.   Subsequent to that meeting, Mr. Mogilyansky requested that we retain Attorney Bochetto to advance my interests during the simultaneous judicial proceedings by assisting Plaintiff's performance under our contractual agreement. I agreed to this arrangement with an understanding that Attorney Bochetto was my lawyer, who was retained for his knowledge and skill in the law, and who was to work directly with my agent, the Plaintiff.

11.   By working with Mr. Mogilyansky on my behalf, Attorney Bochetto was privy to the same confidential and privileged information concerning the simultaneous judicial proceedings against me and was a witness to the services performed or not performed by Mr. Mogilyansky.

12.   On May 2, 2016, Plaintiff created Invoice No. FVAL-2016-05, a true and correct copy is attached to the Motion as Exhibit "C." This invoice clearly reads "$5,000," as "Advance for third-party legal services *on client's behalf* (e.g., George Bochetto)" (emphasis added). I understood that I was the "client."

13.   On May 2, 2016, Mr. Mogilyansky, acting as Managing Member of Plaintiff, submitted an e-mail to my British attorney, Mr. David Foster, a true and correct copy is attached to the Motion as Exhibit "D." Mr. Mogilyansky writes, "$13,000 – May 2016 (includes $5,000 advance for possible future third-party costs expected to be paid by LSS *on Arie's behalf*, such as George Bochetto, Esq.) (emphasis added). This invoice was paid from my client trust account, and "Arie" is my nickname.

contractual relationship is now the subject of Plaintiff's instant lawsuit against me and the other Defendants, who were parties to the Long-Term Agreement ("LTA") and where the LTA incorporates by reference the Engagement Letter under which Attorney Bochetto was retained to assist Plaintiff. If Attorney Bochetto had also assisted while Plaintiff performed under the LTA, then Attorney Bochetto's professional services were obtained for the benefit of the other Defendants as well.

15.     After I was served with a copy of the Writ of Summons in the instant case, I promptly contacted Attorney Bochetto on March 7, 2019 concerning his conflict of interest, and he has declined my request to cease any involvement in the instant case. He instead proceeded to file the Civil Complaint for Plaintiff on March 14, 2019.

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness accuracy, or validity of that document.

Arkadiy Lyampert

Sworn to and subscribed before me this
18 day of April 2019

Notary Public

CYNTHIA VICTORIA DUREN
Notary Public - California
Los Angeles County
Commission # 2239999
My Comm. Expires Apr 27, 2022

4

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LITIGATION SUPPORT SERVICES, LLC : | |
| Plaintiff, : | |
| : | |
| v. : | |
| : | Civil Action No.: 2:19-cv-01574-ER |
| ARKADIY LYAMPERT; : | |
| and : | |
| ELENA LYAMPERT; : | |
| and : | |
| ANNA LYAMPERT; : | |
| and : | |
| EAA INVESTMENTS, LLC; : | |
| and : | |
| VRLA TECH, LLC; : | |
| and : | |
| VALLEY VIEW GRANTOR RETAINED : | JURY TRIAL DEMANDED |
| INCOME TRUST; : | |
| and : | |
| SECOND VALLEY VIEW GRANTOR : | |
| RETAINED INCOME TRUST, : | |
| Defendants. : | |

## CERTIFICATE OF SERVICE

I, David W. Crossett, Esquire, hereby certify that on the 18th day of April, 2019, a copy of a Defendant's Motion and Memorandum of Law to Disqualify Plaintiff's Counsel, has been electronically filed, which provided electronic notice to the following:

George Bochetto, Esquire
Bochetto & Lentz, PC
1524 Locust Street
Philadelphia, PA 19102
*Counsel for Plaintiff*

**CORNERSTONE LAW FIRM, LLC**
/s/ David W. Crossett
David W. Crossett, Esquire
Penna. Attorney ID 313031