UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

| | |
|---|---|
| Litigation Support Services, LLC, | : |
| Plaintiff, | : |
| | : No. 2:19-CV-01574-ER |
| v. | : |
| | : |
| Arkadiy Lymapert, Elena Lyampert, Anna Lyampert, EAA Investments, LLC, VRLA Tech, LLC, Valley View Grantor Retained Income Trust, and Second Valley View Grantor Retained Income Trust, | : JURY TRIAL DEMANDED |
| Defendants. | : |

## ORDER

NOW, this _____ day of _____, 2019, upon consideration of Plaintiff's Motion to Compel Arbitration and for a Stay on These Proceedings, any opposition thereto, and the record as a whole,

IT IS this _____ day of _____, 20_____,

ORDERED that Plaintiff's Motion to Compel Arbitration and Stay These Proceedings is granted; and

IT IS FURTHER ORDERED that Defendants' Motions to Dismiss and to Disqualify counsel (CM/ECF Nos. 3 and 4) are hereby DENIED as moot, as this Court is without jurisdiction to hear them; and

IT IS FURTHER ORDERED that this matter is stayed pending arbitration; and

    IT IS FURTHER ORDERED that the parties are directed to submit this dispute to arbitration, as provided by the parties' Arbitration Agreement.

Dated:                  _____

                                            J.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Litigation Support Services, LLC, | : |
| Plaintiff, | : |
| | : No. 2:19-CV-01574-ER |
| v. | : |
| | : |
| Arkadiy Lymapert, Elena Lyampert, Anna Lyampert, EAA Investments, LLC, VRLA Tech, LLC, Valley View Grantor Retained Income Trust, and Second Valley View Grantor Retained Income Trust, | : JURY TRIAL DEMANDED |
| Defendants. | : |

### PLAINTIFF'S MOTION TO COMPEL ARBITRATION AND TO STAY THESE PROCEEDINGS, PURSUANT TO F.R.C.P 12(b)(6) AND THE FEDERAL ARBITRATION ACT

Plaintiff, by and through its undersigned counsel, Bochetto & Lentz, P.C., hereby submits the following Motion to Compel Arbitration and to Stay These Proceedings pursuant to F.R.C.P 12(b)(6) and the Federal Arbitration Act, 9 U.S,C, § 1–16.

As set forth in Plaintiffs' Memorandum of Law, which is incorporated herein by reference, Plaintiffs respectfully request the Court to grant this Motion and enter an Order denying Defendants' Motion to Dismiss, ordering a stay, and referring this matter to arbitration per the agreement of the parties.

**WHEREFORE,** Plaintiffs respectfully request the Court to grant this Motion and enter an Order granting Plaintiff's Motion to Compel and Stay These Proceedings, denying Defendants' Motion to Dismiss, ordering a stay, and referring this matter to arbitration per the agreement of the parties.

1

                                        Respectfully Submitted,

                                        **BOCHETTO & LENTZ, P.C.**

Dated: April 26, 2019        By:    /s/ George Bochetto
                                                  George Bochetto, Esquire
                                                  David P. Heim, Esquire
                                                  1524 Locust Street
                                                  Philadelphia, PA 19102
                                                  (215) 735-3900
                                                  gbochetto@bochettoandlentz.com
                                                  dheim@bochettoandlentz.com
                                                  *Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

| | |
|---|---|
| Litigation Support Services, LLC, | : |
| | : |
| Plaintiff, | : |
| | : No. 2:19-CV-01574-ER |
| v. | : |
| | : |
| Arkadiy Lymapert, Elena Lyampert, | : |
| Anna Lyampert, EAA Investments, LLC, | : |
| VRLA Tech, LLC, Valley View Grantor | : JURY TRIAL DEMANDED |
| Retained Income Trust, and Second | : |
| Valley View Grantor Retained Income | : |
| Trust, | : |
| Defendants. | : |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND STAY THESE PROCEEDINGS, PURSUANT TO F.R.C.P 12(b)(6) AND THE FEDERAL ARBITRATION ACT**

