**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Litigation Support Services, LLC, | : | |
| Plaintiff | : | No. 2:19-CV-01574-ER |
| | : | |
| v. | : | |
| | : | |
| Arkadiy Lyampert, Elena Lyampert | : | |
| Anna Lyampert, EAA Investments, | : | |
| LLC, VRLA Tech, LLC, Valley | : | |
| Grantor Retained Income Trust, | : | |
| Second Valley View Grantor | : | JURY TRIAL DEMANDED |
| Retained Income Trust | : | |
| Defendants. | : | |

## <u>ORDER</u>

AND NOW, this _____ day of May, 2019, upon consideration of the

Defendants' Motion for Leave to file a Reply Brief to Plaintiff's Response in Opposition (Doc.

No. 9), IT IS ORDERED that said Motion is GRANTED. The Defendants shall file reply briefs,

in a form substantially similar to Exhibit A and Exhibit B of the forgoing Motion, together with

the exhibits therein, within three business days of the date of entry of this Order.

BY THE COURT

_____
Hon. Eduardo C. Robreno, *J*.

1

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Litigation Support Services, LLC, | : | |
| Plaintiff | : | No. 2:19-CV-01574-ER |
| | : | |
| v. | : | |
| | : | |
| Arkadiy Lyampert, Elena Lyampert | : | |
| Anna Lyampert, EAA Investments, | : | |
| LLC, VRLA Tech, LLC, Valley | : | |
| Grantor Retained Income Trust, | : | |
| Second Valley View Grantor | : | JURY TRIAL DEMANDED |
| Retained Income Trust | : | |
| Defendants. | : | |

**DEFENDANTS' MOTION FOR LEAVE TO REPLY TO PLAINTIFF'S RESPONSE
AND TO SUBMIT CORRECTED AND OTHER EXHIBITS**

Plaintiff has filed a Response in Opposition to Defendants' Motion to Dismiss and Disqualify, together with a Memorandum of Law (Docket Index No. 9) (the "Plaintiff's Brief"), as <u>one</u> submission even though Defendants filed <u>two</u> separate motions. Pursuant to the policies and procedures of the Honorable Eduardo C. Robreno, Defendants request leave from the Court to file reply briefs, attached hereto as Exhibit A and Exhibit B, respectively as to each of Defendants' motions, to correct misstatements and address previously <u>unexpected</u> and <u>unprecedent</u> legal arguments raised in Plaintiff's Response. Furthermore, Defendants request leave to file additional and corrected exhibits, where the e-filing timestamp from PACER had cut-off portions of an affidavit from the Motion to Disqualify Plaintiff's Counsel.

1.      Plaintiff counterargues that a coin toss procedure by a California attorney, which never occurred, amounts to an implied consent to personal jurisdiction. That is 100% unprecedented in American law, and was unexpected by Defendants. This warrants a reply.

2.      Plaintiff argues that it took Defendant Arkadiy Lyampert's money, invoicing his British counsel for payment from the attorney-client trust account, and then used that money for

1

unrelated purposes. Based on these and other critical admissions, nearly all of which were entirely unexpected, a reply is warranted why Plaintiff should be equitably estopped from denying disqualification of counsel.

3.      As to personal jurisdiction, Plaintiff's Brief confuses the issues by focusing on the Pennsylvania contacts of Arkadiy Lyampert ("Mr. Lyampert"), where he <u>did not</u> join the Moving Defendants in challenging personal jurisdiction. This warrants a reply.

4.      A reply is necessary to correct misstatements of fact by Plaintiff, where none of the Moving Defendants had any involvement in the entity-formation of Plaintiff as a Pennsylvania limited liability company, and where none of the Moving Defendants had ever submitted payments to Plaintiff.

5.      Plaintiff's Brief overlooked a recent decision by the U.S. Supreme Court in <u>Atlantic Marine Constr. Co. v. U.S. District Court for the Western District of Texas</u>, 571 U.S. 49 (2013) regarding forum-selection clauses and venue in federal courts.

6.      In respect of disqualifying opposing counsel, Plaintiff makes an unprecedented argument that "informed consent" was obtained by an intermediary (the Plaintiff) and not by Attorney Bochetto himself. This warrants a reply.

7.      The Court will benefit from the attached reply briefs, and opposing counsel will not face surprise at the scheduled oral argument, and the Court will not be burdened with additional case citations at oral argument. Defendants have concisely limited the attached reply briefs to be directly responsive to Plaintiff's Opposition.

8.      Exhibit A contains a reply relating to Plaintiff's Opposition as to Defendants' Motion to Dismiss or, Alternatively, to Transfer Venue.

9.      Exhibit B contains a reply relating to Plaintiff's Opposition as to Defendants'

Motion to Disqualify Plaintiff's Counsel.

10.     Additionally, upon the e-filing of Defendants' Motion to Disqualify Plaintiff's Counsel, on April 18, 2019, the timestamp from PACER had cut-off portions of the Affidavit of Arkadiy Lyampert. A corrected copy of that affidavit is attached to Exhibit B. Also, Mr. Lyampert found a Ledger submitted by Plaintiff which bears upon the issue of disqualifying Plaintiff's Counsel, and requests to submit that for the Court's consideration.

11.     Where this Court allowed Plaintiff to file a corrected Response in Opposition, Defendants pray that the Court will extend the same liberality to Defendants.

<u>**CONCLUSION**</u>

**WHEREFORE**, Defendants respectfully request entry of an order of court, granting leave to file the reply briefs attached hereto as Exhibit A and Exhibit B, together with the exhibits therein, respectfully as to Defendants' Motion to Dismiss or, Alternatively, to Transfer Venue and Defendants' Motion to Disqualify Opposing Counsel.