## **TABLE OF CONTENTS**

INTRODUCTION AND SUMMARY OF THE ARGUMENT ........................... 1

FACTUAL AND PROCEDURAL BACKGROUND ........................................ 2

LEGAL ARGUMENT ............................................................................................ 5

    I.    The Federal Arbitration Act Applies ........................................... 5

    II.    Standard ......................................................................................... 5

    III.    There is a Strong Judicial Policy in Favor of the Enforceability
Of Arbtration Clauses ................................................................... 6

    IV.    The Parties Agreed to Arbitrate and the Present Dispute Falls
Within the Scope of the Arbitration Agreement ........................... 6

            a.    An Agreement to Arbitrate Exists .......................................... 7

    V.    This Action Must be Stayed Pending Arbitration ........................ 10

CONCLUSION ..................................................................................................... 10

# TABLE OF AUTHORITIES

*Alexander v. Anthony International*, L.P., 341 F.3d 256 (3d. Cir. 2003) .................. 6

*AT&T Techs., Inc. v. Comms. Workers of America*,
    475 U.S. 643, 649, 106 S.Ct. 1415, 1418–19 (1986) .................................. 2

*Buckeye Check Cashing, Inc. v. Cardegna*,
    546 U.S. 440, 445–46, 126 S.Ct. 1204, 1209, 163 L.Ed.2d 1038 (2006) ............ 7-8

*Callan v. Oxford Land Development, Inc.*, 858 A.2d 1229 (Pa. Super. Ct. 2004) ........... 6

*Century Indem., Century Indem. Co. v. Certain Underwriters at Lloyd's, London*,
    584 F.3d 513, 524 (3d Cir. 2009) ..................................................... 9

*Devon Robotics, LLC v. DeViedma*, 798 F.3d 136, 143–144 (3d Cir. 2015) ................ 10

*Flightways Corp. v. Keystone Helicopter Corp.*, 331 A.2d 184, 185 (Pa. 1975) ............ 9

*Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir. 2014) ............................ 8

*Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 776 (3d Cir. 2013) ....... 5

*Invista S.Á.R.L. v. Rhodia, S.A.*, 625 F.3d 75, 84 (3d Cir. 2010) ......................... 6

*John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 136 (3d Cir. 1998) .............. 5

*Lloyd v. Hovensa, LLC,* 369 F.3d 263, 269 (3d Cir. 2004) ............................... 10

*Long v. Brown*, 399 Pa. Super. Ct. 312, 321, 582 A.2d 359, 363 (1990) .................. 8

*Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*,
    460 U.S. 1, 24, 103 S.Ct. 927, 941 (1983) ............................................ 6

*Muhlenberg Township School District Authority v. Pennsylvania Fortunato
    Construction Co.*, 460 Pa. 260, 333 A.2d 184, (1975) ............................. 9, 10

*PaineWebber, Inc. v. Hartmann*, 921 F.2d 507, 511 (3d Cir. 1990) ....................... 5

*Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 597–98 (3d Cir. 2004) .................... 5

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 398 (1967) .............. 9, 10

*Renfrew Centers, Inc. v. Uni/Care Systems Inc.*,
    920 F.Supp. 2d 572, 574 (E.D.Pa. 2013) ........................................... 9, 10

*Spinetti v. Service Corp. Intern'l.*, 324 F.3d 212, 213 (3rd Cir. 2003) .......................... 6

***Statutes/Citations***

F.R.C.P. (12)(b)(6) ............................................................................................. 1, 5, 6

Federal Arbitration Act, 9 U.S,C, § 1–16 ................................................................ 1, 5

9 U.S.C. §§ 3, 4 ..................................................................................................... 5, 10

Plaintiff, by and through its undersigned counsel, Bochetto & Lentz, P.C., in support of its motion to compel arbitration, or in the alternative stay these proceedings, pursuant to, avers as follows:

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

Defendants have come to this Court to avoid their clear agreement to arbitrate this dispute in a plain and obvious attempt to impose additional burdens and costs on Plaintiff's clear right to recovery. That agreement covers the broadest possible range of claims and disputes, and was freely entered into by the parties; it cannot now be avoided. These Defendants agreed to negotiate any dispute with Plaintiff in good faith, and Defendants agreed to arbitrate any "disagreement" under "all situations" if negotiations failed: but Defendants neither negotiated in good faith nor even complied with their simple promise to arbitrate. This case must proceed in arbitration at JAMS in Philadelphia, rather than in this Court, pursuant to the unambiguous agreement between the parties. The needless and costly removal and motion practice engaged in by Defendants does not change this fact one iota.