Respectfully submitted,

**CORNERSTONE LAW FIRM, LLC**

Dated: May 14, 2019          By:     /s/ David W. Crossett
                                      David W. Crossett, Esquire
                                      Attorney I.D. #313031
                                      Joel A. Ready, Esquire
                                      Attorney I.D. # 321966
                                      8500 Allentown Pike, Ste 3
                                      Blandon, PA 19510
                                      P (610) 926-7875
                                      F (484) 930-0054
                                      david@cornerstonelaw.us
                                      joel@cornerstonelaw.us
                                      *Counsel for Defendants*

3

# Exhibit A

Defendants' Reply Brief as to the Motion to Dismiss or, Alternatively, to Transfer Venue
Litigation Support Services, LLC v. Arkadiy Lyampert et. al.
United States District Court for the Eastern District of Pennsylvania

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Litigation Support Services, LLC, | : | |
| Plaintiff, | : | No. 2:19-CV-01574-ER |
| v. | : | |
| | : | |
| Arkadiy Lyampert, et al., | : | JURY TRIAL DEMANDED |
| Defendants. | : | |

**DEFENDANTS' REPLY BRIEF TO PLAINTIFF'S RESPONSE**
**IN OPPOSITION (DOC. NO. 9) TO DEFENDANTS' MOTION TO DISMISS OR,**
**ALTERNATIVELY, TO TRANSFER VENUE**

NOW COMES Defendants who, with leave of Court, respectfully submit this Reply Brief

to Plaintiff's Response in Opposition to Defendants' Motion to Dismiss and Memorandum of Law

("Plaintiff's Brief") at Docket Index No. 9:

**REPLY ARGUMENT**

**I.      Plaintiff Cannot Impute Mr. Lyampert's Contacts to Other Defendants.**

Part I of Plaintiff's Brief focuses on the contacts that Defendant Arkadiy Lyampert ("Mr.

Lyampert") had with Pennsylvania, in his personal capacity. Among other things, Plaintiff's Brief

argues that Mr. Lyampert "had known Mr. [Andrew] Mogilyansky," Plaintiff's principal, "since

2004 or 2005"; that the Engagement Letter between Mr. Lyampert and Plaintiff was negotiated

and executed by Mr. Mogilyansky in Pennsylvania; that "Mr. Lyampert flew out to Philadelphia,

exclusively, during the first four months of the parties' relationship"; and board and shareholder

meetings of Mr. Lyampert's British business, LA Micro Group UK, Ltd., occurred in Philadelphia.

[Pl.'s Br. 10-12].

But Mr. Lyampert did not join the Moving Defendants in challenging personal jurisdiction

here and no reasons are offered by Plaintiff why Mr. Lyampert's contacts should be imputed to

any other Defendant. Significantly, Plaintiff relies on Andrew Mogilyansky, who admits, "Until

1

mid-April 2016, I was not fully attuned to all details of the US Proceedings. My work was focused almost exclusively **on helping Mr. Lyampert** in the UK Proceedings and with LAMUK." [Mogilyansky Aff. ¶ 25 (emphasis added), Docket Index No. 9].

This Court recognizes that personal jurisdiction is an "individualized inquiry in each case." Waimberg v. Med. Transp. of America, Inc., 52 F. Supp. 2d 511, 515 (E.D. Pa. 1996) (noting parenthetically Mellon Bank (East) PSFS v. Farino, 960 F.2d 1217, 1224-25 (3d Cir. 1992)). Based on Mr. Mogilyansky's affidavit, as quoted above, there is no basis to impute any of Mr. Lyampert's contacts with Pennsylvania to any other Defendant, where the former acted in his personal capacity and where Moving Defendants had no contractual relationship with Plaintiff before the Long-Term Agreement signed in March of 2017. [See Arkadiy Lyampert Aff. ¶¶ 23, 30, Docket Index No. 3, Ex. C; Elena Lyampert Aff. ¶ 39, Docket Index No. 3, Ex. D; Anna Lyampert Aff. ¶ 20, Docket Index No. 3, Ex. E]. Thus, where Plaintiff argues, "the bulk of the parties' in-person meetings occurred in this jurisdiction" [Pl.'s Br. 11-12], none of that involved Moving Defendants.

## II.    Moving Defendants Were Not Involved with Plaintiff's Entity-Formation.

Page 4 of Plaintiff's Brief asserts that Mr. Lyampert and Andrew Mogilyansky "agreed that Mr. Mogilyansky would form the commercial entity Litigation Support Services, LLC (the plaintiff in this matter) for the purpose of providing litigation support to **Defendants**." [Emphasis added]. That is incorrect. Mr. Mogilyansky's affidavit reads, "On approximately March 15-19, 2016, Mr. Lyampert traveled to Philadelphia to meet with me in regard to the ongoing UK Proceedings and his relationship with his LAMUK counterparts. * * * At that time it was also agreed that I would form Litigation Support Services, LLC so that a commercial relationship for my services could be established." [Mogilyansky Aff. ¶ 115(b), Docket Index No. 9].  This is conclusory, but the formation of Plaintiff as a Pennsylvania LLC did not involve any of the Moving

2

Defendants. If it concerned Mr. Lyampert at all, then it was only his personal capacity. There's no basis to claim that Moving Defendants purposefully availed themselves of Pennsylvania resources, as the Court must conduct an individualized inquiry for the same reasons stated in Part I.