Plaintiffs filed this action in the Court of Common Pleas in Pennsylvania against Defendants for several breach of contract claims and, most germane to this present motion, to compel arbitration against Defendants. Prior to filing its Complaint, Plaintiff had exhausted all reasonable efforts to enlist Defendant's compliance in negotiations, then mediation, and finally arbitration. Despite the existence of a valid arbitration agreement between the parties, Defendants have consistently refused to cooperate with Plaintiff's efforts.

Instead, Defendants removed the state court claim to this Court, in a blatant effort to circumvent a binding contractual arbitration provision between the parties ("the Arbitration Agreement.") Defendants then further sought to dismiss this Action, once again ignoring their contractual obligation to participate in arbitration.

Plaintiff now moves to compel arbitration. Not only does the written agreement between the parties clearly mandate arbitration, but Defendants have raised no argument that the provision requiring arbitration is invalid. Instead, Defendants simply explain that they did not really think they would be subject to arbitration in Pennsylvania. As discussed in further detail below, the fact that Defendants interpreted the Arbitration Agreement in such a way does not preclude enforcement of the Arbitration Agreement as written.

Finally, the law is clear that, under the Federal Arbitration Act, there is a strong presumption of arbitrability – so much so, in fact, that a request to arbitrate should not be denied unless it is clear that there is no interpretation of the Arbitration Agreement that would allow for arbitration of the dispute. *AT&T Techs., Inc. v. Comms. Workers of America*, 475 U.S. 643, 649, 106 S.Ct. 1415, 1418–19 (1986).

Given that there is a valid Arbitration Agreement between the parties that clearly encompasses Plaintiff's claims for breach of contract, Plaintiff respectfully requests that this Court deny Defendant's Motion to Dismiss, grant Plaintiff's Motion to Compel Arbitration, and stay these proceedings pending said arbitration.

## **FACTUAL AND PROCEDURAL BACKGROUND**

This case arises out of a business relationship between Litigation Support Services, LLC ("LSS", "Plaintiff"), a Pennsylvania-based consultancy operated by Andrew Mogilyansky ("Mogilyansky"), and the California-based family of Arkadiy, Elena and Anna Lyampert, their

2

business entities, and their trusts (together, the "Lyampert Group" or the "Defendants").

For approximately 2.5 years ending in mid-2018, Mogilyansky, through LSS, provided consulting services ("LSS Services") to the Lyampert Group and their respective attorneys. LSS Services related principally to UK and US litigation ("Frenkel Litigation") between Arkadiy Lyampert ("Lyampert") and Roman Frenkel ("Frenkel"), and to Lyampert's contested interest in LA Micro Group UK, Ltd. ("LAMUK"), a successful UK-based business.

The Frenkel Litigation included multiple proceedings in the US starting in 2010 ("US Proceedings") and in the UK starting in 2015 ("UK Proceedings"). At the heart of the US Proceedings was a dramatic 2010 falling out between Lyampert and Frenkel in relation to their business, LA Micro Group, Inc. ("LAMG"). As of late 2015 - early 2016, the Frenkel Litigation was going poorly for Defendants, and they decided to engage the services of Plaintiff.

The relationship between Plaintiff and Defendants was based on written contracts, including a contract titled "Long-Term Engagement Agreement" dated March 14, 2016 ("LTA"). Per the LTA, Plaintiff was hired to provide a combination of analytical, communication, negotiation, coordination, organization, linguistic, computer and various other skills, and has demonstrated substantial competence in law, accounting, logic, and other areas in connection with the Frenkel Litigation.