## III.   None of the Moving Defendants Ever Paid Plaintiff.

Plaintiff's Brief artfully uses passive voice, on Page 4, "At all times, payments were made to Plaintiff in this judicial District," and on Page 10, "payments under the LTA continued in Pennsylvania." Mr. Mogilyansky's Affidavit reads, "All payments for my work were received in Pennsylvania." [Mogilyansky Aff. ¶ 133, Docket Index No. 9]. Finally, on Page 2, "Plaintiff LSS was paid in Pennsylvania directly from the U.K., without any California interaction at all." Plaintiff does nothing to impeach the affidavits submitted by Defendants that only Mr. Lyampert authorized payments from his British client-trust account to Plaintiff. [See Arkadiy Lyampert Aff. ¶¶ 18, 38, Docket Index No. 3, Ex. C; Elena Lyampert Aff. ¶ 40, Docket Index No. 3, Ex. D; Anna Lyampert Aff. ¶ 21, Docket Index No. 3, Ex. E]. Thus, Moving Defendants never paid Plaintiff. Consequently, any payment wired to Plaintiff in Pennsylvania is irrelevant as to personal jurisdiction over the Moving Defendants.

## IV.   Caselaw Does Not Support Implied Consent from a Coin Toss.

On specific personal jurisdiction, Plaintiff cites Sköld v. Galderma Labs., L.P., 99 F. Supp. 3d 585, 605 (E.D. Pa. 2015) and argues, "The forum selection procedure contemplated that the venue choice could be made by an attorney located in Philadelphia, Pennsylvania, and thus constitutes waiver of personal jurisdiction as to all Defendants" in respect of the Long-Term Agreement (LTA) [Pl.'s Br. 12-13].  This is unprecedented as a matter of law.

As to implied consent, Sköld cited Insurance Corp. of Ireland v. Compagnie Des Bauxites De Guinee, 456 U.S. 694, 703-04 (1982), which cited Victory Transp., Inc. v. Comisaria General,

336 F.2d 354, 363 (2d Cir. 1964). In <u>Victory Transp.</u>, the Second Circuit reasoned, "By agreeing to arbitrate in New York," a party to that agreement "must be deemed to have consented to the jurisdiction of the court that could compel the arbitration proceeding in New York." 336 F.2d at 363. The arbitration agreement in that case expressly designated New York. Research <u>has not</u> located any authority that implied consent is met through randomness, such as a coin toss.

Federal courts do not presume that personal jurisdiction is contractually waived by a forum-selection clause "absent a clear indication of such a purpose." <u>John Boutari & Son, Wines & Spirits, S.A. v. Attiki Importers & Distributors</u>, 22 F.3d 51, 53 (2d Cir. 1994) (quotation omitted), <u>cited with favor in</u>, <u>September Props., LLC v. Millionaire Gallery, Inc.</u>, 2018 U.S. Dist. LEXIS 158753, at *10 (E.D. Pa. Sept. 18, 2018) (Brody, *J.*). "There are two types of forum selection clauses, however, mandatory or permissive." <u>September Props., LLC</u>, 2018 U.S. Dist. LEXIS 158753, at *9 (citing, inter alia, <u>Phillips v. Audio Active Ltd.</u>, 949 F.3d 378, 383 (2d Cir. 2007)). As a matter of contractual interpretation, "A so-called permissive forum clause only confers jurisdiction in the designated forum, but does not deny plaintiff his choice of forum, if jurisdiction there is otherwise appropriate." <u>Phillips</u>, 949 F.3d at 386. On the other hand, a mandatory clause will provide "where any and all of their disputes must be brought to eliminate surprise of having to litigate in a hostile forum." <u>Id.</u> (citation omitted). "Whether the forum selection clause applies to this action is a question of contract interpretation," and "state contract law, rather than federal common law, governs the interpretation" of forum-selection clauses. <u>September Props., LLC</u>, 2018 U.S. Dist. LEXIS 158753, at *4 (quotations omitted).

Here, Paragraph 12 of the LTA is <u>not</u> a forum-selection clause, because (1) no forums are named within the four-corners of the document; (2) a coin toss is merely to determine the "method" of arbitration; and (3) the coin toss could only be performed by a California attorney, Jeffrey

Farrow. Thus, Plaintiff's implied consent argument fails for both legal reasons and for the factual reason that, as a condition precedent, a coin toss by Attorney Farrow never occurred. You cannot win the lottery without playing the lottery. That is not a clear indication of purpose necessary for implied consent to personal jurisdiction here.

Plaintiff offers no counterargument to authorities cited on Page 15 of Defendants' Brief, namely, Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 333 n.7 (3d Cir. 2009) and Northern Grain Marketing, LLC v. Greving, 743 F.3d 487, 490 & 494-96 (7th Cir. 2014) why having an arbitration agreement, without any forum-selection, does not confer personal jurisdiction without more. The Court should regard that issue as waived by Plaintiff, because it is well-settled that factually unsupported, legally undeveloped or non-responsive arguments result in waiver. United States v. Hird, 913 F.3d 332, 355 n.33 (3d Cir. 2019) (without "a factual basis for such a challenge, we regard the issue to be waived."); Griswold v. Coventry First, LLC, 762 F.3d 264, 272 n.6 (3d Cir. 2014) ("undeveloped argument is insufficient"); Eulo v. Deval Aerodynamics, Inc., 430 F.2d 325, 326 n.5 (3d Cir. 1970) (waiver where nothing "more than a cursory argument" is offered); Wilson v. Cameron, 2015 U.S. Dist. LEXIS 119637, at *10 (E.D. Pa. Sept. 9, 2015) (party's objection was "non-responsive"); accord. New York Rehab. Care Mgmt. v. NLRB, 506 F.3d 1070, 1076 (D.C. Cir. 2007) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work." (quotation omitted)).