Further, the LTA expressly stated that disagreements between the parties arising out of this arrangement will be subject to arbitration. The LTA states in relevant part:

> LSS and Clients will strive to find amicable solutions to **all situations which may arise in their relationship with each other**. If LSS and Clients **have a disagreement**, they will first try to resolve it through good faith negotiations. If the disagreement cannot be amicably resolved through negotiations, LSS and Clients will arrange for informal mediation to be conducted by Jeff Farrow, Esq. and George Bochetto, Esq. via telephone or video conference. If this mediation proves unsuccessful, LSS and Clients

3

> will submit to binding arbitration in an arbitration venue and forum chosen by Mr. Farrow and Mr. Bochetto. If Mr. Farrow and Mr. Bochetto cannot agree on the method of arbitration, each of them will suggest one, and it will be decided by coin toss to be performed by Mr. Farrow.

See LTA ¶ 12 (attached as ex. B to Exhibit C hereto) (emphasis added); Plaintiff's Complaint at ¶ 60, attached as Exhibit "A".

The LTA thus provides a clear process of resolving disputes between the parties without court intervention. Despite numerous efforts by Plaintiff to initiate the mediation/arbitration process,[1] the Lyampert Group, having on at least two occasions agreed and then reneged to comply with the applicable provision of the LTA, has as of this date failed and refused to comply with it.

Due to the failure and refusal by Defendants and their California counsel to cooperate in the clear "informal mediation first, then binding arbitration" procedure proscribed by the Arbitration Agreement, at this time binding arbitration is not possible as all major arbitration services require all parties to agree to submit to arbitration.

Plaintiff filed its Complaint and accompanying exhibits, detailing the above facts, on March 14, 2019. A true and accurate copy of Plaintiff's Complaint is attached hereto as Exhibit "A." Defendants filed a Notice of Removal before this Court on April 11, 2019. A true and accurate copy of Defendants' Notice of Removal is attached hereto as Exhibit "B." Defendants further moved to dismiss this Action, or alternatively transfer venue, on April 18, 2019. A true and accurate copy of Defendant's Motion to Dismiss is attached hereto as Exhibit "C."

---

[1] While Plaintiff did not believe a coin-toss was required, as in the circumstances described above Plaintiff should be free to choose the arbitration venue and forum in its discretion, the additional coin-toss procedure required by the LTA was performed out of abundance of caution and to avoid allegations of bad faith. The coin-toss fell in favor of Plaintiff. See Exhibit "A" at Exhibit H ¶¶ 28-31. Having won the coin-toss, Plaintiff chose to have the arbitration performed by JAMS branch in Philadelphia.

4

## LEGAL ARGUMENT

I.  The Federal Arbitration Act Applies

Section 4 of the Federal Arbitration Act ("the FAA") authorizes this Court to order parties to arbitrate where they have agreed in writing to do so. *See* 9 U.S.C. §4. "[W]hen a party resists arbitration under an existing arbitration clause . . . the FAA allows a district court to compel, or enjoin, arbitration as the circumstances may dictate." *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 136 (3d Cir. 1998) (citing 9 U.S.C. §§ 3, 4; *PaineWebber, Inc. v. Hartmann*, 921 F.2d 507, 511 (3d Cir. 1990)).

II.  Standard

A motion to compel arbitration is analyzed using the same standard of review as a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) when the arbitrability of the claim is clear from the face of the pleadings. *Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 597–98 (3d Cir. 2004).

Where, as here, it is clear from the face of the Complaint and its supporting documents that a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration "should be considered under a Rule 12(b)(6) standard without discovery's delay."[2] *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 776 (3d Cir. 2013). "[T]he FAA [] favor[s] resolving a Motion to Compel arbitration under a motion to dismiss standard without the inherit delay of discovery." *Guidotti*, 716 F.3d at 774 (citations omitted).

---

[2] Plaintiff did not attach a copy of the LTA or the Arbitration Agreement to its Complaint out of respect for Defendants' privacy rights. See Exhibit "A" at fn. 1. Defendants have since, however, produced a copy of the LTA as an attachment to their Motion to Dismiss. See Exhibit "C" at 33–40.

5

A court is required to look to the relevant state law of contracts, here Pennsylvania, when deciding whether an arbitration agreement is valid under the FAA. *Spinetti v. Service Corp. Intern'l.*, 324 F.3d 212, 213 (3rd Cir. 2003).