Similarly, Plaintiff offers no counterargument why the LTA is governed by California law. [See Defs.' Br. 16-18, Docket Index No. 3, on the application of California law]. Where this Court has to construe the LTA under State law, September Props., LLC, 2018 U.S. Dist. LEXIS 158753, at *4, Plaintiff offers no grounds under California or Pennsylvania contract law why parol evidence should be considered in construing the "method" of arbitration under Paragraph 12. See, e.g.,

5

Riverisland Cold Storage, Inc. v. Fresno-Madera Prod., 291 P.3d 316, 318 (Cal. 2013) ("[W]hen parties enter an integrated written agreement, extrinsic evidence may not be relied upon to alter or add to terms of the writing." (citation omitted)); accord. Yocca v. Pittsburgh Steelers Sports, Inc., 854 A.2d 425, 436 (Pa. 2004). Contrary to Page 12 of Plaintiff's Brief and the Mogilyansky Affidavit, it's irrelevant that Mr. Mogilyansky *subjectively* believed that "method" embraced "forum" and "venue," where the textual meaning does not.

There is a dichotomy between the "method" and "forum" of arbitration, regardless of whether this Court applied California or Pennsylvania law. California and Pennsylvania have adopted the *Restatement (Second) of Conflict of Laws*.  Nedlloyd Lines B.V. v. Superior Court, 834 P.2d 1148, 1151 (Cal. 1992) (adopting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187); [Defs.' Br. 16, Docket Index No. 3, on Pennsylvania authorities].  There, the "method" of enforcing an arbitration agreement relates to "whether to appoint one or more arbitrators," such as where "one of the parties refuses to appoint an arbitrator in violation of the terms of the agreement,"[1] RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 219, cmt. a, whereas the substantive rights to forum or venue of arbitration are determined under Sections 187-188. Id. § 218. By reasonable

---

[1] Comment (a) to Section 219 reads in its entirety:

> The forum will refuse to entertain a suit brought in violation of an arbitration agreement unless such a suit could be maintained under the law selected by application of the rule of § 218. On the other hand, the forum will look to its own local law to determine what method, or methods, it should adopt to aid in the enforcement of the arbitration agreement. So the forum will apply its own local law in determining whether to stay or to dismiss an action brought in violation of an arbitration agreement that is irrevocable under the applicable law. The forum will also apply its own local law in deciding whether to order the parties to proceed to arbitration. Such an order is less likely to be made if arbitration is to take place in another state because of the reluctance of a court to order that an act be done in an area outside its jurisdiction. The considerations which will guide a court in determining whether to make such an order in this latter situation are set forth in § 53. The forum will likewise apply its own local law in determining whether it should enjoin maintenance of a suit that is being brought in a second state in violation of the arbitration agreement. The forum will apply the same law in deciding whether to appoint one or more arbitrators in situations where arbitration cannot proceed unless such an appointment is made. A problem of this last sort frequently arises when one of the parties refuses to appoint an arbitrator in violation of the terms of the agreement.

Restatement (Second) of Conflict of Laws § 219, cmt. a.

6

implication, the Restatement recognizes a distinction between the method of arbitration as opposed to forum selection, because different rules apply to each. Consequently, where Defendants pointed out this dichotomy under the Restatement [Defs.' Br. 15, Docket Index No. 3], Plaintiff's Brief is non-responsive and has waived this issue as well. Hird, 913 F.3d at n.33; Griswold, 762 F.3d at 272 n.6; Eulo, 430 F.2d at 326 n.5 (3d Cir. 1970); Wilson, 2015 U.S. Dist. LEXIS 119637, at *10 (E.D. Pa. Sept. 9, 2015); New York Rehab. Care Mgmt., 506 F.3d at 1076 (D.C. Cir. 2007).

## V.    Venue Has No Reference to Forum-Selection Clauses.

As to venue, Plaintiff asserts, "Defendants consented to Pennsylvania venue through the LTA when they agreed that the parties' counsel . . . would decide where any arbitration took place." [Pl.'s Br. 16].  That is incorrect. The U.S. Supreme Court held, "Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws, and those provisions say nothing about a forum-selection clause." Atlantic Marine Constr. Co. v. U.S. District Court for the Western District of Texas, 571 U.S. 49, 55 (2013). A coin-toss under Paragraph 12 of the LTA has no reference to whether venue is proper here.

## CONCLUSION

**WHEREFORE**, for all the forgoing reasons and those previously argued in Defendants' briefs and papers before the Court, Defendants respectfully request that the Court grant the relief requested in Defendants' Motion to Dismiss or, Alternatively, to Transfer Venue.