III. <u>There is a Strong Judicial Policy in Favor of the Enforceability of Arbitration Clauses</u>

Any doubt as to the arbitrability should be resolved in favor of arbitration. *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986) The question of arbitrability "must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941 (1983).

Congress established "a strong federal policy in favor of the resolution of disputes through arbitration" by enacting the FAA. *Alexander v. Anthony International*, L.P., 341 F.3d 256, 263 (3d. Cir. 2003).

IV. <u>The Parties Agreed to Arbitrate and the Present Dispute Falls within the Scope of the Arbitration Agreement</u>

Notwithstanding this strong federal policy, the Court must still determine if the parties have entered into a valid arbitration agreement. *Invista S.Á.R.L. v. Rhodia, S.A.*, 625 F.3d 75, 84 (3d Cir. 2010). To make this determination, the court considers the law of the forum state. *Id.* Thus, consideration of an arbitration clause's validity involves a two-step process: (1) whether an agreement to arbitrate exists, and if so (2) whether the dispute falls within the scope of that agreement. *Id.*

If the two-prong test outlined above is met, the controversy **must** be submitted to arbitration. *Callan v. Oxford Land Development, Inc.*, 858 A.2d 1229, 1233 (Pa. Super. Ct. 2004) (emphasis added).

### a. *An Agreement to Arbitrate Exists*

As discussed above, in determining arbitrability, this Court should consider the Complaint and its exhibits. *See Guidotti,* 716 F.3d at 776; *see also In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997) (stating that even if a "[c]omplaint does not explicitly refer to or cite [a document] ... the critical [issue] is whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited").

Here, however, the parties have couched the arbitration provision in the broadest and most all-inclusive terms. The Arbitration Agreement reads:

> LSS and Clients will strive to find amicable solutions to **all situations which may arise in their relationship with each other**. If LSS and Clients **have a disagreement**, they will first try to resolve it through good faith negotiations. If the disagreement cannot be amicably resolved through negotiations, LSS and Clients will arrange for informal mediation to be conducted by Jeff Farrow, Esq. and George Bochetto, Esq. via telephone or video conference. If this mediation proves unsuccessful, LSS and Clients will submit to binding arbitration in an arbitration venue and forum chosen by Mr. Farrow and Mr. Bochetto. If Mr. Farrow and Mr. Bochetto cannot agree on the method of arbitration, each of them will suggest one, and it will be decided by coin toss to be performed by Mr. Farrow.

*See* Plaintiff's Complaint at ¶ 60, attached as Exhibit "A" (emphasis added).

Additionally, since the arbitration promise itself is a clause in the Arbitration Agreement, the parties agree that its construction is for the arbitrators. Defendants have not challenged the enforceability of the Arbitration Agreement on contract principles. It must follow, therefore, that the parties provided that any dispute as to whether a particular claim is within the arbitration clause is itself a matter for arbitration. *See Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S.

7

440, 445–46, 126 S.Ct. 1204, 1209, 163 L.Ed.2d 1038 (2006) ("[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator. . . .").

Of note, Defendants have not even attempted to argue that the Arbitration Agreement is invalid – they have not argued or presented any facts supporting an argument that the Agreement is procedurally or substantively unconscionable, made under duress, or otherwise unenforceable.

At best, Defendants' arguments are an attempt to discuss personal jurisdiction, which is not a valid ground by which to avoid an otherwise applicable arbitration agreement. Even if the Lyampert group believed at the time of agreement – as they argue – that they would not be subject to arbitration in Pennsylvania, such a belief does not invalidate the Arbitration Agreement. *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir. 2014) (acknowledging that "arbitration is strictly a matter of contract").

At the time of the agreement, the Lyampert group made no outward or objective manifestations of disagreement towards the breadth of the agreement. Only their objective outward manifestations of intent matter when determining if there was a meeting of the minds. *Long v. Brown*, 399 Pa. Super. Ct. 312, 321, 582 A.2d 359, 363 (1990). "Under contract law the objective manifestation is the governing factor, regardless of subjective beliefs and reservations." *Id.*

As a result, the Arbitration Agreement is a valid, enforceable contract requiring the Lyampert group to arbitrate the claims set forth in Plaintiff's Complaint.

    b. *This Dispute Falls Within the Scope of the Arbitration Agreement*

Regarding the question of whether the dispute "in question falls within the scope of [a] valid [arbitration] agreement," *Flintkote*, 769 F.3d at 220, "'there is a presumption of arbitrability . . . an order to arbitrate the particular grievance should not be denied unless it may

8

be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Century Indem., Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 524 (3d Cir. 2009).