Respectfully submitted,

**CORNERSTONE LAW FIRM, LLC**

By:    /s/ David W. Crossett
       David W. Crossett, Esquire
       Attorney I.D. #313031
       Joel A. Ready, Esquire

7

Attorney I.D. # 321966
8500 Allentown Pike, Ste 3
Blandon, PA 19510
P (610) 926-7875
F (484) 930-0054
david@cornerstonelaw.us
joel@cornerstonelaw.us
*Counsel for Defendants*

# Exhibit B

Defendants' Reply Brief as to the Motion to Disqualify Plaintiff's Counsel
Litigation Support Services, LLC v. Arkadiy Lyampert et. al.
United States District Court for the Eastern District of Pennsylvania

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Litigation Support Services, LLC, | : | |
| Plaintiff, | : | No. 2:19-CV-01574-ER |
| v. | : | |
| | : | |
| Arkadiy Lyampert, et al., | : | JURY TRIAL DEMANDED |
| Defendants. | : | |

**DEFENDANTS' REPLY BRIEF TO PLAINTIFF'S RESPONSE**
**IN OPPOSITION (DOC. NO. 9) TO DEFENDANTS' MOTION TO DISQUALIFY**
**PLAINTIFF'S COUNSEL**

NOW COMES Defendants who, with leave of Court, respectfully submit this Reply Brief

to Plaintiff's Response in Opposition to Defendants' Motion to Disqualify Plaintiff's Counsel and

Memorandum of Law ("Plaintiff's Brief") at Docket Index No. 9:

**CORRECTED AND OTHER EXHIBITS**

A corrected affidavit of Arkadiy Lyampert ("Mr. Lyampert"), previously submitted with

Defendants' Motion to Disqualify Plaintiff's Counsel, is attached hereto as Exhibit 1.

Attached as Exhibit 2 is a Ledger by Plaintiff to Mr. Lyampert showing activity from 2016

during Plaintiff's performance of its contractual relationship with Mr. Lyampert.

**REPLY ARGUMENT**

**I.      Plaintiff Should be Equitably Estopped from Denying the Disqualification.**

Plaintiff, as Mr. Lyampert's fiduciary, should be equitably estopped from denying Attorney

Bochetto's disqualification. Plaintiff's counterargument is basically that it took Mr. Lyampert's

money, having invoiced his attorney-client trust account, and used it to hire <u>for itself</u> the lawyer

that it now wants to use against the Lyamperts.

**A.      Applicable Standard.**

Plaintiff offers no counterargument why the LTA is governed by anything but California

1

law. [See Defs.' Br. 16-18, Docket Index No. 3, on the applicability of California law].  Equitable estoppel "provides that a person may not deny the existence of a state of facts if he intentionally led another to believe a particular circumstance to be true and to rely upon such to his detriment." Strong v. County of Santa Cruz, 543 P.2d 264, 266 (Cal. 1975). The elements are "(1) the party to be estopped must be appraised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury." Id. (citation omitted). That standard is met here.

### B.      Plaintiff Knew the Facts and Intended for Its Conduct to be Acted Upon.

Plaintiff's principal, Andrew Mogilyansky, admits by affidavit to this Court to his knowledge of the facts of Attorney Bochetto's retention, having directly interacted with Bochetto, but asserting that it was unrelated to the subject-matter of Plaintiff's contract with Mr. Lyampert. [Andrew Mogilyansky Aff. ¶¶ 7-47, Docket Index No. 9-1]. Mr. Mogilyansky also intended for his conduct to be acted upon by Mr. Lyampert, admitting the latter subsequently inquired "whether I could ask George to help in the California case by providing advice to me for Mr. Lyampert's benefit. I recall him saying he was willing to pay for such advice." [Id. ¶ 53].  Mr.  Mogilyansky admits, "The $5,000 was added to my invoice to Mr. Lyampert's British lawyers, and I made note on the e-mailed invoice that part of the $5,000 was to pay for George Bochetto's services" and these are the invoices "exhibited to the Motion to Disqualify . . ." [Id. ¶¶ 78-79]. Thus, Plaintiff's principal, Mr. Mogilyansky, convinced Mr. Lyampert to pay for legal services by Attorney Bochetto by representing that such legal services were for the benefit of Mr. Lyampert.

### C.      Mr. Lyampert was Ignorant of the True State of Facts.

Mr. Lyampert "agreed to this arrangement with an understanding that Attorney Bochetto was my lawyer, who was retained for his knowledge and skill in the law, and who was to work

directly with my agent, the Plaintiff." [Arkadiy Lyampert Aff. ¶ 10, Docket Index No. 4]. Where Mr. Mogilyansky asserts otherwise, the Court can find that not credible. First, Mr. Mogilyansky offers an incredible explanation for invoicing Mr. Lyampert's British counsel for an "Advance for third-party legal services on client's behalf (e.g. George Bochetto)" for payment against Mr. Lyampert's attorney-client trust account. [Mot. to Disqualify Ex. C, Docket Index No. 4].   Mr. Mogilyansky shrugs it off, "I did not give much thought to the exact wording at the time. I certainly [by] this did not mean that I was engaging George on 'behalf of Arie,' particularly in circumstances when I knew George firmly said 'no' to such engagement." [Aff. Andrew Mogilyansky ¶ 79 (alteration added), Docket Index No. 9-1].

Second, Mr. Lyampert relied upon records from Plaintiff, including a Ledger for Plaintiff's activity in 2016, attached hereto as Exhibit 2. In the Ledger, every single item, including the moneys paid for Attorney Bochetto, are for costs arising from or relating to Plaintiff's performance of its contractual relationship with Mr. Lyampert. Thus, Mr.  Lyampert was further led to believe that Attorney Bochetto was his lawyer.