As discussed above, the parties agreed to arbitrate **all situations arising out of their relationship which result in a disagreement.** The language chosen by the parties is the broadest possible, governing "all situations" and "disagreement[s]" without reservation. Ex. C at ex. B thereto, ¶ 12. The disagreements raised by Plaintiff in this case include four claims for breach of contract and two claims concerning anticipatory breach arising out of the parties' contractual relationship. See Exhibit "A" at ¶ 77–99. Such claims clearly come under the purview of the Arbitration Agreement.

In *Muhlenberg Township School District Authority v. Pennsylvania Fortunato Construction Co.*, 460 Pa. 260, 333 A.2d 184, (1975), the Supreme Court of Pennsylvania held that if an arbitration agreement covers "all claims arising" between the parties, all claims will be subject to arbitration. *Id.*, 460 Pa. at 264, 333 A.2d at 186. Further, arbitration clauses with the phrases "arising under" and "arising out of" "are normally given broad construction." *Renfrew Centers, Inc. v. Uni/Care Systems Inc.*, 920 F.Supp. 2d 572, 574 (E.D.Pa. 2013).

Similarly, the Supreme Court has characterized as "broad" an arbitration clause requiring arbitration of "[a]ny controversy or claim arising out of or relating to" the parties' agreement. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 398 (1967); *see also Flightways Corp. v. Keystone Helicopter Corp.*, 331 A.2d 184, 185 (Pa. 1975) (finding, with reference to a clause calling for arbitration of "[a]ny controversy or claim arising out of or relating to this Agreement," that "[b]roader language would be difficult to contrive").

Here, the language in the LTA is plainly at least as broad as the language addressed in *Muhlenberg Township*, *Renfrew Centers, Inc.*, and *Prima Paint Corp.* The LTA here covers not just claims but any "disagreement" and covers "all situations." This language obviously includes any dispute arising between the parties—including the subjects of the other motions pending in this Court. The law is clear that the Arbitration Agreement drafted between the parties is broad enough to encompass Plaintiff's breach of contract claims against Defendants.

For these reasons, this Court should send this case to arbitration in JAMS Philadelphia, pursuant to the agreement between the parties.

V.    This Action Must be Stayed Pending Arbitration

Pursuant to 9 U.S.C. §3, this Court shall stay a lawsuit pending arbitration upon a party's application. *See, e.g., Devon Robotics, LLC v. DeViedma*, 798 F.3d 136, 143–144 (3d Cir. 2015). Plaintiff respectfully requests that this Court stay this matter pending ADR.

Additionally, "[t]he plain language of [9 U.S.C.] § 3 affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration."; *Lloyd v. Hovensa, LLC*, 369 F.3d 263, 269 (3d Cir. 2004); *see also Devon Robotics, LLC v. DeViedma*, 798 F.3d 136, 143–44 (3d Cir. 2015).

Given the plain and obvious instructions of the FAA and the precedent thereunder, therefore, this Court should immediately stay the instant litigation and send this matter to JAMS in Philadelphia for resolution.

**CONCLUSION**

For all the foregoing reasons, it is respectfully requested that this matter be sent to arbitration, and any proceedings in this Court stayed, with the understanding that all disputes, disagreements, and claims shall be resolved by the arbitrator.

                                                      Respectfully submitted,

                                                      **BOCHETTO & LENTZ, P.C.**

Dated: <u>4/26/19</u>                    By:    <u>/s/ George Bochetto</u>
                                                            George Bochetto, Esquire
                                                            1524 Locust Street
                                                           Philadelphia, PA 19102

## **CERTIFICATE OF SERVICE**

I certify that on April 25, 2019, I caused a copy of the foregoing document, together with all supporting papers, to be served by ECF upon all parties and counsel.

/s George Bochetto
George Bochetto, Esquire