### E.   Detrimental Reliance.

Finally, Mr. Lyampert detrimentally relied on Plaintiff, under their contract, for the retention of counsel. Mr. Mogilyansky admitted to assisting Mr. Lyampert in the retention of British counsel: "[J]ust a few months prior, in January 2016, I had actively assisted Mr. Lyampert in his negotiations with David Foster of O'Melveny & Myers, LLP regarding an agreement for legal representation in the UK Litigation." [Andrew Mogilyansky Aff. ¶ 47, Docket Index No. 9-1].  Mr. Lyampert had come to depend on Mr. Mogilyansky for the retention of attorneys and for handling the details of litigation support. The latter now argues to this Court that he only reimbursed himself, for Attorney Bochetto, on an unrelated matter. Plaintiff owed fiduciary duties to Mr. Lyampert. Under California law, "Experts as retained litigation support professionals are

similar in function to concurrent counsel within the fields of their respective expertise," <u>Forensis Group, Inc. v. Frantz, Townsend & Foldenauer</u>, 29 Cal. Rptr. 3d 622, 637 (Ct. App. 2005), and are held to the standard of a fiduciary. <u>E.g.</u>, <u>Shopoff & Cavallo LLP v. Hyon</u>, 85 Cal. Rptr. 3d 268, 276 (Ct. App. 2008) (litigation support services, including facilitation of communication among counsel); <u>Mattco Forge, Inc. v. Arthur Young & Co.</u>, 6 Cal. Rptr. 2d 781 (Ct. App. 1992) (litigation support accounting work). Fiduciaries who improperly inflate an invoice or apply moneys for tasks not performed, breach their fiduciary duty. <u>Charnay v. Cobert</u>, 51 Cal. Rptr. 3d 471, 480 (Ct. App. 2006). If Plaintiff's argument is that Attorney Bochetto is not disqualified, because Plaintiff had breached its fiduciary duties to Mr. Lyampert by misapplying moneys for Bochetto's retention, then Plaintiff should be equitably estopped from denying the disqualification.

## II.     Attorney Bochetto, Himself, Did Not Obtain Informed Consent.

Pages 23-24 of Plaintiff's Brief argues that informal mediation with Mr. Bochetto under the LTA rises to the level of "informed consent."  Plaintiff is incorrect, first, where that must be obtained by the attorney directly: "Informed consent" refers to where "***the lawyer*** has communicated adequate information and explanation about the material risks of and reasonable available alternatives to the proposed course of conduct." Pa. R.C.P. 1.0(e) (emphasis added). Here, Attorney Bochetto admits, "Andrew never mentioned the Lyamperts to me again until the commencement of my work on the present case starting in mid-January 2019." [George Bochetto Aff. ¶ 44, Docket Index No. 9-2].  Attorney Bochetto had no involvement in the drafting of the LTA, and was not free to rely on Plaintiff whether or not Mr. Lyampert gave informed consent.

Second, Plaintiff offers no caselaw to support how "informed consent" under Pa. R.P.C. 1.0(e) is met where Paragraph 12 of the LTA only reads that the parties "will arrange for informal mediation to be conducted by Jeff Farrow, Esq. and George Bochetto, Esq. via telephone or video

conference." Informal mediation is a non-binding, out-of-court discussion and does not amount to consent to adversarial proceedings, including mandatory arbitration. Furthermore, nothing on the face of Paragraph 12 authorized Mr. Bochetto to advocate for Plaintiff during the informal mediation, much less arbitration if it had taken place. Reading that document, Mr. Lyampert saw two lawyers listed — Farrow and Bochetto, believing that <u>both</u> were his lawyers.

### III.    Plaintiff Conflates and Mischaracterizes an Argument on Personal Jurisdiction.

Plaintiff's Brief on Pages 21-22, "Defendants admit that Mr. Bochetto's communications with them were unrelated ***to the Complaint***" (emphasis added), quoting from Defendants' Brief in Support of Defendants' Motion to Dismiss or, Alternatively, to Transfer Venue, "Only Defendant Elena Lyampert visited Pennsylvania during a confidential meeting with Attorney Bochetto in Philadelphia, which forms no part of Plaintiff's allegations concerning the contract formation or breach." Plaintiff's counterargument is incorrect, because it conflates and mischaracterizes an argument concerning personal jurisdiction only. Defendants never said that Attorney Bochetto's services were "unrelated to the Complaint," because the Complaint broadly embraces Plaintiff's services during several lawsuits against Mr. Lyampert. Rather, for purposes of personal jurisdiction the Defendants only pointed out that Elena's sole visit to Philadelphia, where she met with Attorney Bochetto, did not relate in the formation of a contract with the Plaintiff or the breach of a contract with the Plaintiff.

### CONCLUSION

**WHEREFORE**, for all the forgoing reasons and those previously argued in Defendants' briefs and papers before the Court, Defendants respectfully request that the Court grant the relief requested in Defendants' Motion to Disqualify Plaintiff's Counsel.

Respectfully submitted,

5

**CORNERSTONE LAW FIRM, LLC**

By:     /s/ David W. Crossett
        David W. Crossett, Esquire
        Attorney I.D. #313031
        Joel A. Ready, Esquire
        Attorney I.D. # 321966
        8500 Allentown Pike, Ste 3
        Blandon, PA 19510
        P (610) 926-7875
        F (484) 930-0054
        david@cornerstonelaw.us
        joel@cornerstonelaw.us
        *Counsel for Defendants*

Exhibit 1

Litigation Support Services, LLC v. Arkadiy Lyampert et. al.

United States District Court for the Eastern District of Pennsylvania

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LITIGATION SUPPORT SERVICES, LLC :
           Plaintiff, :
           :
       v.       :
           :   Civil Action No. 2:19-CV-01574-ER
ARKADIY LYAMPERT; :
and :
ELENA LYAMPERT; :
and :
ANNA LYAMPERT; :
and :
EAA INVESTMENTS, LLC; :
and :
VRLA TECH, LLC; :
and :
VALLEY VIEW GRANTOR RETAINED :   JURY TRIAL DEMANDED
INCOME TRUST; :
and :
SECOND VALLEY VIEW GRANTOR :
RETAINED INCOME TRUST, :
          Defendants. :

### AFFIDAVIT OF ARKADIY LYAMPERT

Arkadiy Lyampert, being duly sworn according to law, deposes and says the following:

1. I am an adult individual and a Defendant in the above-captioned case.

2. I am submitting this affidavit in support of my counsel's Emergency Motion to Disqualify Plaintiff's Counsel ("the Motion").

3. English is my second language. I was born in Soviet Union on November 28, 1964, and I came to the United States when I was 28 years of age. I am capable, given sufficient time, of understanding written English and of expressing myself in writing, but at times I struggle with oral conversations and my spoken English is very poor. In an abundance of

caution, I obtained an English-Russian translation regarding the substance of this Affidavit and I believe that it is accurate.

4.  In the instant case, counsel representing Plaintiff is George A. Bochetto, Pennsylvania Attorney ID 27783, of the firm Bochetto & Lentz, P.C.

5.  I strongly believe that Attorney Bochetto and his law firm should be disqualified from representing the Plaintiff in this matter, because I am a former client of Attorney Bochetto while he was a partner of Bochetto & Lentz, P.C.; Attorney Bochetto is now representing my adversary, the Plaintiff, in the same or substantially related matter; and Plaintiff's interests are materially adverse to mine and to the other Defendants.

6.  I never gave informed consent to Attorney Bochetto's representation of Plaintiff in the instant case.

7.  Plaintiff alleges that the Defendants and I have breached a Long-Term Agreement ("LTA"), a true and correct copy of that LTA is attached to the Motion as Exhibit "A."

8.  The LTA incorporates by reference an Engagement Letter between Plaintiff and myself, dated March 25, 2016. A true and correct copy of that Engagement Letter is attached to the Motion as Exhibit "B." Plaintiff's Managing Member is Andrew Mogilyansky, who is fluent in Russian and English. Under the Engagement Letter, Plaintiff was hired for litigation support services during simultaneous judicial proceedings that were pending against me.

9.  At some point after April 19, 2016, Mr. Mogilyansky recommended that I meet with Attorney Bochetto. That same month, Mr. Mogilyansky, my wife, and I met with Attorney Bochetto at the office of Bochetto & Lentz, P.C., in Philadelphia, Pennsylvania,

2

and had a confidential conversation which included the subject-matter of the Engagement Letter.

10. Subsequent to that meeting, Mr. Mogilyansky requested that we retain Attorney Bochetto to advance my interests during the simultaneous judicial proceedings by assisting Plaintiff's performance under our contractual agreement. I agreed to this arrangement with an understanding that Attorney Bochetto was my lawyer, who was retained for his knowledge and skill in the law, and who was to work directly with my agent, the Plaintiff.

11. By working with Mr. Mogilyansky on my behalf, Attorney Bochetto was privy to the same confidential and privileged information concerning the simultaneous judicial proceedings against me and was a witness to the services performed or not performed by Mr. Mogilyansky.

12. On May 2, 2016, Plaintiff created Invoice No. FVAL-2016-05, a true and correct copy is attached to the Motion as Exhibit "C." This invoice clearly reads "$5,000," as "Advance for third-party legal services *on client's behalf* (e.g., George Bochetto)" (emphasis added). I understood that I was the "client."

13. On May 2, 2016, Mr. Mogilyansky, acting as Managing Member of Plaintiff, submitted an e-mail to my British attorney, Mr. David Foster, a true and correct copy is attached to the Motion as Exhibit "D." Mr. Mogilyansky writes, "$13,000 – May 2016 (includes $5,000 advance for possible future third-party costs expected to be paid by LSS *on Arie's behalf*, such as George Bochetto, Esq.) (emphasis added). This invoice was paid from my client trust account, and "Arie" is my nickname.

3

14.  Mr. Mogilyansky assured me that Attorney Bochetto gave helpful and professional legal advice during Plaintiff's performance of our contractual relationship. That very same contractual relationship is now the subject of Plaintiff's instant lawsuit against me and the other Defendants, who were parties to the Long-Term Agreement ("LTA") and where the LTA incorporates by reference the Engagement Letter under which Attorney Bochetto was retained to assist Plaintiff.  If Attorney Bochetto had also assisted while Plaintiff performed under the LTA, then Attorney Bochetto's professional services were obtained for the benefit of the other Defendants as well.

15.  After I was served with a copy of the Writ of Summons in the instant case, I promptly contacted Attorney Bochetto on March 7, 2019 concerning his conflict of interest, and he has declined my request to cease any involvement in the instant case. He instead proceeded to file the Civil Complaint for Plaintiff on March 14, 2019.

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

Arkadi Lyampert

Sworn to and subscribed before me this
18 day of April         2019

Notary Public

CYNTHIA VICTORIA DUREN
Notary Public - California
Los Angeles County
Commission # 2239999
My Comm. Expires Apr 27, 2022

4

# Exhibit 2

Litigation Support Services, LLC v. Arkadiy Lyampert et. al.
United States District Court for the Eastern District of Pennsylvania

**From:** "Andrew Mogilyansky" <andrew@litigationaid.com>
**Date:** December 23, 2016 at 6:21:27 AM PST
**To:** "Arkady Lyampert" <kamaz46@yahoo.com>
**Subject: Escrow**

| LEDGER Activity IN | | | | | | |
|---|---|---|---|---|---|---|
| **Date** | **Cleared** | **Source** | **Target** | **Value** | **No** | **Comment** |
| 12/13/16 | 12/13/16 | Reimbursement | Escrow AL | $25.00 | | Wire Shortage (UK) |
| 11/15/16 | 11/17/16 | Reimbursement | Escrow AL | $38.73 | | Wire Shortage (UK) |
| 11/12/16 | 11/12/16 | Reimbursement | Escrow AL | $146.06 | CC | Hilton (Dave Bell) |
| 11/12/16 | 11/12/16 | Reimbursement | Escrow AL | $146.06 | CC | Hilton (Lee Waller) |
| 11/11/16 | 11/11/16 | Reimbursement | Escrow AL | $5.00 | CC | Lien Copies - Frenkel |
| 11/11/16 | 11/11/16 | Reimbursement | Escrow AL | $5.00 | CC | Lien Copies - Frenkel |
| 11/11/16 | 11/11/16 | Reimbursement | Escrow AL | $5.00 | CC | Lien Copies - Frenkel |
| 11/02/16 | 11/02/16 | Reimbursement | Escrow AL | $10.00 | | Authorize.Net |
| 11/02/16 | 11/02/16 | Reimbursement | Escrow AL | $59.92 | CC | CC Fees |
| 10/17/16 | 10/17/16 | Reimbursement | Escrow AL | $38.26 | | Wire Shortage (UK) |
| 10/04/16 | 10/04/16 | Reimbursement | Escrow AL | $5.67 | | Authorize.Net |
| 10/04/16 | 10/04/16 | Reimbursement | Escrow AL | $370.17 | | CC Fees |
| 09/19/16 | 09/19/16 | Reimbursement | Escrow AL | $20.00 | | Wire Shortage (UK) |
| 09/15/16 | 09/15/16 | Reimbursement | Escrow AL | $325.00 | Cash | AM => LD Cook Islands |
| 09/02/16 | 09/02/16 | Reimbursement | Escrow AL | $721.19 | | CC Fees |
| 08/26/16 | 08/26/16 | Reimbursement | Escrow AL | $1,800.00 | Cash | AM => CI Consultation |
| 08/22/16 | 08/22/16 | Reimbursement | Escrow AL | $20.00 | | Wire Shortage (UK) |
| 08/18/16 | 08/18/16 | Reimbursement | Escrow AL | $125.00 | | LSS CA Registration Fee |
| 08/10/16 | 08/10/16 | Reimbursement | Escrow AL | $185.00 | | Car Rental in LA |
| 08/09/16 | 08/11/16 | Reimbursement | Escrow AL | $390.00 | | Bochetto & Lentz |
| 08/02/16 | 08/02/16 | Reimbursement | Escrow AL | $25.00 | | Authorize.Net |
| 08/01/16 | 08/01/16 | Reimbursement | Escrow AL | $206.00 | | Cash withdrawal in LA |
| 07/29/16 | 07/29/16 | Reimbursement | Escrow AL | $25.00 | | Authorize.Net |
| 07/20/16 | 07/20/16 | Reimbursement | Escrow AL | $20.00 | | Wire Shortage (UK) |
| 07/05/16 | 07/05/16 | Reimbursement | Escrow AL | $79.83 | | Authorize.Net |
| 06/18/16 | 06/18/16 | Reimbursement | Escrow AL | $149.95 | | Car Rental in LA |
| 06/06/16 | 06/06/16 | Reimbursement | Escrow AL | $51.42 | | Airport parking |
| 06/05/16 | 06/05/16 | Reimbursement | Escrow AL | $12.41 | | PHL Airport Expenses |
| 06/05/16 | 06/05/16 | Reimbursement | Escrow AL | $2.92 | | PHL Airport Expenses |
| 05/29/16 | 05/29/16 | Reimbursement | Escrow AL | $590.20 | | PHL-LAX: Andrew |
| 05/29/16 | 05/29/16 | Reimbursement | Escrow AL | $74.62 | | PHL-LAX: Oksana |
| 05/29/16 | 05/29/16 | Reimbursement | Escrow AL | $74.62 | | PHL-LAX: Andrew |
| 05/29/16 | 05/29/16 | Reimbursement | Escrow AL | $590.20 | | PHL-LAX: Oksana |
| 05/25/16 | 06/20/16 | Reimbursement | Escrow AL | $975.48 | | Bochetto & Lentz |
| 05/05/16 | 05/05/16 | Reimbursement | Escrow AL | $20.00 | | Wire Shortage (UK) |

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LITIGATION SUPPORT SERVICES, LLC : | |
| Plaintiff, : | |
| : | |
| v. : | |
| : | Civil Action No.: 2:19-cv-01574-ER |
| ARKADIY LYAMPERT; : | |
| and : | |
| ELENA LYAMPERT; : | |
| and : | |
| ANNA LYAMPERT; : | |
| and : | |
| EAA INVESTMENTS, LLC; : | |
| and : | |
| VRLA TECH, LLC; : | |
| and : | |
| VALLEY VIEW GRANTOR RETAINED : | JURY TRIAL DEMANDED |
| INCOME TRUST; : | |
| and : | |
| SECOND VALLEY VIEW GRANTOR : | |
| RETAINED INCOME TRUST, : | |
| Defendants. : | |

## CERTIFICATE OF SERVICE

I, Avey Eyler, hereby certify that on the 14th day of May, 2019, a copy of a Defendant's Motion for Leave to Reply to Plaintiff's Response and to Submit Corrected and Other Exhibits, has been electronically filed, which provided electronic notice to the following:

George Bochetto, Esquire
Bochetto & Lentz, PC
1524 Locust Street
Philadelphia, PA 19102
*Counsel for Plaintiff*

**CORNERSTONE LAW FIRM, LLC**
/s/ Avey Eyler
Avey Eyler, Paralegal